Stanley J. Silverstone
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, New York 10601
Tel. (914) 997-1346

Nicholas P. Granath (*pro hac vice*)
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA PILOTS ASSOCIATION,<br><br>                         Plaintiff<br><br>        v.<br><br>JOHN DOE,<br><br>                         Defendant. | Civil Action No.: 1:14-cv-00225-AKH<br><br>**MEMORANDUM OF LAW<br>IN SUPPORT OF<br>MOTION TO COMPEL COMPLIANCE<br>WITH SUBPOENA *DUCES TECUM*** |

# I)      SUMMARY.

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Plaintiff, the Delta Pilots Association ("DPA"), moves this Court to enter an order compelling nonparty subpoena recipient the Air Line Pilots Association International and its subordinate body, the Delta Master Executive Council, (together "ALPA"), to produce documents called for in a subpoena *duces tecum*. Despite the propriety of the subpoena, and counsel for DPA's attempts to avoid this motion, ALPA refuses to comply.  A motion to compel is required to obtain the documents from ALPA to learn the identity of John Doe.

## II)        BACKGROUND.

As alleged in the complaint (Doc. No. 1, hereinafter Cmplt.), Delta Air Lines, Inc. is one of the nation's largest commercial air carriers and employs nearly 12,000 commercial pilots. (Cmplt. ¶ 12).   Under federal law, covered employees including pilots have a right to choose whether to be represented by a union and if so by what union. (Cmplt. ¶ 13).   ALPA is a labor union that currently represents the pilots employed by Delta. (Cmplt. ¶ 14-16).

In May of 2010, DPA was founded out of dissatisfaction with ALPA's representation of Delta pilots and with the specific goal of replacing ALPA as the union representing Delta pilots. (Cmplt. ¶ 18).  Tim Caplinger is the founder of DPA, a member of its Board of Directors, and its Interim President. (Cmplt. ¶ 19).   In 2010, the DPA began a campaign to collect authorization cards ("cards") signed by individual Delta pilots in order to demonstrate that a majority of them desire to be represented by DPA. (Cmplt. ¶ 20).   By early November 2013, the DPA had collected cards from more than 50% of all Delta pilots but had not yet filed an application for a representational dispute with the National Mediation Board ("NMB"). (Cmplt. ¶ 21).

DPA's primary means of conducting its business, including communicating with Delta pilots, raising donations, and campaigning, is through its web site. (Cmplt. ¶ 22).  DPA's web site can be located, or "surfed" to on the Internet, or "web," at the uniform resource locator ("URL"), or web address of, http://delta-pilots.org. (Cmplt. ¶ 23).  SquareSpace, Inc. is a New York company that "hosts" DPA's web site. (Cmplt. ¶ 26).  Tim Caplinger had personal access to DPA's SquareSpace account on behalf of DPA at all relevant times. (Cmplt. ¶ 28).

Starting on or about November 8, 2013, and continuing thereafter, the integrity of DPA's web site was dramatically and visibly disrupted when it was "hacked" into. (Cmplt. ¶ 32).  As a direct and immediate consequence of this attack, DPA's web site ceased to function as intended.

(Cmplt. ¶ 33).   In the early stages of the attack, viewers attempting to access DPA's web site were involuntarily redirected to a web page that falsely claimed that DPA had abandoned its card collection campaign and now urged support for ALPA ("work together").   This page also contained a link to an ALPA web site. (Cmplt. ¶ 38).

On January 28, 2014, this Court granted Plaintiff's motion for leave to take immediate discovery upon third parties in order to identify defendant John Doe. (Dkt. # 6).   In response, Plaintiff has served several subpoenas on relevant internet and telecommunication service providers intended to identify the John Doe(s) responsible for the attack on DPA's website.

In addition, during the same time period, ALPA released publications describing its own "investigation" into the attack.   In response to these publications, DPA served a narrowly tailored subpoena *duces tecum* on the Air Line Pilots Association on May 28, 2014 (Declaration of Stanley J. Silverstone, hereinafter "Decl.," ¶ 4, Exhibit A), and on its subordinate body, the Delta Master Executive Council, on June 3, 2014 (*Id*., ¶ 5, Exhibit B).

