```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DELTA PILOTS ASSOCIATION,

 4                    Plaintiff,

 5             v.                        14 Civ. 225 (AKH)

 6   JOHN DOE,
                                         Conference
 7                    Defendant.

 8   ------------------------------x

 9                                       New York, N.Y.
                                         August 14, 2014
10                                       2:40 p.m.

11   Before:

12           HON. ALVIN K. HELLERSTEIN

13                                       District Judge

14

15           APPEARANCES

16

17   SEHAM, SEHAM, MELTZ & PETERSEN, LLP
          Attorneys for Plaintiff
18   BY:  STANLEY J. SILVERSTONE

19

20   COHEN, WEISS AND SIMON LLP
          Attorneys for Intervenor Airline Pilots Association
          International
21   BY:  MICHAEL A. ABRAM

22

23

24

25
```

1              (Case called)

2              MR. SILVERSTONE:  Stanley Silverstone for the

3     plaintiff.

4              MR. ABRAM:  Michael Abram of Cohen Weiss and Simon for

5     the nonparty Airline Pilots Association responding to the

6     motion.  With me is Mr. Art Luby as a representative of the

7     client.

8              THE COURT:  Thank you.  Be seated.  Mr. Silverstein, I

9     need you to speak as loudly as Mr. Abram speaks.

10             MR. SILVERSTONE:  I will, your Honor.

11             THE COURT:  I intend to go over the three or four

12    different issues that the motion poses but then to ask where

13    are we going with this whole case.  Let's do the specific

14    things first.

15             Delta Pilots Association asks for responsive documents

16    that contain, describe, or reference any facts learned or

17    information generated in any investigation by ALPA or the ALPA

18    Delta --

19             MR. ABRAM:  MEC, your Honor.

20             THE COURT:  What does that mean?

21             MR. ABRAM:  Master executive council.  That's the

22    local governing body.

23             THE COURT:  Mr. Abram, why won't you give that?

24             MR. ABRAM:  Your Honor, what they want is not related

25    to the purpose of the order that the Court granted, which was

1   to enable them to identify the so-called John Doe.

2          THE COURT:  You said you have read it and there is no

3   reference.  It is understandable why they don't trust that.

4          MR. ABRAM:  Your Honor, if they could simply serve a

5   subpoena on a nonparty and say show us any documents that touch

6   on anything having to do with this subject so that they could

7   decide what to do about it, that is far beyond the narrow

8   discovery that the Court ordered.

9          THE COURT:  Did your client investigate the issue that

10  is at the heart of this lawsuit?

11         MR. ABRAM:  They investigated to the extent they could

12  whether there was a so-called hacker or person who had

13  redirected, which is really what happened here --

14         THE COURT:  Mr. Silverstone, if I order Mr. Abram to

15  give that to you, how can Mr. Abram be assured that you can

16  confine your inquiry to the relevant fact of the purpose of the

17  investigation in relationship to the John Doe?

18         MR. SILVERSTONE:  The relevant fact for us, your

19  Honor, is to identify who is responsible for the hacking.

20         THE COURT:  But you are looking at an investigative

21  report that could touch on a lot of other things.

22         MR. SILVERSTONE:  It could, your Honor, and we don't

23  know without seeing those documents.  All we do know is that

24  ALPA apparently investigated the exact same incident that we

25  are investigating to get the exact same information that we are

 1    trying to get.

 2              THE COURT:  If I looked at it, would you trust me?

 3              MR. SILVERSTONE:  I would, your Honor.

 4              THE COURT:  Mr. Abram, would your --

 5              MR. SILVERSTONE:  With one proviso, your Honor.  The

 6    information may have technical information in it that requires

 7    to be seen by an expert.

 8              THE COURT:  What kind of expert?

 9              MR. SILVERSTONE:  A forensic computer expert, someone

10    who knows how all this stuff works more than we do.

11              THE COURT:  Do you trust me, Mr. Abram?

12              MR. ABRAM:  I do trust you, your Honor.  I would want

13    to be sure exactly what we are talking about.  We can provide

14    to the Court the report that ALPA's IT people made to the Delta

15    MEC at the time.

16              THE COURT:  Why don't we go off the record.  You

17    whisper into Mr. Silverstone's hear what it is that you would

18    offer to produce, and if he is satisfied, that's what I will

19    look at.

20              (Discussion off the record)

21              THE COURT:  What is it that you will give me?

22              MR. ABRAM:  Your Honor, we would provide for your

23    review the report that was made by the ALPA IT people to the

24    Delta MEC in November of 2013, when they learned about this

25    alleged incident.

1      THE COURT:  You wouldn't have it with you now?

2      MR. ABRAM:  I would have that with me, your Honor.

3      THE COURT:  I'll look at it right now.

4      MR. ABRAM:  I'm handing up to the Court a two-page

5  document.

