UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA PILOTS ASSOCIATION, | ) |
| Plaintiff | ) ) ) ) |
| v. | )  No. 1:14-cv-00225-AKH ) |
| JOHN DOE, | ) ) |
| Defendant. | ) ) |

MEMORANDUM IN SUPPORT OF NON-PARTY AIR LINE PILOTS
ASSOCIATION, INTERNATIONAL'S EMERGENCY MOTION
TO ENFORCE THE COURT'S PROTECTIVE ORDER OF AUGUST 14-15, 2014

FACTS

A.   The Alleged Hacking Incident

On November 9, 2013, Plaintiff Delta Pilots Association ("DPA"), an association seeking to replace the Air Line Pilots Association, International ("ALPA") as the certified collective bargaining representative of the Delta Airlines ("Delta") pilots, accused ALPA of hacking into its website the previous day. Declaration of Stanley Silverstone ("Silverstone Dec.") Ex. C (ECF No. 13-3 at 5-6).[1] ALPA investigated and publicly denied any involvement in the alleged hack. Silverstone Dec. Ex. A (ECF No. 13-1 at 11-12). It did, however, learn that DPA President Tim Caplinger had accused an unnamed individual Delta pilot (the "Delta Pilot") of hacking into DPA's website. Declaration of Arthur Luby ¶ 3 (ECF No. 15-3).

The Delta Pilot prepared a statement (the "Statement") recounting his knowledge of the events concerning Mr. Caplinger's allegations and denying any involvement in the alleged

---

[1] Page references refer to the page numbers generated by the Court's ECF system.

00348993.1

hacking incident. Silverstone Dec. Ex. C (ECF No. 13-4 at 2-6). The Statement does not identify the Delta Pilot. *Id.*

**B.     DPA's Lawsuit Against John Doe and Its Motion to Compel Against ALPA**

On January 13, 2014, DPA sued "John Doe" over the alleged hack. Compl. (ECF No. 1). Shortly thereafter, the Court granted leave to DPA to "serve immediate discovery upon third-parties in order to identify defendant John Doe." Silverstone Dec. Ex. A (ECF No. 13-1 at 10).

Four months later, DPA served subpoenas *duces tecum* on ALPA and the Delta Master Executive Council (collectively, "ALPA"), demanding production of documents, including documents identifying the Delta Pilot. *Id.* at 9 (Request No. 2). ALPA objected to "publicly identifying this individual because, as a Delta pilot within the bargaining unit, he is entitled to be protected against the risk that DPA will make untruthful public assertions about him. DPA has engaged in such conduct in the past." Silverstone Dec. Ex. C (ECF No. 13-3 at 4). ALPA did offer to provide the name of the individual if DPA was willing "to maintain the confidentiality of this individual's identity and to enter into an appropriate protective order, for the Court's approval, guaranteeing that confidentiality[.]" *Id.*

DPA rejected ALPA's proposal and moved to compel. On August 14, 2014, the Court heard argument and, based on agreement of the parties, ordered disclosure of the Delta Pilot's identity to DPA's counsel and DPA's President subject to a protective order guaranteeing the confidentiality of that information:

> THE COURT: I think we have agreement. You [DPA counsel Stanley Silverstone] can see the name [of the Delta Pilot]. [ALPA counsel] Mr. Abram will give it to you. Not on the record, but he will give it to you, write it on a piece of paper and give it to you. You will honor the confidentiality. *You and [DPA*

*President] Mr. Caplinger will honor the confidentiality until such time as I grant you permission to change the name of the caption or there is a stipulation to that effect, which I shouldn't think would be withheld.* Until then, you keep it quiet. All right, agreed?

MR. SILVERSTONE: It's agreed, your Honor.

