# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DELTA PILOTS ASSOCIATION,

Plaintiff,

v. 14 Civ. 225 (AKH)

JOHN DOE,

Conference

Defendant.

------------------------------x

New York, N.Y.
August 14, 2014
2:40 p.m.

Before:

HON. ALVIN K. HELLERSTEIN

District Judge

APPEARANCES

SEHAM, SEHAM, MELTZ & PETERSEN, LLP
Attorneys for Plaintiff
BY: STANLEY J. SILVERSTONE

COHEN, WEISS AND SIMON LLP
Attorneys for Intervenor Airline Pilots Association International
BY: MICHAEL A. ABRAM

(Case called)

MR. SILVERSTONE: Stanley Silverstone for the plaintiff.

MR. ABRAM: Michael Abram of Cohen Weiss and Simon for the nonparty Airline Pilots Association responding to the motion. With me is Mr. Art Luby as a representative of the client.

THE COURT: Thank you. Be seated. Mr. Silverstein, I need you to speak as loudly as Mr. Abram speaks.

MR. SILVERSTONE: I will, your Honor.

THE COURT: I intend to go over the three or four different issues that the motion poses but then to ask where are we going with this whole case. Let's do the specific things first.

Delta Pilots Association asks for responsive documents that contain, describe, or reference any facts learned or information generated in any investigation by ALPA or the ALPA Delta --

MR. ABRAM: MEC, your Honor.

THE COURT: What does that mean?

MR. ABRAM: Master executive council. That's the local governing body.

THE COURT: Mr. Abram, why won't you give that?

MR. ABRAM: Your Honor, what they want is not related to the purpose of the order that the Court granted, which was

to enable them to identify the so-called John Doe.

THE COURT: You said you have read it and there is no reference. It is understandable why they don't trust that.

MR. ABRAM: Your Honor, if they could simply serve a subpoena on a nonparty and say show us any documents that touch on anything having to do with this subject so that they could decide what to do about it, that is far beyond the narrow discovery that the Court ordered.

THE COURT: Did your client investigate the issue that is at the heart of this lawsuit?

MR. ABRAM: They investigated to the extent they could whether there was a so-called hacker or person who had redirected, which is really what happened here --

THE COURT: Mr. Silverstone, if I order Mr. Abram to give that to you, how can Mr. Abram be assured that you can confine your inquiry to the relevant fact of the purpose of the investigation in relationship to the John Doe?

MR. SILVERSTONE: The relevant fact for us, your Honor, is to identify who is responsible for the hacking.

THE COURT: But you are looking at an investigative report that could touch on a lot of other things.

MR. SILVERSTONE: It could, your Honor, and we don't know without seeing those documents. All we do know is that ALPA apparently investigated the exact same incident that we are investigating to get the exact same information that we are

trying to get.

THE COURT: If I looked at it, would you trust me?

MR. SILVERSTONE: I would, your Honor.

THE COURT: Mr. Abram, would your --

MR. SILVERSTONE: With one proviso, your Honor. The information may have technical information in it that requires to be seen by an expert.

THE COURT: What kind of expert?

MR. SILVERSTONE: A forensic computer expert, someone who knows how all this stuff works more than we do.

THE COURT: Do you trust me, Mr. Abram?

MR. ABRAM: I do trust you, your Honor. I would want to be sure exactly what we are talking about. We can provide to the Court the report that ALPA's IT people made to the Delta MEC at the time.

THE COURT: Why don't we go off the record. You whisper into Mr. Silverstone's hear what it is that you would offer to produce, and if he is satisfied, that's what I will look at.

(Discussion off the record)

THE COURT: What is it that you will give me?

MR. ABRAM: Your Honor, we would provide for your review the report that was made by the ALPA IT people to the Delta MEC in November of 2013, when they learned about this alleged incident.

THE COURT: You wouldn't have it with you now?

MR. ABRAM: I would have that with me, your Honor.

THE COURT: I'll look at it right now.

