Stanley J. Silverstone
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, New York 10601
(914) 997-1346

Nicholas P. Granath (*pro hac vice*)
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
(612) 341-9080
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA PILOTS ASSOCIATION,<br>     a labor organization<br>     incorporated in Florida<br>                   Plaintiff<br>v.<br><br>JOHN DOE,<br>     an individual<br>               Defendant. | Civil Action No.: 1:14-cv-00225-AKH<br><br>**MEMORANDUM OF LAW<br>IN OPPOSITION TO THE<br>"EMERGENCY MOTION OF THE<br>AIR LINE PILOTS ASSOCIATION,<br>INTERNATIONAL<br>TO ENFORCE THE COURT'S<br>PROTECTIVE ORDER<br>OF AUGUST 14-15, 2014"** |

## I)      <u>SUMMARY.</u>

Following plaintiff DPA's voluntary dismissal without prejudice of the Complaint against unnamed "Does" in this matter, non-party ALPA brought this "emergency" motion without standing and devoid of any factual or legal grounds that, in effect, asks for an order the Court cannot grant for lack of jurisdiction or authority, which is to bar DPA from filing suit against a named defendant in another court that has personal jurisdiction over that defendant. The motion is frivolous.

## II)        BACKGROUND.

Plaintiff, the Delta Pilots Association ("DPA"), is a labor organization of pilots employed at Delta Air Lines, Inc. that seeks to replace the existing union, the movant, non-party Air Line Pilots Association, International ("ALPA"), as the certified bargaining representative of the Delta pilots.  (Complaint, Doc. 1 at ¶ 2).

On or about November 8, 2013, DPA's website was disrupted (i.e. 'hacked') in a manner that damaged it and caused it to malfunction, in particular by displaying a 'clone' web page that falsely proclaimed that DPA had quit its campaign and had thrown its support to ALPA and that further displayed a link to ALPA's web site. (Doc. 1, ¶ 38).

On January 13, 2014, DPA commenced an action in this Court against unknown "John Does" for multiple violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.,* based on the website disruption.  Notably, *personal jurisdiction* for the "John Doe" action against unnamed defendants in this Court was premised on the allegation that Defendant committed illegal acts within this district "by purposefully contacting and using internet and computer communications to access, without authorization, DPA's web site through or on computers used in interstate commerce, which are owned, controlled, or maintained by SquareSpace, Inc. that has its principal business offices in New York." (Doc. 1, ¶ 6).

On January 29, 2014, after a motion brought by DPA, this Court granted an order allowing DPA to "serve immediate discovery upon third parties in order to identify defendant John Doe." (Doc. 5).

Thereafter, pursuant to that authority, DPA served ten non-parties with subpoenas for production of documents, including the movant ALPA, as well as obtained voluntary production without any subpoena from other non-parties. (Declaration of Nicholas Paul Granath, herein after "Granath Decl." at ¶ 4).  DPA also retained a forensic computer expert for consultation. (Granath Decl. ¶ 5).[1]

On May 28 and then June 3, 2014, DPA caused ALPA International and its subordinate Delta MEC to be served with subpoenas *duces tecum*.  However, after ALPA refused to fully comply, DPA brought a motion to compel on June 7, 2014. (Doc. 12). Following a full round of briefing a hearing was held on August 14, 2014.

In the hearing ALPA argued, as it did in its brief, that the subpoena should not be enforced because it supposedly exceeded the scope of this Court's January 29th order to serve immediate discovery. (Doc. 30-1 hereinafter cited to as "Tr." by page and line number; Tr. 3:7 – Abram [it is] "… far beyond the narrow discovery that the Court ordered.").  After confirming that ALPA had undertaken its own "investigation" into the disruption of DPA's website (Tr. 3:9-13), the Court addressed counsel for DPA and this dialogue ensued:

THE COURT: Mr. Silverstone, if I order Mr. Abram to give that to you, how can Mr. Abram be assured that you can confine your inquiry to the relevant fact of the purpose of the investigation in relationship to the John Doe?
MR. SILVERSTONE: The relevant fact for us, your Honor, is to identify who is responsible for the hacking. (Tr. 3:14).

The Court then asked both counsel if they would trust the Court to review the

---

[1] DPA has also cooperated with a Special Agent assigned by the FBI.

documents and both counsel indicated that they would. (Tr. 4:3; 4:11).  After additional discussion, the Court then received and examined the documents that counsel for ALPA had brought to court. (Tr. 5:4).

