UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DELTA PILOTS ASSOCIATION, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-00225-AKH |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF NON-PARTY AIR LINE PILOTS
ASSOCIATION, INTERNATIONAL'S EMERGENCY MOTION
TO ENFORCE THE COURT'S PROTECTIVE ORDER OF AUGUST 14-15, 2014**

**INTRODUCTION**

ALPA's opening brief (at 2-3 (ECF No. 27), which recounts the salient facts) demonstrates that, at the August 14 hearing, DPA and its President agreed to "honor the confidentiality [of the Delta Pilot] until such time as [the Court] grant[s DPA] permission to change the name of the caption or there is a stipulation to that effect." The Court entered an Order (ECF No. 21) to that effect the next day. *Id.* at 3. During the hearing, DPA never sought an exception to its agreement or the Order if it voluntarily dismissed the case to re-file in another jurisdiction. Declaration of Michael E. Abram ("Abram Decl."), Ex. 2, *passim* (ECF No. 30-1).

DPA does not dispute that it did not follow the procedure set forth in the Order to publicly name the Delta Pilot as a defendant. It likewise does not explain why it never requested a stipulation from ALPA or permission from the Court before sending a message to its followers (later posted on a website accessible by all Delta pilots) advising that it would publicly name the Delta Pilot in a lawsuit. Third Declaration of Michael Hanson ("Third Hanson Decl.") ¶ 3 and Ex. 4 at 2. The Court should therefore grant ALPA's motion and enjoin DPA from disclosing

the identity of the Delta Pilot (including filing a lawsuit publicly naming him) until DPA obtains this Court's permission to do so.

We now turn to DPA's remaining arguments.

## ARGUMENT

### A.    ALPA Has Standing to Bring this Motion.

DPA does not contest that a court has jurisdiction to enforce a protective order even after a case is closed (DPA Opp. at 10-12 (ECF No. 31)).  Instead, DPA asserts that the cases ALPA cites (ECF No. 27 at 5-6) "miss the point" because ALPA lacks standing to enforce the parties' agreement, and the Court therefore lacks jurisdiction, to enforce its August 14-15 Order requiring DPA to seek leave of the Court (or a stipulation from ALPA) to name the Delta Pilot as a defendant in a lawsuit.  DPA is wrong; ALPA has both direct and associational standing.

Under Rule 71, when "an order grants relief for a nonparty . . . the procedure for enforcing the order is the same as for a party." Fed. R. Civ. P. 71.  Here, of course, the Court granted the relief "for" ALPA: the confidentiality protections in the Court's August 14-15 Order were obtained as a result of a subpoena to ALPA, were granted with ALPA and its counsel before the Court (Abram Decl. Ex. 2 at 2), on the basis of ALPA's explicit request that the Court do so (ALPA Opp. at 16-18 (ECF No. 15); Abram Decl. Ex. 2 at 5-6), in order to protect a Delta pilot within the bargaining unit.[1]  Although Rule 71 in the abstract does not provide independent "standing" to an unrelated non-party to a suit (DPA Opp. at 10), in the circumstances here, the portion of the Order protecting against the disclosure of the Delta Pilot's identity clearly was

---

[1] ALPA objected to "publicly identifying this individual because, as a Delta pilot within the bargaining unit, he is entitled to be protected against the risk that DPA will make untruthful public assertions about him.  DPA has engaged in such conduct in the past." Declaration of Stanley J. Silverstone, Ex. C at 4 (ECF No. 13-3).  This is particularly important in light of the Court's observation that DPA was using its "John Doe" lawsuit to try to advance its agenda to replace ALPA as the collective bargaining representative of the Delta pilots. *Infra* at 5-6 n.4.

