E.  **DPA's Request to ALPA to Stipulate to Allow DPA to Publicly Identify the Delta Pilot in a Lawsuit and ALPA's Response Requesting Further Information**

On Friday December 5, DPA's counsel wrote to ALPA's counsel seeking "ALPA's stipulated agreement for DPA to publicly identify the Delta Pilot by suing him in his home state." Second Declaration of Michael Abram ("Second Abram Dec.") ¶ 2 and Ex. 1 at 1-2.

ALPA responded on December 9. Contrary to DPA's false representation to this Court (DPA's Motion ¶ 7, ECF No. 36), the response did not "reject[]" DPA's request but instead asked for further information to allow proper evaluation:

> The Court's reference to a stipulation obviously contemplated that DPA would develop, and ALPA would be made aware of, the evidence that would support naming the Delta Pilot in a lawsuit. As our discussion in court made clear, ALPA would not agree to a public disclosure of the name of the Delta Pilot unless DPA could "support that enough" to name him in a lawsuit. ALPA is unaware, however, of any evidentiary basis for DPA to file suit against the Delta Pilot -- a suit that, unless filed under seal or anonymously and then served on the Delta Pilot -- risks subjecting him to the harassment that led to the original protective order and that Judge Hellerstein in his recent order reasserted was a legitimate concern of the Association. As you know, the Delta Pilot has denied any involvement in the alleged hacking incident in a detailed statement, and DPA never submitted any evidence to the contrary to Judge Hellerstein. In that regard, after ALPA confidentially disclosed the identity of the Delta Pilot to you pursuant to the Protective Order, and notwithstanding your representation to the Court that you intended to depose the pilot, we are aware of no attempt by DPA to notice his deposition. Moreover, DPA has offered no evidence in that proceeding or in the subsequent proceedings on ALPA's emergency motion -- such as the "electronic tracks" referenced in your demands for discovery -- that showed or tended to show that he was involved in the alleged hacking incident.
>
> In order for ALPA to properly evaluate DPA's request for a stipulation (and to protect the Delta Pilot from harassment), please provide the evidence supporting DPA's claim that the Delta Pilot is the "John Doe" named in DPA's since-withdrawn complaint.

Second Abram Dec. ¶ 2 and Ex. 1 at 1.

Rather than respond to ALPA's email or provide any evidence of the Delta Pilot's involvement in the alleged hacking incident, DPA filed the present motion later that same day. *Id.* ¶ 2.

## ARGUMENT

**I.      The Court Should Not Vacate or Modify Its August 14-15, 2014 Protective Order.**

DPA asserts that the Court's August 14-15 Protective Order should be vacated or modified so that it can "commenc[e] an action against the Delta Pilot in the federal district in which [he] resides." ECF No. 36 (¶ 8). DPA justifies its request because it "has no basis to assert that a New York court would have personal jurisdiction over the Delta Pilot." *Id.* ¶ 4.

**A.      The Protective Order Only May Be Modified If It Was Improvidently Granted or If There Is a Compelling Need to Do So.**

"The Second Circuit has expressly acknowledged that its protective order modification test has, as a general matter, 'a strong presumption against the modification of a protective order.'" *Dorsett v. County of Nassau*, 289 F.R.D. 54, 64 (E.D.N.Y. 2012) (quoting *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011)). In contrast to the "good cause" required for an initial protective order, a party seeking to modify a protective order must show "'improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need.'" *In re September 11 Litigation*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). This heightened standard applies "if a party has 'reasonably relied' on the protective order." *Id.* at 277 (citation omitted). Reasonable reliance, in turn, requires examination of four factors: "'(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order.'" *Id.* (citation omitted).

