Stanley J. Silverstone
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, New York 10601
Tel. (914) 997-1346

Nicholas P. Granath (*pro hac vice*)
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA PILOTS ASSOCIATION,<br><br>                              Plaintiff<br><br>         v.<br><br>JOHN DOE,<br><br>                              Defendant. | Civil Action No.: 1:14-cv-00225-AKH<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR MODIFY CONFIDENTIALITY ORDER**<br>***OR IN THE ALTERNATIVE,<br>TO REOPEN THE CASE*** |

        Plaintiff, Delta Pilots Association ("DPA"), by and through its undersigned counsel,

submits this memorandum in reply to ALPA's opposition to DPA's motion to vacate or modify

the August 14, 2014 confidentiality order.

        ALPA is asking the Court to turn the confidentiality agreement and order into something

it is not, and was never intended to be:  a permanent order of confidentiality effectively blocking

all litigation against the Delta Pilot unless non-party ALPA pre-approves such litigation.  DPA

did not agree to such litigation obstacles, and we respectfully submit that the Court did not intend

that in its August 14 order.  Nor will ALPA ever approve litigation that it fears could lead to its

own doorstep.

The Court ordered that DPA and its counsel "will honor the confidentiality until such time as I grant [DPA] permission to change the name of the caption or there is a stipulation to that effect, which I shouldn't think would be withheld."  Doc. No. 22, *7 (Tr. of Hearing on Mot. to Compel).  Contrary to ALPA's claim, the Court's reference to a stipulation did *not* "obviously contemplate[] that DPA would develop, and ALPA would be made aware of, the evidence that would support naming the Delta Pilot in a lawsuit."  (ALPA Mem., Doc. 37-1, at 5).  DPA never agreed to provide ALPA – an adverse party that DPA considers a potential defendant itself – with the very evidence that DPA obtained in its efforts to identify John Doe, and the Court did not order DPA to share its evidence with ALPA.

Moreover, ALPA counsel agreed on the record that the name of the Delta Pilot could be made public as long as the Court granted a motion by DPA to simply amend pursuant to Rule 21:

> THE COURT:  In other words, if his identity is learned, the next appropriate step would be for [DPA counsel] to move to amend under rule 21 to add a party and drop a party, add the individual and drop John Doe, and at that time if I grant the motion, the name could be public?
>
> MR. ABRAM:  That's correct, your Honor.

Doc. No. 22, *6 (Tr. of Hearing on Mot. to Compel).  "To the extent a proposed amendment would add new parties, the motion is technically governed by *Rule 21*, which provides that 'the court may at any time, on just terms, add or drop a party,' rather than Rule 15 (a)."  *Duling v. Gristede's Operating Corp*., 265 F.R.D. 91, 96 (S.D.N.Y. 2010) (citations omitted).  However, "'the same standard of liberality' applies under either Rule."  *Id*. at 96-97 (citations omitted).  "Leave to amend a pleading should be *freely granted* when justice so requires."  *Id*. at 96, citing Fed. R. Civ. P. 15(a) and cases [emphasis added].

The fact is that the August 14 confidentiality agreement was intended to be temporary, as manifestly established by the Court's order that the name of the caption could be changed by

order pursuant to Fed. R. Civ. P. 21, or just by stipulation.  The "strong presumption against the modification of a protective order" that ALPA embraces cannot possibly apply to a confidentiality order that was intended to be temporary. (ALPA Mem., Doc. 37-1, at 6).

ALPA cites *Dorsett v. County of Nassau*, 289 F.R.D. 54, 64 (E.D.N.Y. 2012) to support its desire to apply a presumption against modifying the protective order, but fails to discuss the part of the decision that is actually relevant to this situation, which refutes ALPA's position:

> As the Second Circuit has recognized, "some protective orders may not merit a strong presumption against modification. For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties. Indeed, in such circumstances reliance may be unreasonable." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 n. 7 (2d Cir. 2004) (quoting *TheStreet.com*, 273 F.3d at 230-31); accord *Lugosch*, 435 F.3d at 126 (finding that party could not reasonably rely on confidentiality order stating that it "shall not prevent anyone from applying to the Court for relief therefrom.").

