Richard A. Levy
Daniel J. Ratner
Daniel Engelstein°
Gwynne A. Wilcox<sup>Δ</sup>
Pamela Jeffrey
Carl J. Levine<sup>Δ</sup>
David Slutsky<sup>Δ</sup>
Allyson L. Belovin
Suzanne Hepner♦
Richard Dorn
Robert H. Stroup
Dana E. Lossia<sup>Δ</sup>
Micah Wissinger•
Ryan J. Barbur
Alexander Rabb

LEVY RATNER, P.C.
Attorneys at Law
80 Eighth Avenue, 8th Floor
New York, New York 10011-7175

Telephone (212) 627-8100
Telecopier (212) 627-8182

www.levyratner.com

Laureve D. Blackstone<sup>Δ</sup>
Kimberly A. Lehmann<sup>Δ</sup>
Aleksandr L. Felstiner
Ceilidh B. Gao
Jessica I. Apter<sup>Δ</sup>
Rebekah Cook-Mack
Marie Duarte▲
Margaux Poueymirou
Courtney Allen

November 22, 2016

*VIA FAX TO (212) 805-7942 AND ECF*

Hon. Alvin K. Hellerstein
United States District Court for
  the Southern District of New York
500 Pearl Street, Room 1050
New York, NY  10007-1312

Re:   *Delta Pilots Association v. Melvin*, Civ. Action No. 1:14-CV-00225-AKH

Dear Judge Hellerstein:

This firm has been retained to represent defendant Russell Melvin in the above-referenced matter. We respectfully submit this letter to raise three concerns to the Court's attention and to seek the Court's assistance. Defendant, who has no residence or business interests in the State of New York, submits this request without waiving his strong objection to personal jurisdiction. *See China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 588-596 (S.D.N.Y. 2012).

1) **Plaintiff's Refusal to Provide Information Concerning Its Third-Party Discovery**

In reviewing the docket, we noted that plaintiff Delta Pilots Association ("DPA") has, by its own account, "served at least half a dozen different subpoenas on Internet Service Providers and telephone companies," prior to amending the complaint to name Mr. Melvin as defendant. (*See* Attachment 1, transcript of Aug. 14, 2014 conference at Tr. 9:4-6.) I sent a letter yesterday to Nicholas Granath, counsel to DPA, requesting copies of the third-party subpoenas that have been served to date, as required by Federal Rule of Civil Procedure 5(a), as well as copies of any materials produced in response to those subpoenas. Mr. Granath and I conferred by telephone today, and he advised me that DPA will not provide copies of the subpoenas that have been served and will not produce copies of the materials that were obtained in response to its subpoenas.

We are concerned that this places Mr. Melvin at a serious disadvantage in responding to the Amended Complaint. In its motion for leave to take discovery, DPA asserted as follows:

LEVY RATNER, P.C

Hon. Alvin K. Hellerstein
November 22, 2016
Page 2

> Quite simply, DPA intends to learn from third-parties the 'online tracks' of the hacker, and any telephone records 'tracks,' that will either indicate the real person or persons or provide leads to other information that will. For example, the hacker gained access to DPA's web hosting site by some method and at some certain time. The hacker also placed calls to DPA's founder. In each instance the hacker, here John Doe, had to have left indications of his or her actions. Those 'tracks' can be analyzed, by forensic experts if necessary, for telltale signs revealing Doe's true identity.

(Docket No. 4 at 9).

Based upon a reading of the Amended Complaint, it does not appear that DPA's third-party discovery yielded evidence of such "tracks."  The Amended Complaint does not describe any specific action that defendant allegedly took to "hack" DPA's web site. Instead, it recites in a conclusory fashion the entire list of actions made unlawful by the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA"), and ascribes such conduct to defendant. (Docket No. 51, Amended Compl. ¶¶ 41, 44, 45).  If defendant's identity was revealed by the third-party discovery that was taken, that revelation is strangely omitted from the Amended Complaint. With respect to telephone calls made to the DPA president, Tim Caplinger, the Amended Complaint does not even allege that Mr. Melvin placed those calls. (Docket No. 51, Amended Compl. ¶ 55).  Perhaps most surprisingly, even after taking discovery from the web site hosting service, SquareSpace, DPA was only able to allege "upon information and belief" that its web site is maintained on computers located in the state of New York. (Docket No. 51, Amended Compl. ¶ 31).  If DPA could not even determine that its web site was hosted on a computer in New York State, it should be clear that personal jurisdiction over defendant is entirely lacking.

More than two and half years after DPA was granted permission to "serve immediate discovery upon third-parties" (Docket No. 5, Order), it has made virtually *no specific allegation* against Mr. Melvin, much less an allegation that refers to the "tracks" that, according to plaintiff, would undoubtedly exist if its web site had been hacked. (Docket No. 4 at 9).