However, ALPA has refused to fully comply with the subpoena(s) thereby necessitating the instant motion.

### III)        **ARGUMENT.**

"As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed.R.Civ.P. 34(c).   In a typical case where a non-party objects to a subpoena, the factors in Rule 45 are considered in order to determine whether the subpoena should be quashed or modified. *See* Fed. R. Civ. P. 45(c)(3)(A).   Federal Rule of Civil Procedure 26 governs the scope of discovery, and allows parties to discover "any nonprivileged matter that is relevant to any party's claim or defense… Fed. R. Civ. P. 26(b)(1).   Information that is reasonably calculated to lead to the discovery of admissible evidence is

considered relevant for the purposes of discovery. *See Daval Stell Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991).

On May 28 and June 3, 2014, Plaintiff served identical subpoenas on the nonparty ALPA bodies that were reasonably calculated to lead to the discovery of admissible evidence. (Decl. at ¶ 4, Exhibit; ¶ 5, Exhibit B).

1)   <u>**DPA'S SERVED SUBPOENA(S) *DUCES TECUM*.**</u>

The DPA identical subpoenas served on ALPA made three specific requests for ALPA to provide responsive documents.[1]

<u>Specific Request No. 1</u> of the subpoena requested responsive documents that "contain, describe or reference any facts learned or information generated in any investigation by ALPA or the ALPA Delta MEC, as stated in the publication, True Headings, 13-17 dated November 21, 2013." (Decl., ¶ 4, Exhibit A at p. 9 of 14).

This request was generated in direct response to a publication by ALPA wherein it stated that it "continue[d] to investigate the [DPA website hacking] incident in an attempt to learn the facts." (Decl., ¶ 4, Exhibit A at p. 11 of 14).

<u>Specific Request No. 2</u> – also in response to the aforementioned ALPA publication – requested that ALPA produce all responsive documents that "identify the 'private individual' referenced in the ALPA… publication…" (Decl., ¶ 4, Exhibit A at p. 9 of 14).

ALPA had referenced in its November 2013 publication that, through its investigation, it "learned that network traffic [on the DPA website] was briefly mixed with a private individual's account maintained with the same hosting provider as the DPA…" (Decl., ¶ 4, Exhibit A at p. 12

---

[1] To avoid repetition or confusion, references henceforth shall be only to the Subpoena served upon the Air Line Pilots Association International.

of 14). ALPA's publication indicated that it was in possession of information related to the intrusion upon the DPA website, and that information pinpointed a specific individual with direct knowledge. (*Id.*)

Specific Request No. 3 requested that ALPA produce all responsive documents that "identify the 'third party' referenced in the ALPA…publication… dated May 21, 2014. (Decl., ¶ 4, Exhibit A at p. 9 of 14).

This request was in direct response and narrowly tailored to address another ALPA publication dated May 21, 2014, wherein it stated that it "strongly believe[ed] that whatever temporary problems the DPA [website] experienced were the result of inadvertent actions by a third party…" (Decl., ¶ 4, Exhibit A at p. 13 of 14).

Despite, however, the specific nature of these document requests that focused on ALPA's self-described investigation into who was behind the DPA website attack, ALPA has obstructed DPA's lawful attempt to discover relevant information through service of its Rule 45 subpoena by refusing complete production without proper grounds.

## 2)   ALPA'S RESPONSE TO THE DPA SUBPOENA

### a) ALPA's Blanket Objections

ALPA initially responded to DPA's subpoena by letter dated June 11, 2014. (Decl., ¶ 6, Exhibit C).  In that letter, ALPA lodged general objections based on:

1) "the attorney-client privilege, attorney work-product privilege, and any other applicable privileges; and

2) that the subpoena failed "to allow sufficient time for ALPA to respond." (Ex. D at 1).

Those general objections are groundless, however:

First, such blanket and general objections as these do not provide sufficient detail about

the documents to enable DPA to determine whether the withheld documents are, in fact, privileged.   A log or index of materials withheld under claim of privilege must be produced. *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641-642 (S.D.N.Y. 1991). There can be no dispute that ALPA failed to supply a privilege log.  Nor has ALPA sought a court protective order.