6      THE COURT:  Is this the entire report?

7      MR. ABRAM:  That is the entire report made to the

8  Delta MEC that has been provided to me.

9      THE COURT:  Page 1 is a report of the investigation.

10  Page 2 is a listing of various searches that seem to have been

11  made.  I wonder, Mr. Abram, if you couldn't let Mr. Silverstone

12  see this.  It doesn't seem to me that there is anything of any

13  sensitive nature in here.

14      MR. ABRAM:  Yes, your Honor, I'll be happy to share

15  this with Mr. Silverstone on the basis that we are doing this

16  as requested.

17      THE COURT:  It's not a waiver of anything else.

18      MR. ABRAM:  Thank you, your Honor.

19      THE COURT:  To my untrained eye, Mr. Silverstone, the

20  only thing of relevance is the reference to a Web name.  That

21  leads into the second request for all responsive documents that

22  identify the private individual referenced in the publication

23  of the pilots association.  What protection do you think would

24  be appropriate, Mr. Abram?

25      MR. ABRAM:  Your Honor, what we proposed in our

1    proposed order is that with respect to that individual's name,

2    the plaintiff could not disclose that name or his email address

3    or other identification.  If they wished to, after

4    investigating on their own whatever relationship they believe

5    he has to the incident, if they believe he is somebody who

6    hacked their site, which he says he was not, but if they

7    believe that he was and they can support that enough to name

8    him in their lawsuit, then we ask that they ask the Court first

9    for permission to name him.

10             THE COURT:  In other words, if his identity is

11   learned, the next appropriate step would be for Mr. Silverstone

12   to move to amend under rule 21 to add a party and drop a party,

13   add the individual and drop John Doe, and at that time if I

14   grant the motion, the name could be public?

15             MR. ABRAM:  That's correct, your Honor.

16             THE COURT:  Not before?

17             MR. ABRAM:  That's correct, your Honor.

18             THE COURT:  How about that, Mr. Silverstone?

19             MR. SILVERSTONE:  If we were provided with the

20   identity of the individual and we could share that --

21             THE COURT:  It would be for --

22             MR. SILVERSTONE:  For our use alone.

23             THE COURT:  -- your use alone.  Do you need to share

24   it with your client?

25             MR. SILVERSTONE:  I think we would need to share it

1  with our client because he may have additional information that

2  we don't have.

3          THE COURT:  How many people and your client?

4          MR. SILVERSTONE:  It is really just one, your Honor.

5          THE COURT:  What is the name of that person?

6          MR. SILVERSTONE:  That's Tim Caplinger, who is the

7  interim president of DPA.

8          THE COURT:  That is the guy who is named in this?

9          MR. SILVERSTONE:  Yes.  His name comes up, that's

10  true, in the ALPA report.

11          THE COURT:  I think we have agreement.  You can see

12  the name.  Mr. Abram will give it to you.  Not on the record,

13  but he will give it to you, write it on a piece of paper and

14  give it to you.  You will honor the confidentiality.  You and

15  Mr. Caplinger will honor the confidentiality until such time as

16  I grant you permission to change the name of the caption or

17  there is a stipulation to that effect, which I shouldn't think

18  would be withheld.  Until then, you keep it quiet.  All right,

19  agreed?

20          MR. SILVERSTONE:  It's agreed, your Honor.  The only

21  other request I would make is whether we can have a copy of at

22  the very least the header of the email that came with the

23  author's statement so that we can authenticate that the

24  statement was written by the person who they are --

25          THE COURT:  I think that is reasonable, Mr. Abram.

 1          MR. ABRAM:  Let me show right now Mr. Silverstone that

 2     header.

 3          THE COURT:  The record will show that Mr. Abram is

 4     showing a header in a document to Mr. Silverstone.

 5          MR. SILVERSTONE:  I wouldn't mind having a copy of

 6     that.

 7          THE COURT:  What do you need a copy for?

 8          MR. SILVERSTONE:  Or I would like to write down the

 9     email address.

10          THE COURT:  Write it down.

11          MR. ABRAM:  We will write it for you.

12          MR. SILVERSTONE:  Thank you, your Honor.

13          THE COURT:  Write it down now.

14          The third request is for all responsive documents that

15     identify the third party referenced in a certain ALPA

16     publication dated May 21, 2014.  That publication has to do

17     with a request by a certain Delta pilot for legal advice of the

18     general counsel of Delta.  Why do you need it?

19          MR. ABRAM:  Before he answers that, I think that is

20     the same individual, your Honor.

21          MR. SILVERSTONE:  Assuming it is the same individual,

22     then that is not in dispute.