Declaration of Michael Abram ("Abram Dec.") ¶ 2 and Ex. 2 at 7 (emphasis added). The next day, the Court issued a written Discovery Order, stating: "For the reasons stated on the record at oral argument, [DPA's] motion is granted *to the extent provided for in the record and subject to the stated limitations in the record.*" ECF No. 21 (emphasis added).

During the August 14 argument, DPA's counsel promised the Court that it would take the deposition of the Delta Pilot. Abram Dec. Ex. 2 at 10-12. The Delta Pilot has advised ALPA attorney Arthur Luby that (following the Court's August 14-15 ruling) he never received a subpoena from DPA, that DPA never took his deposition, and that he never even received an email from DPA requesting his appearance at a deposition. Second Declaration of Arthur Luby ¶ 3.

## C.     DPA's Dismissal of Its Lawsuit

DPA never asked ALPA for a stipulation to allow it to publicly disclose the identity of the Delta Pilot or to publicly name him as a Defendant in the lawsuit, and it likewise never requested permission of the Court to name the Delta Pilot as a Defendant. Abram Dec. ¶ 3. Instead, on September 30, 2014, DPA filed a Notice of Dismissal of its lawsuit against John Doe. ECF No. 25.

## D.     DPA's Threat to Publicly Disclose the Identity of the Delta Pilot

3

On Friday, October 3, 2014, DPA publicly threatened to publicly identify the Delta Pilot and to sue him in another jurisdiction:

> **WEBSITE HACKING LAWSUIT UPDATE**
>
> On September 29th [sic], DPA voluntarily dismissed the DPA vs JOHN DOE lawsuit in New York Federal Court. We have harvested a great deal of information and have pinpointed key players in the crime. We have offered several opportunities for those involved to take public responsibility and avoid what is about to happen. Those offers have been refused. Anyone directly involved may still contact the DPA Attorney if their intention is to cooperate. Now, we are moving forward with a new named lawsuit in the home state of one of the key players. Once entered into the public record, all will begin to learn the identities of those involved and what organization they may be affiliated with.

Second Declaration of Michael Hanson ¶ 3 and Ex. 1 at 2-3.

On the morning of October 6, ALPA counsel wrote to DPA counsel reminding of the Court's Protective Order and asking for confirmation that neither he nor DPA President Caplinger has or will disclose the identity of the Delta Pilot. Abram Dec. ¶ 4 and Ex. 2 at 2-3. DPA counsel responded that the Protective Order "provided for confidentiality of the individual's identity *until we choose to name him as a party*" and asserted that ALPA's "position that DPA cannot sue in the state that has personal jurisdiction without approval of the NY court (which does not have any jurisdiction) is patently absurd." *Id.* at 1-2 (emphasis added). ALPA counsel responded the same day by quoting the precise terms of the Protective Order and noting that DPA could not evade that Order simply by dismissing the case. The email further stated: "[W]e expect DPA and its counsel to honor that undertaking [in the Protective Order] and if you and DPA cannot promptly commit to doing so, we will ask the Court to require it and to provide such other relief as the Court deems appropriate." *Id.* at 1.

4

DPA failed to provide that commitment (Abram Dec. Ex. 3), which has prompted this emergency motion.

## ARGUMENT

### DPA's Threatened Lawsuit Against the Delta Pilot Violates This Court's Protective Order of August 14-15.

DPA's threatened lawsuit against the Delta Pilot plainly violates the Court's August 14-15 Protective Order. That Order, to which DPA agreed on the record, requires DPA to maintain the confidentiality of the identity of the Delta Pilot "until such time as [the Court] grant[s DPA] permission to change the name of the caption or there is a stipulation to that effect[.]" Contrary to DPA's position, nothing in the Protective Order states that it expires upon DPA's dismissal of the lawsuit. Moreover, DPA never sought the Court's permission to change the name of the caption, never sought a stipulation from ALPA to that effect, and never even deposed the Delta Pilot in an attempt to elicit further information. Instead, it decided to dismiss the lawsuit without taking any of those steps.