MR. ABRAM: I'm handing up to the Court a two-page document.

THE COURT: Is this the entire report?

MR. ABRAM: That is the entire report made to the Delta MEC that has been provided to me.

THE COURT: Page 1 is a report of the investigation. Page 2 is a listing of various searches that seem to have been made. I wonder, Mr. Abram, if you couldn't let Mr. Silverstone see this. It doesn't seem to me that there is anything of any sensitive nature in here.

MR. ABRAM: Yes, your Honor, I'll be happy to share this with Mr. Silverstone on the basis that we are doing this as requested.

THE COURT: It's not a waiver of anything else.

MR. ABRAM: Thank you, your Honor.

THE COURT: To my untrained eye, Mr. Silverstone, the only thing of relevance is the reference to a Web name. That leads into the second request for all responsive documents that identify the private individual referenced in the publication of the pilots association. What protection do you think would be appropriate, Mr. Abram?

MR. ABRAM: Your Honor, what we proposed in our

proposed order is that with respect to that individual's name, the plaintiff could not disclose that name or his email address or other identification. If they wished to, after investigating on their own whatever relationship they believe he has to the incident, if they believe he is somebody who hacked their site, which he says he was not, but if they believe that he was and they can support that enough to name him in their lawsuit, then we ask that they ask the Court first for permission to name him.

THE COURT: In other words, if his identity is learned, the next appropriate step would be for Mr. Silverstone to move to amend under rule 21 to add a party and drop a party, add the individual and drop John Doe, and at that time if I grant the motion, the name could be public?

MR. ABRAM: That's correct, your Honor.

THE COURT: Not before?

MR. ABRAM: That's correct, your Honor.

THE COURT: How about that, Mr. Silverstone?

MR. SILVERSTONE: If we were provided with the identity of the individual and we could share that --

THE COURT: It would be for --

MR. SILVERSTONE: For our use alone.

THE COURT: -- your use alone. Do you need to share it with your client?

MR. SILVERSTONE: I think we would need to share it

with our client because he may have additional information that we don't have.

THE COURT: How many people and your client?

MR. SILVERSTONE: It is really just one, your Honor.

THE COURT: What is the name of that person?

MR. SILVERSTONE: That's Tim Caplinger, who is the interim president of DPA.

THE COURT: That is the guy who is named in this?

MR. SILVERSTONE: Yes. His name comes up, that's true, in the ALPA report.

THE COURT: I think we have agreement. You can see the name. Mr. Abram will give it to you. Not on the record, but he will give it to you, write it on a piece of paper and give it to you. You will honor the confidentiality. You and Mr. Caplinger will honor the confidentiality until such time as I grant you permission to change the name of the caption or there is a stipulation to that effect, which I shouldn't think would be withheld. Until then, you keep it quiet. All right, agreed?

MR. SILVERSTONE: It's agreed, your Honor. The only other request I would make is whether we can have a copy of at the very least the header of the email that came with the author's statement so that we can authenticate that the statement was written by the person who they are --

THE COURT: I think that is reasonable, Mr. Abram.

MR. ABRAM: Let me show right now Mr. Silverstone that header.

THE COURT: The record will show that Mr. Abram is showing a header in a document to Mr. Silverstone.

MR. SILVERSTONE: I wouldn't mind having a copy of that.

THE COURT: What do you need a copy for?

MR. SILVERSTONE: Or I would like to write down the email address.

THE COURT: Write it down.

MR. ABRAM: We will write it for you.

MR. SILVERSTONE: Thank you, your Honor.

THE COURT: Write it down now.

The third request is for all responsive documents that identify the third party referenced in a certain ALPA publication dated May 21, 2014. That publication has to do with a request by a certain Delta pilot for legal advice of the general counsel of Delta. Why do you need it?

MR. ABRAM: Before he answers that, I think that is the same individual, your Honor.

MR. SILVERSTONE: Assuming it is the same individual, then that is not in dispute.