The Court then took up the "second request for all responsive documents that identify the private individual referenced … [in ALPA documents]" (Tr. 5:21) and asked counsel for ALPA what protection would be appropriate (Tr. 5:23).   This dialogue followed in resolution of this second item (Tr.  5:25 to 8:13):

MR. ABRAM: Your Honor, what we proposed in our proposed order is that with respect to that individual's name, the plaintiff could not disclose that name or his email address or other identification. If they wished to, after investigating on their own whatever relationship they believe he has to the incident, if they believe he is somebody who hacked their site, which he says he was not, but if they believe that he was and they can support that enough to name him in their lawsuit, then we ask that they ask the Court first for permission to name him.

THE COURT: In other words, if his identity is learned, the next appropriate step would be for Mr. Silverstone to move to amend under rule 21 to add a party and drop a party, add the individual and drop John Doe, and at that time if I grant the motion, the name could be public?

MR. ABRAM: That's correct, your Honor.

THE COURT: Not before?

MR. ABRAM: That's correct, your Honor.

THE COURT: How about that, Mr. Silverstone?

MR. SILVERSTONE: If we were provided with the identity of the individual and we could share that --

THE COURT: It would be for --

MR. SILVERSTONE: For our use alone.

THE COURT: -- your use alone. Do you need to share it with your client?

MR. SILVERSTONE: I think we would need to share it with our client because he may have additional information that we don't have.

THE COURT: How many people and your client?

MR. SILVERSTONE: It is really just one, your Honor.

THE COURT: What is the name of that person?

MR. SILVERSTONE: That's Tim Caplinger, who is the interim president of DPA.

THE COURT: That is the guy who is named in this?

MR. SILVERSTONE: Yes. His name comes up, that's true, in the ALPA report.

THE COURT: I think we have agreement. You can see the name. Mr. Abram will give it to you. Not on the record, but he will give it to you, write it on a piece of paper and give it to you. You will honor the confidentiality. You and Mr. Caplinger will honor the confidentiality until such time as I grant you permission to change the name of the caption or there is a stipulation to that effect, which I shouldn't think would be withheld. Until then, you keep it quiet. All right, agreed?

MR. SILVERSTONE: It's agreed, your Honor.  The only other request I would make is whether we can have a copy of at the very least the header of the email that came with the author's statement so that we can authenticate that the statement was written by the person who they are --

THE COURT: I think that is reasonable, Mr. Abram.

MR. ABRAM: Let me show right now Mr. Silverstone that header.

THE COURT: The record will show that Mr. Abram is showing a header in a document to Mr. Silverstone.

MR. SILVERSTONE: I wouldn't mind having a copy of that.

THE COURT: What do you need a copy for?

MR. SILVERSTONE: Or I would like to write down the email address.

THE COURT: Write it down.

MR. ABRAM: We will write it for you.

MR. SILVERSTONE: Thank you, your Honor.

THE COURT: Write it down now.

After this, the "third" item requested was taken up, which was for "all responsive documents that identify the third party referenced in a certain ALPA publication dated May 21, 2014 …[that] … has to do with a request by a certain Delta pilot for legal advice of the general counsel of Delta." (Tr. 8:14).  Counsel for ALPA then confirmed the identified third party was "the same individual" identified in papers responsive to the second request. (Tr. 8:20; 8:23).  The Court then ruled:

THE COURT: So we solved all the problems. The motion to compel is granted to the extent allowed on the record of this session." (Tr. 8:24).

Thereafter some dialogue followed in response to the Court's inquiry, "where are we going with this case?" (Tr. 9:2).  This included counsel for DPA advising the Court that, "We probably need a little bit more time to make a decision as to whether we have

enough information to make one of these potential individuals a defendant." (Tr. 9:9). There then followed some dialogue about a possible settlement of the case, mostly off the record, but as soon as it became clear there would not be any, the Court stated:

COURT: This case will proceed in normal fashion. The next step will be a motion to amend the caption. When will that occur …? (Tr. 10:19)

After additional discussion the Court asked counsel for DPA, "When does your case management plan say you have to make a motion?" (Tr. 12:10).  Counsel indicated that there was no plan but reminded the Court of the then-scheduled September 5 status conference.  The Court then closed the hearing, telling counsel for the DPA that he should "have in mind that the date for making this motion" at the conference, and that the date should be close in time to the conference. (Tr. 12:15).

Nothing in the hearing on August 14, 2014, or on the transcript, was said or implied about restricting DPA from voluntarily dismissing the action against any John Doe and commencing a new action elsewhere against an identified defendant in a venue that would have personal jurisdiction over that named defendant.  Nor has the Court ever so restricted DPA.