2

meant to "favor" ALPA and place it within the "'zone-of-interests'" protected by the Order, thus conferring standing on ALPA.  *See Berger v. Heckler*, 771 F.2d 1556, 1565 & n.13 (2d Cir. 1985) (Rule 71 is proper procedural vehicle for non-party to enforce an order made in "favor" of that non-party); *Moore v. Tangipahoa Parish School Bd.*, 625 F.2d 33, 34 (5th Cir. 1980) (under Rule 71, standing is conferred if non-party comes "within the zone of interests to be protected" by the order); *EEOC v. Int'l Ass'n of Bridge Workers*, 139 F. Supp. 2d 512, 520-21 (S.D.N.Y. 2001) (same).[2]

That ALPA maintains a concrete and particularized interest in enforcement of the August 14-15 Order is illustrated by *Dorsett v. County of Nassau*, 283 F.R.D. 85 (E.D.N.Y. 2012) (cited in ALPA's brief, at 5, and ignored by DPA).  There, a confidentiality order protected from disclosure a report that identified certain police officers involved in underlying civil rights litigation that had been closed for one year.  *Id.* at 87, 91.  After learning that the confidentiality order was violated, the officers' union moved to intervene in the lawsuit in order to enforce it. *Id.* at 89.  The court permitted the union to intervene, finding that it had "demonstrated a legitimate interest in the non-disclosure" of the report due to its "unique" and "substantial" interest in protecting its members from harassment, reprisals, and "unsubstantiated and irrelevant complaints[.]"  *Id.* at 91.[3]  *See also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (as party moving to intervene in closed suit to modify protective order does "not seek

---

[2] The one case cited by DPA (Opp. at 10-11) for this proposition, *Brennan v. Nassau County*, 352 F.3d 60, 65 (2d Cir. 2003), fully supports ALPA.  In that case, the court determined that the non-party (the USA Appellants) properly sought enforcement of an order under Rule 71.  *Id.* The court remanded, however, to determine if the USA Appellants' claims were ripe for review. *Id.*

[3] Although the court in *Dorsett* addressed intervention under Rule 24, Rule 71 similarly provides a procedural mechanism by which a non-party may seek to enforce an order.  *EEOC*, 139 F. Supp. 2d at 518 (non-parties may move to enforce order "'where otherwise authorized by federal rules of civil procedure' such as Rule 24 or 71") (quoting *Berger*, 771 F.2d at 1565).

to litigate a claim on the merits," an "independent jurisdictional basis is not required"); *Martindell v. ITT*, 594 F.2d 291, 294 (2d Cir. 1979) (government permitted to intervene in suit to seek modification of protective order).

ALPA also has associational standing to enforce the Court's August 14-15 Order. The Supreme Court has held that "(e)ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *UAW v. Brock*, 477 U.S. 274, 281 (1986) (internal quotation omitted). A union will have such associational standing to sue on behalf of its members when "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *UFCW Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). In *Brown Group*, the Supreme Court noted that the requirement of individual participation "ha[s] been understood to preclude associational standing when an organization seeks damages on behalf of its members" but that a union would have associational standing when it seeks "'a declaration, injunction, or some other form of prospective relief.'" *Id.* at 553-54.

ALPA meets this test. First, as DPA concedes (*see* DPA Opp. at 13), the Delta Pilot would have standing to enforce the order. *See Bld'g & Constr. Trade Council v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) (noting that under first prong of test union need only show that "one or more" of its members would have standing). Second, the Delta Pilot's participation is not necessary because ALPA seeks only the injunctive relief of enforcement of the Court's August 14-15 Order, not individualized damages. *Brown Group*, 517 U.S. at 553-54; *Downtown Dev.*, 448 F.3d at 150. Finally, one of ALPA's purposes is to represent its members

and safeguard their rights.  *See* Declaration of Lee Alger ¶ 2 & Ex. 5 (ALPA Constitution states that objective of ALPA is to "provide representation for all [its] members . . . and to safeguard the rights, individually and collectively, of its members").  As we have made clear throughout this dispute, ALPA has no interest in protecting a member against the consequences of illegal activity; however, protecting a member's reputational interest from harassment in retaliation for support for ALPA and opposition to DPA's organizational efforts is germane to ALPA's purpose.  *See NAACP v. Alabama*, 357 U.S. 449, 459 (1958) (NAACP has associational standing to assert rights of its members to prevent disclosure of its membership list resulting in compelled disclosure of their identities); *Downtown Dev.*, 448 F.3d at 147-50 (noting broad scope of germaneness inquiry).