6

The heightened standard of review applies here because ALPA plainly and reasonably relied on the Court's Protective Order.  **First**, the narrow scope of the Order -- it was limited to maintaining the confidentiality of the identity of the Delta Pilot -- strongly shows ALPA's reliance.  *Compare id.* at 279 (reliance more likely when types of documents subject to protective order are specified); *Dorsett*, 279 F.R.D. at 65 (reliance more likely when protective order was "specific and targeted at one particular report").  **Second**, the language of the Order (as well as the transcript of the August 14 hearing) makes clear that ALPA was relying on the agreement specified in the Order to provide the identification information of the Delta Pilot to DPA.  *Supra* at 3.  **Third**, this Court considered the parties' conflicting positions in their pre-hearing briefs with respect to maintaining the confidentiality of the Delta Pilot's identity and ordered the confidentiality protections.  *See* Abram Dec. Ex. 2 (ECF No. 30-1 at 5-7); *Dorsett*, 279 F.R.D. at 65.  **Finally**, the nature of ALPA's reliance on the Order is manifestly clear -- it provided the identification information to DPA and only did so subject to the Order.  *Id.* at 5-8.

### B. The Court's Order Was Not Improvidently Granted and DPA Lacks a Compelling Need (or Even Good Cause) to Vacate or Modify the Order.

DPA fails to show (and does not even claim to show) that the Court improvidently issued the August 14-15 Order or that it has a compelling need to publicly identify the Delta Pilot through a lawsuit in another jurisdiction.  Indeed, it does not even pretend to make such a case, as it completely ignores the well-established and easily-accessible law governing its motion and does not bother to cite a single case or legal standard.

Obviously, the Court's issuance of the Protective Order was wise, not improvident.  ALPA previously has provided evidence of how DPA has harassed ALPA supporters and officials by making false statements about them.  Silverstone Dec. Ex. C (ECF No. 13-5 at 4-8).  ALPA also has described in detail DPA's lies and prevarications in its lawsuit and in its

7

representations to the Court. ALPA Opp. to Mot. to Compel (ECF No. 15 at 2-3, 4-5, 8-9, 10-11, 15). Those lies and obfuscations have continued: (1) DPA previously represented that this Court had "personal jurisdiction" over John Doe because he "committed illegal acts within this district and within this state" (Complaint ¶ 6 (ECF No. 1)), but it now claims that it "has no basis to assert" such jurisdiction (ECF No. 36 ¶ 4); (2) DPA now asserts that it "has never stated that it intended to sue the Delta Pilot in the state of New York" (*id.* ¶ 6), but DPA previously promised to sue "John Doe" in this District, representing that it would "amend its Complaint to display Doe's true name, or ask for leave of Court to do so, when plaintiff learns the same through discovery, which plaintiff believes will reveal defendant's true identity, location, and capacity" (Complaint ¶ 5); and (3) DPA asserts here that ALPA "rejected DPA's request" for a stipulation to allow it to publicly name the Delta Pilot in a lawsuit, but (as shown above), ALPA simply requested more information from DPA.[2] The motive behind these maneuvers is quite clear; as the Court observed, DPA is "prolonging the case simply for other purposes" and that it is "using this case as a fishing expedition for a lot of other information that is intended as relevant not to this case but for other purposes in [its] jurisdictional dispute." Abram Dec. Ex. 2 (ECF No. 30-1 at 11-13).

DPA likewise has not shown a "compelling need" (or even good cause) to vacate or modify the Protective Order. The purpose of the requirement in the agreed-upon Order that DPA obtain Court approval or ALPA's stipulation before publicly disclosing the identity of the Delta Pilot in a lawsuit was to ensure that DPA had a factual basis for such a suit. Otherwise, the Order simply would have omitted any reference to preconditions for filing suit. Nevertheless, and despite having eight months of discovery, DPA has not provided *any* evidence to the Court

---

[2] *Compare* Fed. R. Civ. P. 11(b)(2, 3).

or to ALPA that the Delta Pilot was involved in the alleged hacking incident. The Complaint was unverified. DPA promised to find the "online tracks" of the alleged hacker and issued subpoenas, but it has not provided any evidence showing that the Delta Pilot was involved in the alleged hack, much less evidence that comes close to meeting the intent requirements of the statute DPA claims was violated. ECF No. 4 at 6-7, 9; Abram Dec. Ex. 2 (ECF No. 30-1 at 10); 18 U.S.C. § 1030(a)(5). DPA promised to depose the Delta Pilot, but it deliberately elected not to do so and does not even claim to have subpoenaed documents from him. *Supra* at 3. DPA discussed using a computer forensics expert, but no declaration from that expert has been provided. ECF No. 4 at 6-7, 9; *see* Abram Dec. Ex. 2 (ECF No. 30-1 at 5). Its attorney offered a declaration stating that the name of the Delta Pilot "appeared in several documents obtained in discovery by DPA" (Declaration of Nicholas Paul Granath ¶ 6 (ECF No. 31-1)), but DPA deliberately failed to provide redacted copies of those documents or even copies of the subpoenas through which it obtained any such documents.