*Dorsett*, 289 F.R.D. at 65.  The above statement from *Lugosch v. Pyramid Company of Onondaga,* 435 F.3d 110, 126 (2d Cir. 2006) ("shall not prevent anyone from applying to the Court for relief therefrom") is no different from the August 14 order in this case stating that the confidentiality will be honored "until such time as I grant [DPA] permission to change the name of the caption or there is a stipulation to that effect, which I shouldn't think would be withheld." *On its face*, the confidentiality order in this case is temporary.  ALPA disregards the obvious inapplicability of the *Dorsett* presumption, and submits legal contentions that are in no way warranted by existing law.

ALPA argues that "DPA need not publicly identify the Delta Pilot by name in a lawsuit." (ALPA Mem., Doc. 37-1, at 9).  Rather, ALPA proposes that DPA "could sue the Delta Pilot as 'John Doe'…"  *Id*.  But the law does not support ALPA's suggestion.  On the contrary, only in *exceptional* cases may a party proceed anonymously.  "That a [party] may suffer embarrassment or economic harm is not enough" to proceed anonymously.  *Doe v. C.A.R.S. Protection Plus,*

*Inc.*, 527 F.3d 358, 371 n. 2 (3d Cir. 2008).  "Examples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.'"  *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011), citing *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990).  There is no such exception applicable in this case.

Fed. R. Civ. P. 10(a) provides that "[t]he title of the complaint must name all the parties." The Second Circuit has held that "[t]his requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008).  *See also*, *Doe v. Shakur*, 164 F.R.D. 359, 360 (S.D.N.Y. 1996) ("The intention of this rule is to apprise parties of who their opponents are and to protect the public's legitimate interest in knowing the facts at issue in court proceedings.").  "Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts."  *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997).

> The "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings." Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000).  That right "is supported by the First Amendment." Doe v. Del Rio, 241 F.R.D. 154, 156 (S.D.N.Y. 2006). "Judicial proceedings are an aspect of governance and thus should be open to public scrutiny in a democratic society." *Id*. at 158.

*North Jersey Media Group, Inc. v. John Doe Nos. 1-5 d/b/a Stoopidhousewives.com*, 2012 U.S. Dist. LEXIS 167317, *9-10 (S.D.N.Y. Nov. 26, 2012) (attached hereto as Exhibit A).

In *North Jersey Media Group*, a copyright infringement action, the defendant moved to proceed under the fictitious name "stoopidhousewives.com" instead of the name of the individual author and administrator of the website "stoopidhousewives.com."  Defendant sought to proceed anonymously because of "'threats and other abusive and unsettling communications'

4

that the Web site stoopidhousewives.com receives on a regular basis from readers of that Web site." *Id*. at *3.  Defendant argued that "to disclose the defendant's identifying information publicly would put the defendant at risk of mental and physical abuse and will have a chilling effect on the defendant's ability to speak freely." *Id*.

The court in *North Jersey Media Group* noted that the parties and the court could find no "authority permitting a defendant to proceed in a civil action by using a pseudonym or articulating a standard governing the defendant's application to proceed in a civil action by using a pseudonym…." *Id*. at *10.  As a result, the court applied the standard set forth in *Sealed Plaintiff v. Sealed Defendant*, a case involving a plaintiff's application to prosecute her claims under a pseudonym.  In that case, the Second Circuit articulated ten non-exclusive factors that courts should consider in determining whether a plaintiff may be allowed to maintain an action under a pseudonym.  Those factors are as follows:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature . . .; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party seeking to proceed anonymously or even more critically, to innocent non-parties . . .; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity . . .; (4) whether the plaintiff is particularly vulnerable to the possible harm of disclosure, particularly in light of his age . . .; (5) whether the suit is challenging the actions of the government or that of private parties …; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court . . .; (7) whether the plaintiff's identity has thus far been kept confidential . . .; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity . . .; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities . . .; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (internal quotation marks, alterations and citations omitted), *quoted in North Jersey Media Group, Inc.,* 2012 U.S. Dist. LEXIS 167317, *11-13.