### 2) **Plaintiff's Refusal to Provide Defendant With Its January 29, 2015 Motion**

My letter of yesterday to DPA's counsel also requested copies of the motion papers that were filed under seal on or about January 29, 2015, which we believe sought leave to amend the Complaint, as required by Rule 5(a).  In my telephone call with Mr. Granath this afternoon, he advised that DPA refuses to provide defendant with those papers.  DPA's motion to amend the complaint is, for one thing, relevant to our statute of limitations defense. Claims under the CFAA are subject to a two-year statute of limitations from "the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g).  The alleged hacking took place on November 8, 2013.  DPA knew of Mr. Melvin's identity no later than early October 2014, when it announced its intention to sue him by name in his home state. (Docket No. 33 at 5) ("Now, we are moving forward with a new named lawsuit in the home state of one of the key players.")

Lᴇᴠʏ Rᴀᴛɴᴇʀ, ᴘ.ᴄ

Hon. Alvin K. Hellerstein
November 22, 2016
Page 3

Nonetheless, plaintiff failed to serve defendant with the Complaint in this matter before November 8, 2015, the date upon which the CFAA limitations period expired. Instead, Mr. Melvin was served for the first time on November 3, 2016, nearly a year after the limitations period had lapsed.

For the reasons stated above, defendant respectfully requests, without waiving its objection to personal jurisdiction in this matter, that the Court direct plaintiff to provide defendant with: (1) copies of all formal discovery served upon third parties, (2) copies of all materials, including deposition transcripts and privilege logs, if any, obtained by DPA in the course of its discovery in this matter prior to service of the Amended Complaint, and (3) copies of the papers filed under seal on or about January 29, 2015.

### 3)  **Extension of Time to Respond to Amended Complaint**

Defendant was served with the Amended Complaint on November 3, 2016, and a response is due Friday, November 25, 2016. This firm's representation of defendant began only this month, and as the Court is aware there is an extensive docket of motion practice that preceded the service of the Amended Complaint, which we have been reviewing with our client. We are concerned that defendant would be placed at a significant disadvantage if he were required to respond to the Amended Complaint without access to the materials requested above. Defendant therefore respectfully requests an extension of time to answer the Amended Complaint or otherwise move. This is defendant's first request for an extension of time.

With Your Honor's permission, defendant will file a responsive pleading within thirty (30) days of obtaining DPA's production of the requested materials. This request for additional time was made to DPA's counsel, who indicated that DPA will *not* consent to any extension of time. In the alternative, if the Court denies, in whole or in part, defendant's request for the materials sought in this letter, defendant respectfully requests an extension of time until December 30, 2016 to respond to the Amended Complaint.

Respectfully submitted,

*Dana Lossia*

Dana E. Lossia

TO:  All Counsel Via ECF and email.

# ATTACHMENT 1

Case 1:14-cv-00225-AKH   Document 64   Filed 11/22/16   Page 4 of 6

```
E8erdelc                                                          1
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   DELTA PILOTS ASSOCIATION,
 4                Plaintiff,
 5        v.                            14 Civ. 225 (AKH)
 6   JOHN DOE,
                                        Conference
 7                Defendant.
 8   ------------------------------x
 9                                      New York, N.Y.
                                        August 14, 2014
10                                      2:40 p.m.
11   Before:
12        HON. ALVIN K. HELLERSTEIN
13                                           District Judge
14
15              APPEARANCES
16
17   SEHAM, SEHAM, MELTZ & PETERSEN, LLP
          Attorneys for Plaintiff
18   BY:  STANLEY J. SILVERSTONE
19
     COHEN, WEISS AND SIMON LLP
20        Attorneys for Intervenor Airline Pilots Association
          International
21   BY:  MICHAEL A. ABRAM
22
23
24
25
```

1    this session.
2             Mr. Silverstone, where are we going with this case?
3             MR. SILVERSTONE:  Your Honor, since we started
4    discovery back in January, we've accomplished a lot.  We have
5    served at least half a dozen different subpoenas on Internet
6    service providers and telephone companies.
7             THE COURT:  I know it's a lot of activity that you
8    have done.  What more do you need?
9             MR. SILVERSTONE:  We probably need a little bit more
10   time to make a decision as to whether we have enough
11   information to make one of these potential individuals a
12   defendant.
13            THE COURT:  Let's say you have.  What then?  What
14   happens if you make out a technical violation of the statute?
15            MR. SILVERSTONE:  I think it is up to the client to
16   decide whether he wants to proceed.
17            THE COURT:  Let's say he proceeds.  What does he get?
18   What could he recover?
19            MR. SILVERSTONE:  He could recover damages for the
20   cost of the investigation and any damages he could prove that
21   may have been caused to the organization.
22            THE COURT:  Let's say he can't prove damages and all
23   you have is legal expense.
24            MR. SILVERSTONE:  Right, and expert fees.  There will
25   be some damages for not only the investigative aspect but the