Second, DPA's subpoena allowed ALPA a full two weeks – "within 14 days of service" which to respond to a simple, specific and narrow document request.   Rule 45(d)(3)(A)(i) provides that a court must quash or modify a subpoena that fails to allow a reasonable time to comply, but does not provide what length of time is considered reasonable. Fed. R. Civ. P. 45(d)(3)(A)(i).  However, reasonableness of the time allowed for compliance is judged on the underlying circumstances, and where, as here, the request is narrowly-tailored and does not seek voluminous documents, the "fourteen day period for serving objections, as noted in Rule 45(d)(2)(B), is generally viewed as a reasonable period of time." *Romano v. City of Hammond Police Dep't*, 2010 U.S. Dist. LEXIS 79166 at *19 (N.D. Ind. Aug. 5, 2010) (citing *Biological Processors of Alabama, Inc. v. North Georgia Environmental Services, Inc.*, 2009 U.S. Dist. LEXIS 54862, at *2 (E.D. La. June 11, 2009) (noting cases finding the same)).

DPA provided ALPA with more than a reasonable amount of time to comply with the three narrow document requests contained in its subpoena because:

One, ALPA publicized a claim to be in possession of information as long ago as November 21, 2013. (Decl., ¶ 4, Exhibit A at p. 11-12 of 14).  Five months should be sufficient.

Two, ALPA was in fact allowed more than 14 days, "… we will wait until June 27 …" (Decl., ¶ 7, Exhibit D at p. 2). Despite claims of undue burden, ALPA used the extension to produce nothing.  (Decl., ¶ 9, Exhibit F).

- 6 -

**b)      ALPA's Specific Objections.**

**i)      The Objection to Document Request No. 1.**

ALPA withheld documents to DPA's first request stating that because its "investigation produced no documents that would identify John Doe," it had no obligation to produce any information related to its investigation of the DPA website intrusion. (Ex. D at 2).  This is, however, a self-serving and restrictive reading of DPA's first specific request.

The subpoena did not request that ALPA review the documents generated in its investigation of the DPA website intrusion and advise DPA whether those documents revealed the identity of John Doe.  Rather, the subpoena requested, in no uncertain terms, that ALPA produce all responsive documents relating to the investigation that it admittedly conducted related to who was behind the DPA website attack.  The purpose of that narrowly tailored request was to allow DPA (as the victim of the website attack), not ALPA, to determine whether the documents would assist in identifying John Doe.  ALPA, however, continues to withhold these relevant documents, and has recently revised its objection to allege that the request exceeds the scope of discovery permitted by this Court's January 28, 2014 Order granting DPA leave to take immediate discovery. (Decl., ¶ 8, Exhibit E, p. 2 of 4).  Given that Federal Rule of Civil Procedure 26 allows a party to discover any non-privileged matter that is relevant to its claim, ALPA's objection is misplaced.

**ii)      The Objection To Document Request No. 2.**

ALPA produced a written statement that it described as "a statement that was attached to an email of November 19, 2013, from a Delta pilot to ALPA attorney Arthur Luby." (Ex. D at 2). The statement is a three-page narrative drafted by a Delta pilot and purports to have direct

knowledge related to the website intrusion suffered by DPA. (Ex. F).  However, ALPA has refused to provide the e-mail that preceded the written statement or to identify the author of the statement – all under the guise of attorney-client privilege.

Without the email, the letter cannot be authenticated.

Without the email the identity of the author will remain hidden.

Authentication is crucial because the letter purports to be both a confession of individual responsibility for the harm to DPA's website as well as an apology for ALPA.  Hence, it is not clear for whose benefit this letter was created, and that goes to the issue of who are the John Does.

And ALPA's assertion of privilege must fail for several reasons:

First, Rule 45(e)(2) of the Federal Rules of Civil Procedure mandates that "[a] person withholding subpoenaed information under a claim that it is privileged…must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2).  Moreover, when a claim of privilege is asserted in response to any means of discovery, Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2 require that specific information be provided that will "enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5).