23          MR. ABRAM:  Same individual.

24          THE COURT:  So we solved all the problems.  The motion

25     to compel is granted to the extent allowed on the record of

 1   this session.

 2             Mr. Silverstone, where are we going with this case?

 3             MR. SILVERSTONE:  Your Honor, since we started

 4   discovery back in January, we've accomplished a lot.  We have

 5   served at least half a dozen different subpoenas on Internet

 6   service providers and telephone companies.

 7             THE COURT:  I know it's a lot of activity that you

 8   have done.  What more do you need?

 9             MR. SILVERSTONE:  We probably need a little bit more

10   time to make a decision as to whether we have enough

11   information to make one of these potential individuals a

12   defendant.

13             THE COURT:  Let's say you have.  What then?  What

14   happens if you make out a technical violation of the statute?

15             MR. SILVERSTONE:  I think it is up to the client to

16   decide whether he wants to proceed.

17             THE COURT:  Let's say he proceeds.  What does he get?

18   What could he recover?

19             MR. SILVERSTONE:  He could recover damages for the

20   cost of the investigation and any damages he could prove that

21   may have been caused to the organization.

22             THE COURT:  Let's say he can't prove damages and all

23   you have is legal expense.

24             MR. SILVERSTONE:  Right, and expert fees.  There will

25   be some damages for not only the investigative aspect but the

1    repair work that was done to get the website back up online.

2              THE COURT:  What are you talking?  $2500?

3              MR. SILVERSTONE:  I think it is a lot more than that,

4    your Honor.

5              THE COURT:  $5,000?

6              MR. SILVERSTONE:  I think DPA would also argue that

7    during the time that the website was misdirected there were

8    donations and --

9              THE COURT:  Speculative.

10             MR. SILVERSTONE:  It may be speculative, but that is

11   the position of DPA.

12             THE COURT:  Off the record.

13             (Discussion off the record)

14             (Recess)

15             THE COURT:  Counsel report to me that the settlement I

16   outlined merely as a suggestion, not on any informed basis,

17   would not be acceptable at this time.  Perhaps with more

18   discussion it might be, but it is not now acceptable.

19             This case will proceed in normal fashion.  The next

20   step will be a motion to amend the caption.  When will that

21   occur, Mr. Silverstein?

22             MR. SILVERSTONE:  I believe, your Honor, we are going

23   to need at least 30 days.  We have some outstanding subpoenas

24   that have not been responded to.

25             THE COURT:  I'm not sure you are going to do very well

1    with subpoena practice.  It seems to me that you are using this

2    case as a fishing expedition for a lot of other information

3    that is intended as relevant not to this case but for other

4    purposes in your jurisdictional dispute.  I want you to know

5    that this Court will not lend itself to that practice.

6              MR. SILVERSTONE:  Your Honor, I respectfully disagree

7    with that.  We have only conducted this litigation for the sole

8    purpose of finding out who is at the bottom of this hacking

9    incident.

10              THE COURT:  I heard what you said.  I gave you the

11    discovery that you have asked for.  You now know the name of

12    the person who was involved.  If you want to take that person's

13    deposition to see if anyone else was involved, you can do so.

14    But I don't see any room for bothering other people with

15    subpoenas.

16              MR. SILVERSTONE:  As I said, there is a subpoena

17    outstanding to the web hosting company.  The subpoena was

18    written by our computer expert.

19              THE COURT:  Is there a motion to quash, Mr. Abram?

20              MR. ABRAM:  Your Honor, I'm not aware of any other

21    motion practice in the case.  We have just responded to the

22    motion with respect to ALPA.

23              THE COURT:  If they give discovery voluntarily, of

24    course, they can give it.  If you ask me, I don't see that it

25    is relevant, at least not until you take the deposition of the

1  individual.

2         MR. SILVERSTONE:  We will do that, your Honor.

3         THE COURT:  Let your client know what I said before.

4  You have to show me what is relevant.  At this point in time it

5  seems to me you have everything and you are prolonging the case

6  simply for other purposes.  I'm not saying that is a finding.

7  It is not a finding.  It is an observation.

8         We have a date in September.  There is no need to

9  accelerate at this point in time.  I do want to have a fixed

10 date.  When does your case management plan say you have to make

11 a motion.

12        MR. SILVERSTONE:  We don't have a plan yet, your

13 Honor.  I think we were supposed to do that at the September

14 5th conference.

15        THE COURT:  OK.  On September 5 have in mind that the

16 date for making this motion will be very close to September 5.

17 Thank you.  Anything else?

18        MR. ABRAM:  Not from us, your Honor.  Thank you.

19        THE COURT:  Mr. Silverstone?

20        MR. SILVERSTONE:  Not from us, your Honor.  Thank you.

21        (Adjourned)

22

23

24

25