This Court plainly has jurisdiction to continue to enforce the Protective Order. A protective order remains in force, and a court has jurisdiction to enforce it, even after a case is closed or dismissed. *E.g., Public Citizen v. Liggett Group*, 858 F.2d 775, 781-82 (1st Cir. 1988) (court has power to enforce protective order, "including periods after judgment"); *Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 91 (E.D.N.Y. 2012) (permitting union to intervene to enforce confidentiality order even though the "underlying case has been closed for nearly one year"); *Pac. Gas & Elec. Co. v. U.S.*, 79 Fed. Cl. 744, 746 (2007) ("The court issuing the protective order retains jurisdiction and authority to enforce that order even after final judgment in the

5

underlying action was entered."); *Marshall v. Planz*, 347 F. Supp. 2d 1198, 1201 (M.D. Ala. 2004) (court has jurisdiction to enforce protective orders "even after final judgment" and closure of case); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139-40 (2d Cir. 2004) (stipulation of dismissal does not "divest[] a court of jurisdiction" concerning its protective orders), *aff'd and remanded*, 377 F.3d 133 (2d Cir. 2004); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (court has jurisdiction to modify protective order "even if the underlying suit has been dismissed"); *Akron Beacon Journal v. Met. Life Ins. Co.*, 1995 WL 234710, at *5-6 (S.D.N.Y. Apr. 20, 1995) (same). Thus, for example, in *Pacific Gas & Electric*, the court granted a party's motion to enforce a protective order in a case after final judgment had been entered because the opposing party's counsel had utilized documents subject to the protective order in another proceeding in violation of the protective order. *Pac. Gas*, 79 Fed. Cl. at 746-47. Similarly, Judge Spatt permitted a police union to intervene to enforce a confidentiality order concerning the release of a report that concerned its members, despite the fact that the case had been closed for almost a year. *Dorsett*, 283 F.R.D. at 91.

Stated bluntly, there is no defense for DPA's threatened contumacious conduct. It easily could have complied with the Protective Order but has threatened not to do so and has resorted to unpersuasive procedural machinations as justification. The Court accordingly should order DPA to comply with the Protective Order and, further, should order DPA to pay to ALPA the attorneys' fees and costs that it incurred in preparing and filing the instant motion and memorandum. *See* Fed. R. Civ. P. 45(d)(1) (court may award attorneys' fees to nonparty when party issuing subpoena fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"), 37(b)(2)(C) (allowing award of attorneys' fees

6

arising out of noncompliance with discovery orders), 71 (procedure for enforcing order granting relief for nonparty is same as for party).

## CONCLUSION

The Court should order DPA and its counsel to comply with the Protective Order and, further, should order DPA to pay to ALPA the attorneys' fees and costs that it incurred in its communications with DPA counsel attempting to secure compliance, in preparing and filing the instant motion and memorandum, and in any further proceedings on this motion.

Dated: October 7, 2014                                  Respectfully submitted,

/s/ Michael E. Abram
Michael E. Abram
COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York  10036
Telephone:  (212) 356-0208
Facsimile:  (212) 695-5436

*Counsel for Air Line Pilots Association, Int'l*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2014, I electronically filed the Emergency Motion and Memorandum in Support of Non-Party Air Line Pilots Association, International's Motion to Enforce the Court's Protective Order of August 14-15, 2014, the accompanying Declarations of Michael Hanson, Michael E. Abram and Arthur Luby and the Proposed Order with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>Stanley J. Silverstone
>Lucas K. Middlebrook
>SEHAM, SEHAM, MELTZ & PETERSEN, LLP
>445 Hamilton Avenue, Suite 1204
>White Plains, NY 10601

>Nicholas Granath
>SEHAM, SEHAM, MELTZ & PETERSEN, LLP
>2915 Wayzata Blvd.
>Minneapolis, MN 55405

/s/ Michael E. Abram
Michael E. Abram