MR. ABRAM: Same individual.

THE COURT: So we solved all the problems. The motion to compel is granted to the extent allowed on the record of

this session.

Mr. Silverstone, where are we going with this case?

MR. SILVERSTONE: Your Honor, since we started discovery back in January, we've accomplished a lot. We have served at least half a dozen different subpoenas on Internet service providers and telephone companies.

THE COURT: I know it's a lot of activity that you have done. What more do you need?

MR. SILVERSTONE: We probably need a little bit more time to make a decision as to whether we have enough information to make one of these potential individuals a defendant.

THE COURT: Let's say you have. What then? What happens if you make out a technical violation of the statute?

MR. SILVERSTONE: I think it is up to the client to decide whether he wants to proceed.

THE COURT: Let's say he proceeds. What does he get? What could he recover?

MR. SILVERSTONE: He could recover damages for the cost of the investigation and any damages he could prove that may have been caused to the organization.

THE COURT: Let's say he can't prove damages and all you have is legal expense.

MR. SILVERSTONE: Right, and expert fees. There will be some damages for not only the investigative aspect but the

repair work that was done to get the website back up online.

THE COURT: What are you talking? $2500?

MR. SILVERSTONE: I think it is a lot more than that, your Honor.

THE COURT: $5,000?

MR. SILVERSTONE: I think DPA would also argue that during the time that the website was misdirected there were donations and --

THE COURT: Speculative.

MR. SILVERSTONE: It may be speculative, but that is the position of DPA.

THE COURT: Off the record.

(Discussion off the record)

(Recess)

THE COURT: Counsel report to me that the settlement I outlined merely as a suggestion, not on any informed basis, would not be acceptable at this time. Perhaps with more discussion it might be, but it is not now acceptable.

This case will proceed in normal fashion. The next step will be a motion to amend the caption. When will that occur, Mr. Silverstein?

MR. SILVERSTONE: I believe, your Honor, we are going to need at least 30 days. We have some outstanding subpoenas that have not been responded to.

THE COURT: I'm not sure you are going to do very well

with subpoena practice. It seems to me that you are using this case as a fishing expedition for a lot of other information that is intended as relevant not to this case but for other purposes in your jurisdictional dispute. I want you to know that this Court will not lend itself to that practice.

MR. SILVERSTONE: Your Honor, I respectfully disagree with that. We have only conducted this litigation for the sole purpose of finding out who is at the bottom of this hacking incident.

THE COURT: I heard what you said. I gave you the discovery that you have asked for. You now know the name of the person who was involved. If you want to take that person's deposition to see if anyone else was involved, you can do so. But I don't see any room for bothering other people with subpoenas.

MR. SILVERSTONE: As I said, there is a subpoena outstanding to the web hosting company. The subpoena was written by our computer expert.

THE COURT: Is there a motion to quash, Mr. Abram?

MR. ABRAM: Your Honor, I'm not aware of any other motion practice in the case. We have just responded to the motion with respect to ALPA.

THE COURT: If they give discovery voluntarily, of course, they can give it. If you ask me, I don't see that it is relevant, at least not until you take the deposition of the

individual.

MR. SILVERSTONE: We will do that, your Honor.

THE COURT: Let your client know what I said before. You have to show me what is relevant. At this point in time it seems to me you have everything and you are prolonging the case simply for other purposes. I'm not saying that is a finding. It is not a finding. It is an observation.

We have a date in September. There is no need to accelerate at this point in time. I do want to have a fixed date. When does your case management plan say you have to make a motion.

MR. SILVERSTONE: We don't have a plan yet, your Honor. I think we were supposed to do that at the September 5th conference.

THE COURT: OK. On September 5 have in mind that the date for making this motion will be very close to September 5. Thank you. Anything else?

MR. ABRAM: Not from us, your Honor. Thank you.

THE COURT: Mr. Silverstone?

MR. SILVERSTONE: Not from us, your Honor. Thank you.

(Adjourned)