Next, on August 19, the Court issued a written order stating that DPA's motion to compel non-party ALPA was, "granted to the extent provided for in the record and subject to the stated limitations in the record." (Doc. 21).  No order titled a "protective order" citing, or pursuant to, Rule 26(c), was ever entered.

As a result of production in response to DPA subpoenas served on non-parties other than ALPA that was obtained before this Court ordered ALPA to comply with

- 6 -

DPA's subpoena on August 19, 2014 (Doc. 21), the name of the person the movant describes as "the Delta pilot" (i.e. "John Doe 1") appeared in several documents obtained in discovery by DPA. (Granath Decl. ¶ 6).   Therefore, the Court's order to ALPA to comply with the subpoena tended to corroborate the name of John Doe 1 that appeared in other documents already obtained from sources other than ALPA. (Granath Decl. ¶ 7).

Between August 18 and September 11, 2014, counsel for DPA sent correspondence to John Doe 1 to six separate addresses, by certified and U.S. first-class mail, that among other things requested John Doe 1's attorney to contact counsel for DPA immediately. (Granath Decl. ¶ 8).   All six addresses were obtained directly or indirectly from information produced in response to subpoena(s), and were located in a particular venue *outside* of this Court's jurisdiction. (Granath Decl. ¶ 9).   As of the date of this filing, neither John Doe 1 nor any attorney for John Doe 1 has contacted counsel for DPA, or DPA itself, or Tim Caplinger, Interim President of DPA, in response to this correspondence or this (withdrawn) lawsuit. (Granath Decl. ¶ 10); (Declaration of Stanley J. Silverstone, hereinafter "Silverstone Decl." at ¶ 4); (Declaration of Tim Caplinger, hereinafter "Caplinger Decl." at ¶ 4).   ALPA has confirmed that it is *not* counsel for John Doe 1. (Silverstone Decl. ¶ 5, Ex. A, p. 1).

On September 5, 2014, a status conference was held and attended by the only party in the action, DPA.   In dialogue off the record, counsel for DPA indicated to the Court that by September 30, DPA would either move to amend the complaint to name a defendant, or dismiss the action without prejudice. (Silverstone Decl. ¶ 6).   The Court

agreed and a minute order was entered after the conference the same day, September 5, which reflected that discussion and provided that DPA had until September 30, 2014 to move to amend.  Reflecting the conference discussion, the Court entered an order a few days later on September 8 expressly stating that DPA had until September 30 to "either" proceed against a named defendant by moving to amend the Complaint "*or to dismiss the complaint without prejudice*," which would allow naming a defendant in another action. (Doc. 24) [emphasis added].

Pursuant to Rule 41(a)(1)(A)(i), on September 30, 2014, DPA filed a notice of voluntary dismissal of the John Doe action "without prejudice" and noted the fact that "no defendant has filed an answer to the complaint or a motion for summary judgment." (Doc. 25).

Following this voluntary dismissal, DPA sent the following statement to its supporters by e-mail:

> Website Hacking Lawsuit Update. On September 29th, DPA voluntarily dismissed the DPA vs JOHN DOE lawsuit in New York Federal Court.  We have harvested a great deal of information and have pinpointed key players in the crime.  We have offered several opportunities for those involved to take public responsibility and avoid what is about to happen.  Those offers have been refused.  Anyone directly involved may still contact the DPA Attorney if their intention is to cooperate.  Now, we are moving forward with a new named lawsuit in the home state of one of the key players.  Once entered into the public record, all will begin to learn the identities of those involved and what organization they may be affiliated with.

(Caplinger Decl. ¶ 5).  The above information was not posted on DPA's website (Caplinger Decl. ¶ 6); thus, ALPA incorrectly alleges that this information was distributed "publicly."  (ALPA Memorandum, Doc. 27, at 4).  Indeed, the only *public*

disclosure of DPA's "Website Hacking Lawsuit Update" is ALPA's public filing of this motion.

No information has been published or conveyed by DPA, its attorneys or anyone acting on its behalf, that has publicly identified any potential named defendant, or the home state of any potential named defendant. (Caplinger Decl. ¶ 7).

DPA intends to commence an action against John Doe 1 in John Doe 1's home state at the earliest opportune time, and until the present "emergency" motion, was preparing its filing. (Caplinger Decl. ¶ 8).