With respect to this final prong, it is important to note that one of the purposes of the Court's Order protecting the confidentiality of the Delta Pilot -- ensuring that DPA had some factual basis to sue the Delta Pilot before it did so -- remains as cogent today as it did in August.  Despite having eight months of discovery, DPA has provided no evidence linking the Delta Pilot to the alleged hack.  It never subpoenaed the Delta Pilot for documents or deposition, never sent an email to him requesting information (despite having his various email addresses including the one provided by ALPA), never called him, and never submitted any declaration from its purported forensic expert linking the Delta Pilot to the alleged hacking incident (though supposed "on-line tracks" were the premise of its claimed right to discovery in its lawsuit).  DPA's Memorandum of Law in Support of Motion for Leave to Take Immediate Discovery at 9 (ECF No. 4).[4]  Instead, DPA: (1) asserts that it mailed letters to the Delta Pilot (while not

---

[4] DPA strangely asserts (Opp. at 16) that it did not promise to take the Delta Pilot's deposition in this action "and not in any other where there was personal jurisdiction over Doe 1." However, as shown in the transcript, the entire discussion of the deposition of the Delta Pilot occurred in the

providing the content of that correspondence to the Court); and (2) provides a Declaration of its attorney, which simply claims that the name of the Delta Pilot "appeared in several documents obtained in discovery by DPA[,]" but DPA deliberately does not provide redacted copies of those documents or even copies of the subpoenas through which it obtained any such documents. *See* Declaration of Nicolas Paul Granath ¶¶ 6-9 (ECF No. 31-1).  That is sophistry, not evidence.

---

context of the discovery that DPA would conduct before amending the caption, not whether DPA would depose the Delta Pilot in some other lawsuit:

> THE COURT: . . . . This case will proceed in normal fashion.  The next step will be a motion to amend the caption.  When will that occur, Mr. Silverst[one]?
> MR. SILVERSTONE: I believe, your Honor, we are going to need at least 30 days.  We have some outstanding subpoenas that have not been responded to.
> THE COURT:  I'm not sure you are going to do very well with subpoena practice.  It seems to me that you are using this case as a fishing expedition for a lot of other information that is intended as relevant not to this case but for other purposes in your jurisdictional dispute.  I want you to know that this Court will not lend itself to that practice.
> MR. SILVERSTONE: Your Honor, I respectfully disagree with that.  We have only conducted this litigation for the sole purpose of finding out who is at the bottom of this hacking incident.
> THE COURT:  I heard what you said.  I gave you the discovery that you have asked for.  You now know the name of the person who was involved.  If you want to take that person's deposition to see if anyone else was involved, you can do so.  But I don't see any room for bothering other people with subpoenas.
> MR. SILVERSTONE:  As I said, there is a subpoena outstanding to the web hosting company.  The subpoena was written by our computer expert.
> \* \* \*
> THE COURT:  If they give discovery voluntarily, of course, they can give it.  If you ask me, I don't see that it is relevant, at least not until you take the deposition of the individual.
> MR. SILVERSTONE:  We will do that, your Honor.
> THE COURT:  Let your client know what I said before.  You have to show me what is relevant.  At this point in time it seems to me you have everything and you are prolonging the case simply for other purposes.  I'm not saying that is a finding.  It is not a finding.  It is an observation.
> We have a date in September.  There is no need to accelerate at this point in time.  I do want to have a fixed date.  When does your case management plan say you have to make a motion[?]
> MR. SILVERSTONE: We don't have a plan yet, your Honor.  I think we were supposed to do that at the September 5th conference.
> THE COURT:  OK.  On September 5 have in mind that the date for making this motion will be very close to September 5. [Abram Decl. Ex. 2 at 10-12.]