Further dooming any belated claim by DPA of a "compelling need" is the fact that DPA need not publicly identify the Delta Pilot by name in a lawsuit. Rather, and with the Court's approval, it could sue the Delta Pilot as "John Doe" and move the Court for permission to file the name of the Delta Pilot under seal or with confidentiality protections. ALPA suggested such a procedure in its December 9 email, but DPA obviously rejected it in its headlong rush to the courthouse. The reason is clear: DPA hopes to use the public identification of the Delta Pilot and the costs of responding to litigation to coerce him to cooperate in its decertification campaign against ALPA, a matter which, appears to be the true goal of this lawsuit. That is why DPA did not subpoena the Delta Pilot for a deposition or for documents but instead (in announcing its threatened suit against him) admittedly "offered several opportunities for those involved to take

9

public responsibility and avoid what is about to happen. . . . Anyone directly involved may still contact the DPA Attorney if their intention is to cooperate." Pl. Opp. to Emergency Mot. (ECF No. 31 at 8 (quoting Declaration of Timothy Caplinger ¶ 5 (ECF No. 31-3)).

DPA's only response is to belatedly assert that this Court lacks personal jurisdiction over the Delta Pilot. Even if DPA is permitted to repudiate its prior representation that the Court has such personal jurisdiction (*supra* at 8), DPA still lacks a compelling need to publicly identify him in a lawsuit. **First**, there is no inherent right to file a frivolous, harassing lawsuit. *See*, *e.g.*, *Smith v. The Educ. People, Inc.*, No. 05-2971-CV(L), 2008 WL 749564, at *2 (2d Cir. Mar. 20, 2008); *Davey v. Dolan*, 453 F. Supp. 2d 749, 755 (S.D.N.Y. 2006), *aff'd*, 292 Fed. App'x 127 (2d Cir. 2008); *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982). DPA implicitly admitted as much by agreeing to the Protective Order in the first instance, which contemplates a pre-filing review of the evidence in order to determine whether the Delta Pilot may be publicly named in a lawsuit. *Supra* at 3. **Second**, and as discussed above, the confidentiality of the identity of the Delta Pilot can be maintained even if suit is filed against him.

In sum, DPA has not shown or attempted to show a compelling need to modify or vacate the Protective Order or that the Order was improvidently granted. If DPA had wanted the identity of the Delta Pilot to become public through the filing of a lawsuit, it "should not have agreed to the" August 14-15 Order, or, "alternatively, [DPA] should have agreed to it and abided by its . . . procedure" allowing for review of the evidentiary basis of a public lawsuit against the Delta Pilot before it is filed. *See September 11 Litigation*, 262 F.R.D. at 278. The Court accordingly should deny DPA's motion.

II.  **The Court Should Protect the Confidentiality of the
Identity of the Delta Pilot If This Case Is Reopened.**

DPA requests in the alternative that the Court reopen this lawsuit that it voluntarily dismissed.

ALPA was not a party to the lawsuit. However, for the reasons set forth above, any re-opening or refiling of DPA's lawsuit should continue to protect the confidentiality of the identity of the Delta Pilot.

## CONCLUSION

For the foregoing reasons, the Court should deny DPA's motion.

Dated: December 12, 2014          Respectfully submitted,

/s/ Michael E. Abram
Michael E. Abram
COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York  10036
Telephone:  (212) 356-0208
Facsimile:  (212) 695-5436

*Counsel for Air Line Pilots Association, Int'l*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2014, I electronically filed the Memorandum of Non-Party Air Line Pilots Association, International in Opposition to Motion to Vacate or Modify the Court's Confidentiality Order of August 14-15, 2014 and the accompanying Second Declaration of Michael E. Abram with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Stanley J. Silverstone
Lucas K. Middlebrook
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601

Nicholas Granath
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405

/s/ Michael E. Abram
Michael E. Abram