The *North Jersey Media Group* court found that the copyright infringement action at bar was not the type of case that involved a highly sensitive and personal nature, such as cases involving "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families."  2012 U.S. Dist. LEXIS 167317, *14.  It also found that there was no evidence supporting defendant's claim that there was a risk of "retaliatory physical or mental harm if the defendant's identity is revealed…."  *Id*. at *19.  Overall, the factors in *Sealed Plaintiff* weighed against the defendant proceeding anonymously, and the court therefore denied the defendant's motion to proceed under a fictitious name.  *Id*. at *28.

DPA submits that *North Jersey Media Group* controls the result of this motion in DPA's favor.  This case does not involve a highly sensitive or personal matter, and there is no evidence of any risk to the Delta Pilot's physical or mental well-being if his identity is revealed.

Further, proceeding against a "John Doe" will unfairly prejudice DPA by impairing its ability to fully investigate the Delta Pilot's involvement in the web site hacking to discover his or her connection to other individuals or entities that may have also been involved (for example, it is unclear how DPA could conduct discovery about an unnamed person with third parties).  Therefore, ALPA's request that any litigation against the Delta Pilot be continued against "John Doe" must be denied.

What happened in the *North Jersey Media Group* case after the John Doe defendant was publicly identified validates DPA's efforts in this case to commence an action against the Delta Pilot in his home state – which is not New York.[1]

---

[1] Personal jurisdiction in this *Doe* case was premised on the fact that the wrongdoing occurred on computers housing DPA's web site in this district.  It was impossible for DPA to assert personal jurisdiction over the residence of an unidentified Doe in this district.  Now, it is absurd to claim, as ALPA seems to, that DPA is bound to sue a subsequently identified defendant in this district when it is undisputed that personal jurisdiction cannot be obtained.

Soon after the defendant's motion in *North Jersey Media Group* to proceed under a fictitious name was denied, the identified defendant, Marjorie Adams, a Pennsylvania resident, filed a motion to dismiss for lack of personal jurisdiction and improper venue.  Ms. Adams filed an affidavit demonstrating her lack of contacts with the state of New York.  (Exhibit B).  That motion was never decided, however, because the parties stipulated to transfer the action to the Western District of Pennsylvania in Ms. Adams' home state.  (Exhibit C).

DPA intends to continue to prosecute its CFAA claims in this case but has no interest in using its resources to fight a battle that does not need to be fought or cannot be.  In other words, DPA seeks to avoid a dispute over personal jurisdiction that is as certain to arise here as it did in *North Jersey Media Group*.  In order to avoid a certain motion to dismiss on personal jurisdiction grounds, DPA intends to commence the action in John Doe's home state.  The only proper, real issue left is whether the defendant in that action may proceed anonymously.  Non-party ALPA, especially as a potential defendant that could be linked by a suit against an identified John Doe, has no proper occasion to enlist this Court in some sort of a prior-restraint Rule 11 inquiry.  By the same token, ALPA should not be permitted to force DPA to disclose evidence that it has obtained from several sources other than ALPA over several months of investigation and subpoenas, that affirmatively links John Doe to the violations alleged and that would allow any reviewing court to conclude at a very minimum that DPA's claim is presented for a proper purpose, warranted by law, and based on factual contentions that have evidentiary support.

DPA submits that, pursuant to the decisions in *Sealed Plaintiff* and *North Jersey Media Group*, John Doe cannot proceed anonymously.

**CONCLUSION**

Plaintiff DPA requests that the August 14, 2014 confidentiality order be vacated or modified to permit DPA to publicly identify the Delta Pilot by commencing a new action in the federal district in which the Delta Pilot resides.

Dated: December 24, 2014

By: */s/ Stanley J. Silverstone*
Stanley J. Silverstone
ssilverstone@ssmplaw.com
Lucas K. Middlebrook
lmiddlebrook@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, New York 10601
Tel: (914) 997-1346

-and-

Nicholas Granath, *pro hac vice* (Minn. Lic. 198729)
ngranath@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN  55405
Tel. (612) 341-9080

*Attorneys for Plaintiff*