Courts in this Circuit have refused to uphold a claim of privilege where privilege log entries fail to provide adequate information to support the claim. *See, e.g., United States v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996); *Bowne of N.Y. City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 474-75 (S.D.N.Y. 2002); *see also Next G Networks of NY, Inc. v. City of New York,* 2005 U.S. Dist. LEXIS 6381, at *2 (S.D.N.Y. Apr. 13, 2005); *Kai USA Ltd.*

- 8 -

*v. Camillus Cutlery Co.*, 224 F.R.D. 326, 328 (E.D.N.Y. 2004) (citations omitted).   ALPA has not even attempted to comply with the requirement to provide a sufficiently detailed privilege log in order to carry its burden to satisfy the applicable federal and local rules.   Instead, ALPA has flippantly maintained that it did not need to provide a privilege log because its "letter…provided the same information…as would have been contained in a privilege log." (Decl., ¶ 8, Exhibit E, p. 3 of 4).

Second, as best as DPA can discern without the benefit of a privilege log, ALPA appears to be claiming attorney-client privilege between a union staff attorney and an individual union member.   However, "[g]enerally, an attorney-client relationship does not form between union members and a union staff attorney, because the attorney's client is the union rather than the union members." *United Steelworkers of America, AFL-CIO v. IVACO, Inc.*, 2003 U.S. Dist. LEXIS 10008 at *7-8 (N.D. Ga. Jan. 13, 2003) (citing *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 862-63 (10th Cir. 1996); *Peterson v. Kennedy*, 771 F.2d 1244, 1261 (9th Cir. 1985); *Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 7 (D.D.C 1997)).

Third, ALPA has failed to assert or establish any occasion for the privilege.   On what subject was advice sought or given, or on what occasion?   How is there an attorney-client relationship?

Fourth, even assuming, *arguendo*, that the attorney-client privilege did extend, as alleged by ALPA, between an ALPA staff attorney and one of more than 51,000 individual ALPA-represented pilots, there is no legal basis for hiding the identity of the author of the statement. "The identity of a client, or the fact that a given individual has become a client, are matters which an attorney normally may not refuse to disclose…" *Kai USA Ltd.*, 224 F.R.D. at 329 (citing *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962)).   Therefore, at a minimum,

ALPA must be required to reveal the identity of the individual who authored the statement that was produced.  This is crucial to allow DPA to authenticate the document and pursue additional discovery directed at an individual who, as demonstrated by the statement, has intimate knowledge regarding the website intrusion that forms the basis of this action.

Fifth, the evident basis for ALPA withholding the identity and hence the email is simply to prevent embarrassment of the individual.  That is not a proper objection.

## IV)       CONCLUSION.

Plaintiff has sought to confer with ALPA in order to avoid the necessity for this Court's intervention, but ALPA has maintained its objection. Therefore, for the foregoing reasons, Plaintiff DPA respectfully requests that the Court grant its Motion to Compel Compliance with the Rule 45 Subpoena *Duces Tecum* served on ALPA and enter an Order compelling ALPA to produce:

1)      Documents that contain, describe or reference any facts learned or information generated in any investigation by ALPA or the ALPA Delta MEC, as stated in the publication, True Headings, 13-17 dated November 21, 2013.

2)      The November 19, 2013 e-mail from an anonymous author to ALPA attorney Arthur Luby, either in native digital format or in digital pdf format, or in hardcopy, provided expanded headers are visible;[2]

3)      Any attachment to the email.

---

[2] Without the headers visible the Internet address and thus true identity of the sender as well as other information critical to authenticating the email and the attached letter will be hidden.

Respectfully submitted,

On: <u>July 3, 2014</u>

By: <u>*/s/ Stanley J. Silverstone*</u>
Stanley J. Silverstone, Esq.
ssilverstone@ssmplaw.com
Lucas K. Middlebrook, Esq.
lmiddlebrook@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601
Tel. (914) 997-1346; Fax (914) 997-7125

Nicholas Granath (*pro hac vice*)
ngranath@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080; Fax (612) 341-9079

*Attorneys for Plaintiff*
*Delta Pilots Association*