However, on October 6, counsel for non-party ALPA sent an email to counsel for DPA claiming that DPA was barred "… from publicly disclosing the identity of the individual identified privately during the August 14 hearing" (Silverstone Decl. ¶ 7).  The email did not accuse, nor has ALPA since accused, DPA of *actually* disclosing anyone's identity. (Silverstone Decl. ¶ 8).  On the contrary, the email asked that DPA "confirm that neither DPA, nor you or Mr. Caplinger, has disclosed, and that none of you will disclose, the identity of that individual."  (Silverstone Decl. ¶ 9).    Counsel for DPA responded to the email inquiry on the same day stating:

> Your email comes as a surprise because nothing in what you quote from the "Website Hacking Lawsuit Update" discloses the name of the individual who confessed his involvement in the hacking to ALPA in correspondence which ALPA unsuccessfully sought to conceal.  In fact, the "Update" shows that DPA has complied in all respects with the confidentiality agreement in the action that is now over.  That agreement provided for confidentiality of the individual's identity until we choose to name him as a party.  We dismissed the action in NY because NY does not have personal jurisdiction over this individual.  Your position that DPA cannot sue in the state that has personal jurisdiction without approval of the NY court (which does not have any jurisdiction) is patently absurd.

Please let us know whether you will be representing this individual for all purposes, and whether you will accept service of process on his behalf.

(Silverstone Decl. ¶ 10).   The next day counsel for ALPA replied to confirm: "… neither my firm nor any lawyer employed by ALPA represents the individual to whom you refer [for] purposes of any litigation that DPA intends to bring against that individual." (Silverstone Decl. ¶ 5, Exhibit A).   ALPA's "emergency' motion now at bar was filed the same day.

### III)　　　__ARGUMENT.__

### 1)　　__ALPA Lacks Standing.__

Standing has three requirements: first, a party that has suffered an injury in fact, i.e. an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not merely conjectural or hypothetical; second, causal connection between the injury and the conduct complained of, and; third, it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).

This action was voluntarily dismissed without prejudice (Doc. 25) before non-party ALPA brought its "emergency motion … to enforce the Court's protective order of August 14-14" expressly predicated on Rule 71 (Doc. 26).   Rule 71, however, does not independently confer standing.   Rather, non-parties such as ALPA must first demonstrate standing in order to invoke Rule 71.   *Brennan v. Nassau County*, 352 F.3d 60, 65 (2d Cir.

2002) (non-parties must be able to meet the requirements of standing).

Here, because no order was ever entered – regardless of how it is characterized or termed – that did, or was intended to, *protect non-party ALPA* therefore ALPA cannot demonstrate standing. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 387-88 (D.C. Cir. 1993) (Rule 71 permits intended beneficiaries of consent decree to sue to enforce decree; incidental third-party beneficiaries do not have such standing). And non-party ALPA is not free to assert the rights of others to support *its* claim of standing. *Hinck v. U.S.*, 127 S. Ct. 2011, 2017 (2007) ([plaintiff] … cannot rest his claim to relief on the legal rights or interests of third parties"); *Powers v. Ohio*, 499 U.S. 400, 409-410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interest, and cannot rest a claim to relief premised on the legal rights or interests of third parties"); *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996), *cert. denied*, 520 U.S. 1155 (1997) (same).

The Court-imposed condition on granting DPA's motion to compel ALPA's compliance with DPA's subpoena, i.e. to keep "confidential" the name of Doe 1 until named in a lawsuit then anticipated to be filed in this Court after a motion for that purpose – benefited and was intended to benefit only Doe 1 – not ALPA. Indeed, it was ALPA's express argument at the time that Doe 1 was not liable and so DPA's motion to compel "… invites abuse of a Delta Pilot due to DPA's refusal to agree to a reasonable protective order" (Doc. 15, p. 14 of 19).

ALPA was at most an incidental beneficiary of the Court-imposed condition on

the order adverse to ALPA compelling it to comply with DPA's subpoena.  ALPA is not a party to an action seeking to vindicate anyone's claim.  ALPA has no interest as an organization in defending Doe 1.  Indeed, ALPA appears to have taken the position that Doe 1 is responsible for Doe 1's own conduct – and that conduct, according to ALPA, does not give rise to criminal culpability or civil liability.[2]  Nor does ALPA's counsel represent Doe 1. (Silverstone Decl. ¶ 5).  ALPA is not affected by a suit against Doe 1 or any other party who is not ALPA or ALPA's agent.  Consequently, ALPA cannot show any standing for its "emergency" motion.