6

**B.     This Court Has Jurisdiction Over ALPA's Motion.**

As DPA's claim that ALPA lacks standing to enforce the Court's August 14-15 Order is meritless, its argument that the Court lacks jurisdiction based on the purported lack of standing also fails.[5]

**C.     The Court's Order Did Not Permit DPA to Evade It Simply by Dismissing the Suit and Filing in Another Jurisdiction.**

DPA asserts that the Court's August 14-15 Order permits it to voluntarily dismiss its suit and to file a new suit in another jurisdiction. It argues that it could not sue the Delta Pilot here because the Court "would not have personal jurisdiction over" him. DPA Opp. at 15. It further claims that, at the time of the Court's Order, "it was then assumed -- but not required -- that John Doe 1 would be sued in the same action." *Id.*

Nothing in the Court's August 14-15 Order permits DPA to evade its terms in this manner, and DPA never requested that the Court create such an exception. Abram Decl. Ex. 2, *passim*. Rather, at that time, DPA was promising to sue "John Doe" in this District, representing that it would "amend its Complaint to display Doe's true name, or ask for leave of Court to do so, when plaintiff learns the same through discovery, which plaintiff believes will reveal defendant's true identity, location, and capacity." Complaint ¶ 5 (ECF 1). In that regard, and despite the fact that most of Delta's 12,000 pilots obviously reside outside of the Southern District of New York, DPA simultaneously was representing that this Court had "personal jurisdiction" over John Doe because he "committed illegal acts within this district and within this

---

[5] As if it had any effect on the result, DPA attempts to distinguish ALPA's cases showing that the Court has jurisdiction to enforce a protective order even after a case is closed because "unlike this case, there was a judgment entered in the cases ALPA cites." DPA Opp. at 12-13. In fact, ALPA cited a controlling Second Circuit case that involved a dismissal under Rule 41(a)(1). *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 134-35 (2d Cir. 2004) (district court had jurisdiction to modify protective order even after Rule 41(a)(1) stipulation of dismissal).

state." *Id.* ¶ 6. *See also id.* ¶ 9 (representing that venue "is proper" here because "a substantial part of the events or omissions giving rise to these claims occurred within this district").

DPA may not repudiate its prior representations of how the litigation was going to proceed in order to improperly and unilaterally nullify this Court's August 14-15 Order. If DPA had belated concerns about this Court's jurisdiction over John Doe, all it had to do was to follow the procedure in the Court's Order. Its failure to do so does not justify its threatened contumacious conduct.

### D. DPA's Threatened Public Disclosure of the Name of the Delta Pilot Necessitated the Instant Motion and Warrants Sanctions.

DPA claims (Opp. at 17-19) that the Court order requested by ALPA is unnecessary because it has not publicly disclosed the identity of the Delta Pilot and because it merely was going to sue the Delta Pilot and not to publicly disclose his identity. (Notably, DPA does not represent that it has not *privately* disclosed the identity of the Delta Pilot. *See* Declaration of Tim Caplinger ¶ 7 (ECF No. 31-3).)

DPA's argument is meritless because DPA threatened to violate the Court's August 14-15 Order and thereby necessitated this motion. DPA's threatened lawsuit obviously required the public disclosure of the identity of the Delta Pilot. DPA admittedly told thousands of its "supporters" that it was going to sue the Delta Pilot. That threat was republished by a staunch DPA supporter (and Delta pilot) on a website accessible to all Delta pilots, just as he previously had republished other DPA emails. Third Hanson Decl. ¶ 3 & Ex. 4 at 2. Moreover, and despite repeated requests from ALPA counsel, DPA refused to provide any timely assurance that it would not file the public lawsuit against the Delta Pilot and instead stated its belief that DPA could sue the Delta Pilot in another jurisdiction and asked ALPA counsel if he would accept service on behalf of the Delta Pilot. Abram Decl. Ex. 3 (ECF No. 30-2 at 5 of 22).

ALPA has incurred significant expense in getting DPA to comply with its Court-ordered obligations following DPA's threatened lawsuit against the Delta Pilot. Sanctions accordingly are appropriate. *See* ALPA's Brief at 6-7.[6]

**E.     The Court Had Authority to Issue the Order to Which DPA Voluntarily Agreed**.

DPA (Opp. at 20) asserts that the Court's Order constitutes an improper prior restraint against its right "to commence anew, or refile after voluntary dismissal, litigation in another forum."