## 2)   <u>The Court Lacks Jurisdiction.</u>

Standing is a jurisdictional requirement in federal court. *See*, *U.S. v. Windsor*, 133 S. Ct. 2675, 2685 (2013); *Hein v. Freedom From Religion Foundation, Inc.*, 127 S. Ct. 2553, 2562 (2007); *Lance v. Coffman*, 127 S. Ct. 1194, 1196 ("one component of the case-or-controversy requirement is standing …").

Because non-party ALPA lacks standing, as argued herein above, this Court therefore lacks jurisdiction over ALPA's motion.  This is so even if the Court retains jurisdiction over such collateral matters as a protective order.

Cases cited by ALPA (Doc. 27, p. 5-6) for the proposition that a court retains jurisdiction to enforce a protective order even after a case is closed all miss the point because ALPA lacks standing.  (In addition, there was no Rule 37 "protective order"

---

[2] Noting that DPA reserves all legal claims and prerogatives to follow the evidence where it leads.

- 12 -

entered here.  And, unlike this case, there was a judgment entered in the cases ALPA cites.)

Moreover, this is not a situation where only ALPA can muster further attempts to keep Doe 1's identity secret.  If Doe 1 (who possibly could have standing) were able to convince this Court of the need, then Doe 1 could petition to appear by pseudonym under Rule 10. *See*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (listing 10 factors for considering to permit a plaintiff to remain anonymous against the public's interest and the prejudice to the defendant); *see also*, *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (to proceed by pseudonym the party must petition); *see also*, *North Jersey Media Group Inc., v. John Doe Nos. 1-5 D/B/A Stoopidhousewives.com*, 2012 U.S. Dis. LEXIS 167317 (S.D.N.Y. Nov. 26, 2012) (applying *Sealed* to deny protective order to prevent disclosure of identity of "Doe" and allowing suit to proceed against named defendant).  Of course, if Doe 1 were to appear, Doe 1 would also have to prove the merits of a motion to enforce any "protective order" assuming there was one, but, for the reasons argued herein below, Doe 1 could not do so any more than non-party ALPA.

**3)**   **The Motion Is Factually Groundless Because The Court-imposed Condition On Enforcing The Subpoena Against ALPA Did Not Extend To Restricting DPA From Suing A Named Party In Any Other Proper Jurisdiction.**

The factual grounds for non-party ALPA's motion are missing:

First, ALPA's motion is predicated on a gross inaccuracy, i.e., that DPA forfeited its right to name a defendant in any forum other than this Court in a lawsuit following

plaintiff's voluntary dismissal of the Complaint without prejudice, or that the Court ordered it must.  There is no "protective order" as claimed by ALPA.  Rather, the docket shows only an order granting a motion to compel with limitations.  No part of the hearing in August on DPA's motion to compel compliance with its subpoena directed to ALPA, no part of the order compelling compliance with the subpoena that followed it, and no part of the Scheduling order that followed later – ever commanded DPA to forfeit its right to name a defendant, Doe 1 or otherwise, following voluntary dismissal without prejudice in any other proper forum.  There was and is no order requiring DPA to seek this Court's (or ALPA's) permission to name a defendant anywhere outside of the then-pending action following a Rule 41(a)(1)(A) voluntary dismissal by plaintiff.

Moreover, in the then-pending action, the Order granting DPA's motion to compel affirmatively contemplated that John Doe 1 would in fact be publicly named as a defendant following a motion made soon after the September 5 scheduling conference: "This case will proceed in normal fashion. The next step will be a motion to amend the caption." (Tr. 10:19).  And, as the Court stated, the "date for making this motion will be very close to September 5." (Tr. 12:16).

The concern the Court expressed in the hearing was that discovery in the context of any unnamed defendants should end because, as the Court put it, "You now know the name of the person who was involved." (Tr. 11:11).  Implied was that either DPA should name the defendant or else discovery (other than voluntary) should end, i.e. "I don't see any room for bothering other people with subpoenas." (Tr. 11:14).  In other words, 'fish

or cut bait.'

The "confidentiality" required was only to the point of naming a defendant following a Rule 21 joinder motion, or motion to amend, because it was then assumed – but not required – that John Doe 1 would be sued in the same action.  However, DPA's counsel advised the Court in the hearing that "we probably need a little bit more time to make a decision as to whether we have enough information to make one of these potential individuals a defendant" (Tr. 9:9).  Obviously, that decision-making required consideration of *in personam* jurisdiction lest Doe 1 be put in jeopardy of defending in a jurisdiction where Doe 1 does not reside.  The Court said nothing in the hearing, in the order granting the motion to compel, or in the Scheduling Order about seeking the Court's (or ALPA's) permission to name any defendant in a lawsuit in any other forum where DPA determined there was personal jurisdiction.