DPA's hyperbole is unpersuasive. The question is not whether a court ever may bar lawsuits by certain individuals or entities (though the Court would have authority to do so in order to prevent harassing or vexatious litigation, *see, e.g.*, *Smith v. The Educ. People, Inc.*, No. 05-2971-CV(L), 2008 WL 749564, at *2 (2d Cir. Mar. 20, 2008); *Davey v. Dolan*, 453 F. Supp. 2d 749, 755 (S.D.N.Y. 2006), *aff'd*, 292 Fed. App'x 127 (2d Cir. 2008); *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982)).[7] Rather, here DPA *agreed* on the record with the confidentiality order proposed by ALPA and the Court -- to maintain the confidentiality of the Delta Pilot's identity, and, further, to seek the Court's permission (or a stipulation from ALPA) that would allow it to name the Delta Pilot in a lawsuit. There is nothing remarkable in such an agreement,

---

[6] Contrary to footnote four in DPA's opposition memorandum (at 22, citing one out-of-circuit case), in this Court violations of protective orders are sanctionable under Rule 37 or through the court's inherent power to maintain the integrity of its orders. *E.g.*, *Flaherty v. Filardi*, No. 03 Civ. 2167(LTS)(HBP), 2009 WL 3762305, at *5 (S.D.N.Y. Nov. 10, 2009); *Schiller v. City of New York*, 04 Civ. 7921 (KMK)(JCF), 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) (citing cases).

[7] *Coleman v. Am. Red Cross*, 979 F.2d 1135 (6th Cir. 1992), cited by DPA (Opp. at 22), is by its own terms "limited to the unique facts presented" there. In that case, the court overturned an injunction foreclosing a party from "ever bringing an action" against another individual despite the fact "that such an action would not be frivolous." *Id.* at 1141. In contrast, here DPA agreed to the protective order and the order does not prohibit the filing of another suit but only requires that DPA first seek the permission of the Court (or a stipulation from ALPA) to do so. DPA has also not shown that any such action against the Delta Pilot would "not be frivolous."

9

as parties agree to waive or limit their right to sue all the time through settlement or arbitration agreements. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

No one forced DPA to agree to these conditions. It could have continued with its attempts to convince the Court to require disclosure of the Delta Pilot's identity without any such confidentiality restrictions. Likewise, no one forced DPA to forsake the procedures in the Court Order required to sue the Delta Pilot, and no one forced DPA to bypass the other standard procedure for seeking modification of court orders -- to apply to the Court that issued the order. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 554 (S.D.N.Y. 1985).

Far from any impropriety in the Court's August 14-15 Order, the current situation arose because of DPA's own conduct. Having agreed to the Court's Order, DPA ignored its terms (as well as general court procedures for modifications of orders) and instead openly threatened to violate the Order by naming the Delta Pilot in a lawsuit. An order requiring DPA to abide by its obligations accordingly is appropriate.

## **CONCLUSION**

For the foregoing reasons as well as those stated in our opening brief, the Court should enjoin DPA from disclosing the identity of the Delta Pilot (including filing a lawsuit publicly naming him) until DPA obtains this Court's permission to do so. The Court further should

award ALPA the attorneys' fees and costs it incurred in connection with this motion, as the motion was necessitated by DPA's threatened contumacious conduct.

Dated:  October 27, 2014                                  Respectfully submitted,

 */s/ Michael E. Abram*
Michael E. Abram
COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York 10036
Telephone:  (212) 356-0208
Facsimile:  (212) 695-5436

*Counsel for Air Line Pilots Association, Int'l*

## CERTIFICATE OF SERVICE

  I hereby certify that on October 27, 2014, I electronically filed the Reply Memorandum in Support of Non-Party Air Line Pilots Association, International's Emergency Motion to Enforce the Court's Protective Order of August 14-15, 2014, the Third Declaration of Michael Hanson and the Declaration of Lee Alger with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Stanley J. Silverstone
Lucas K. Middlebrook
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601

Nicholas Granath
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405

                */s/ Michael E. Abram*
                Michael E. Abram