Indeed, had DPA elected to move to amend the caption of its then-pending Complaint the Court would have been confronted with evidence that DPA had obtained (and that ALPA's compelled disclosure tended to confirm) that demonstrates that this Court would not have personal jurisdiction over Doe 1.  Yet now ALPA insists that its motion should proceed because DPA "never requested permission of the Court to name the Delta Pilot as a Defendant" *in this forum*. (Doc. 27, p. 3).  DPA does intend to name Doe 1 (as Rule 10(a) requires) and to sue Doe 1 – but not in this forum that lacks *in personam* jurisdiction.  This necessitated the dismissal with*out* prejudice to re-file.  DPA has proceeded exactly as allowed by this Court.  In contrast, ALPA's motion is premised

- 15 -

on an order never entered, i.e. that DPA is ordered to obtain this Court's permission before commencing an action against a named defendant in another forum that has jurisdiction.

Second, ALPA is simply incorrect to imply that "DPA's counsel promised that it would take the deposition of" Doe 1 *in this action* and not in any other where there was personal jurisdiction over Doe 1. (Doc. 27, p. 3).   Nor is it reasonable to read that restriction into the hearing or into the order granting the subpoena or into the Scheduling order.   The only reference to a "deposition" in the hearing occurred in this brief exchange:

THE COURT: I heard what you said. I gave you the discovery that you have asked for. You now know the name of the person who was involved. If you want to take that person's deposition to see if anyone else was involved, you can do so.  But I don't see any room for bothering other people with subpoenas.
MR. SILVERSTONE: As I said, there is a subpoena outstanding to the web hosting company. The subpoena was written by our computer expert.
THE COURT: Is there a motion to quash, Mr. Abram?
MR. ABRAM: Your Honor, I'm not aware of any other motion practice in the case. We have just responded to the motion with respect to ALPA.
THE COURT: If they give discovery voluntarily, of course, they can give it. If you ask me, I don't see that it is relevant, at least not until you take the deposition of the individual.
MR. SILVERSTONE: We will do that, your Honor.  (Tr. 11:10-12:2).

DPA's counsel did not promise to *limit* a deposition of Doe 1 to the "Doe" action then pending before this Court.  Nor did the Court ask that it do so.  No part of the order granting the motion to compel or the Scheduling order forfeited DPA's discovery right to depose a named party in a jurisdiction that has *in personam* jurisdiction over that defendant.  What DPA's counsel stated, rather, was that it was DPA's intent to depose

- 16 -

Doe 1 when and if an action named Doe 1.  There was no "promise" to depose Doe 1 only in the then-pending forum.  Certainly, had the Court granted permission to name Doe 1 then DPA would have deposed Doe 1 just as was said in the hearing; instead Doe 1 will be deposed in an action having personal jurisdiction over Doe 1.  (Moreover, the Court did not impose a requirement to take Doe 1's deposition at all, only that "you can do so" Tr. 11:13).

Third, the representation in the Luby Declaration (Doc. 29) and ALPA's brief (Doc. 27, p. 3) that Doe 1 has "never even received an email from DPA requesting his appearance at a deposition" is misleading (though perhaps not intentionally so).  DPA's counsel sent two rounds of correspondence by certified and first-class mail concerning this matter to *six* separate addresses that have been identified as Doe 1 addresses and received no response. (Granath Decl. ¶¶ 8, 10).  Further, DPA's expert has uncovered multiple email addresses that Doe 1 has apparently set up. (Granath Decl. ¶ 9).  Unless the message from Doe 1 transmitted via ALPA is counted, DPA is entitled to the reasonable surmise that Doe 1 is continuing attempts to conceal or to evade legal process.

**4)  The Motion Is Also Factually Groundless Because DPA Has Complied With The Condition Imposed: Its Private Email Did Not Publicly Identify Anyone, Nor Does The Motion Even Allege It Has.**

The fourth factual inaccuracy in ALPA's motion is the allegation that "on Friday, October 3, 2014, DPA publicly threatened to publicly identify the Delta Pilot *and* to sue him in another jurisdiction." (Doc. 27, p. 4) [emphasis added].

On the contrary, what occurred was not a web page publication open to any

browser for public viewing but rather a private email correspondence from DPA to DPA identified supporters. (Caplinger Decl. ¶¶ 5-6). The email was not a letter to the public, or even to all Delta pilots, but rather was addressed only to DPA members or self-identified supporters. (Caplinger Decl. ¶ 5). As the Hanson declaration submitted by ALPA shows, the only reason that ALPA obtained it was because a DPA member "who routinely forwards such emails to me" voluntarily provided it to Mr. Hanson. (Doc. 28, ¶ 3). DPA did not know, encourage, or authorize that forwarding. Rather another person (whose identity ALPA also wishes to conceal) did so.

More fundamentally, the cited DPA communication does not disclose the name of any John Doe or of any person. It does not disclose the state, city or address of John Doe or any single identifying characteristic such as gender, age or occupation that would allow extrapolation of Doe 1's identity. Nor does it contain any threat to publicly disclose the identity of John Doe 1 per se. It merely and truthfully states, "we are moving forward with a new named lawsuit in the home state of one of the key players." (Doc. 28-1, p. 3). While it could be assumed that by 'key player' John Doe 1 was meant, that actually was not expressed. In any event, DPA has a right, as the email asserts, to bring such an action and this Court has never issued a contrary order.[3]

ALPA's accusation is that DPA has threatened public disclosure – "and" to sue. But the content of the email shows no threat to disclose *and* to sue – merely to sue. Had

---

[3] Nor should it be lost that thousands of Delta pilots have a federal statutory right to choose their own bargaining representative, a right the hacking of DPA's web site aimed to undermine. Who is protecting their rights?

DPA brought a motion to amend its Complaint before this Court to name Doe 1 instead of dismissing its Complaint, the very same accusation would lie and it would be equally groundless.  That is so because this Court never ordered that DPA must get permission to re-file a suit against a named defendant following a voluntary dismissal without prejudice allowed under Rule 41(a).

Further, the email correspondence between counsel for ALPA and DPA (Doc. 30-2) that followed DPA's private email intercepted by ALPA's secret agent does not support any claim that the identity of John Doe 1 would be disclosed *outside of the context of being named as a party-defendant*.   On the contrary, counsel for DPA responded on the very same day to ALPA counsel's inquiry to make it plain that DPA "dismissed the action in NY because NY does not have personal jurisdiction …." (Doc. 30-2, p. 5).  The notion that it was reasonable for ALPA to assume that DPA "intends to sue … as early as tomorrow morning" (Doc. 30-2, p. 22) following this email, was at best self-serving.  In any event, it is ALPA – not DPA – that has publicly, on this Court's ECF website no less, filed the private DPA email that ALPA complains somehow threatens to, but has not yet, disclosed the identity of John Doe 1.

**5)    ALPA's Motion Seeks A Remedy The Court Has No Authority To Grant: To Restrict DPA's Right To Sue A Named Defendant In A Court That Has Personal Jurisdiction.**

The remedy sought by non-party ALPA's motion is as unclear as is its legal or factual basis to bring the motion.  On its face, ALPA's motion is to enforce a "protective order" despite the fact there is no such designated order or Rule 26(c)-based order on the

docket (therefore DPA or its counsel could have had no notice of the consequences of breaching such an order either).  And, for a remedy, ALPA merely seeks another "order … to comply with *this* order" [emphasis added] – and a payment of money to its attorneys to boot.

Even assuming that the order to compel the subpoena could be characterized as an affirmative protective order, the motion at bar in effect but inevitably asks this Court to *simply order that DPA is barred from re-filing its complaint against a named defendant outside of this Court or this jurisdiction*.  The motion cites absolutely no authority, however, for such extraordinary prior restraint on a party's right to commence anew, or refile after voluntary dismissal, litigation in another forum.  The motion cites absolutely no authority requiring DPA to maintain its suit before this Court, or requiring DPA to move to amend its suit before this Court, or allowing this Court to supervise or monitor DPA following voluntary dismissal of its suit.  Further, the motion is devoid of any allegation that DPA has committed contempt or other sanctionable rule-breaking conduct that would justify an order barring refiling as punishment.

Moreover, it is undisputed or undisputable, that DPA has voluntarily dismissed its John Doe Complaint pursuant to Rule 41(a)(1)(i) – before the opposing party served either an answer or motion – that on its face and in its effect is without prejudice to refile. The effect is twofold: first, under Rule 41(b) the situation is now as if the Doe lawsuit had never been filed, *e.g*, *Nelson v. Napolitano*, 657 F.3d 586, 587 (7th Cir. 2011); and second, in general other than over collateral matters, this Court is deprived of any further

jurisdiction, *e.g.*, *Anago Franchising, Inc. v. Shaz LLC*, 677 F.3d 1272, 1277 (11th Cir. 2012).

Further it is undisputed or undisputable, that DPA was entitled to voluntarily dismiss its complaint without prejudice – regardless of its motive or litigation strategy. *Wolters v. Kluwer Finanical Services, Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (the plaintiff has an "unfettered right" to voluntary dismissal, even where the reason is to flee the jurisdiction or the judge). And certainly a motive to bring a lawsuit against a *named* defendant in a jurisdiction that *has* personal jurisdiction over such defendant is no mean or sanctionable purpose.

Yet ALPA's motion in effect asks this Court to impose a condition flatly barring refiling as if DPA had dismissed by court order under Rule 41(a)(2), which could include "terms that the court considers proper." Because the dismissal was *not* under Rule 41(a)(2), but rather under Rule 41(a)(1)(A)(i), this Court cannot impose *any* conditions in connection with the dismissal, let alone one as drastic as requiring court permission before refiling in another jurisdiction against a named defendant. *Hester Industries, Inc., v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998); *Commercial Space Management Co. Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1076 (9th Cir. 1999).

DPA has a right of access to the courts that is of a constitutional dimension. *See*, *Tennessee v. Lane*, 541 U.S. 509 (2004) (the "right of access to the courts" is a "due process" right that is "basic" and "fundamental"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (the 14th amendment guarantees a due process right "to all

individuals [of] a meaningful opportunity to be heard"); *Louisville & N. R. Co. v. Schmidt*, 177 U. S. 230 (1879).

Respectfully, this Court lacks any lawful basis to enter the order ALPA seeks, which is to restrain DPA in advance from refiling its action against a named defendant, in another forum, and, therefore, it could only do so by abusing its discretion.[4] *See e.g.*, *Coleman v. American Red Cross*, 979 F.2d 1135 (6th Cir. 1992) (lower court abused its discretion by enjoining plaintiffs from bringing a separate action against previously unidentified party); *Oliver, In re*, 682 F.2d 443, 445 (3rd Cir. 1982) (an order enjoining litigant from instituting suit without court's permission "is an extreme remedy").

## IV)      <u>CONCLUSION.</u>

Non-party ALPA's motion is groundless and appears to have been brought for an improper purpose, to block, delay or frustrate DPA's legitimate right to refile its action against a named defendant in another court that has personal jurisdiction.  Its factual contentions have no evidentiary support, and its claims are not warranted by existing law or by any non-frivolous argument.  The Court should deny the motion and provide any other relief it deems appropriate.

---

[4] Even assuming the Court had entered a Rule 26(c) protective order, which is denied, it is not clear that any breach of such order is even sanctionable under Rule 37. *See*, *Lipscher v. LRP Publ'ns*, *Inc.*, 266 F.3d 1305, 1323 (11th Cir 2001) ("a Rule 26(c) protective order is not 'an order to provide or permit discovery,' and therefore, such orders do not fall within the scope of Rule 37(b)(2)).

Respectfully submitted,

On:  October 18, 2014           By:   */s/ Nicholas Paul Granath*
                                Nicholas Granath (*pro hac vice*)
                                ngranath@ssmplaw.com
                                SEHAM, SEHAM, MELTZ & PETERSEN, LLP
                                2915 Wayzata Blvd.
                                Minneapolis, MN 55405
                                Tel. (612) 341-9080; Fax (612) 341-9079

                                Stanley J. Silverstone, Esq.
                                ssilverstone@ssmplaw.com
                                Lucas K. Middlebrook, Esq.
                                lmiddlebrook@ssmplaw.com
                                SEHAM, SEHAM, MELTZ & PETERSEN, LLP
                                445 Hamilton Avenue, Suite 1204
                                White Plains, NY 10601
                                Tel. (914) 997-1346; Fax (914) 997-7125

                                *Attorneys for Plaintiff Delta Pilots Association*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2014, I electronically filed the following

1)    Memorandum Of Law In Opposition To The "Emergency Motion Of The Air Line
      Pilots Association, International To Enforce The Court's Protective Order Of
      August 14-15, 2014";
2)    Declaration of Nicholas Paul Granath;
3)    Declaration of Stanley J. Silverstone (with its exhibit);
4)    Declaration of Tim Caplinger;

with the Clerk of the Court using the CM/ECF system, which will automatically send
email notification of such filing to the following attorney who has appeared as counsel
for non-party, the Air Line Pilots Association

        Michael E. Abram, Esq.
        mabram@cwsny.com

Date: October 18, 2014                      */s/ Nicholas Paul Granath, Esq*.
                                            Nicholas Paul Granath, Esq.

- 24 -