Lee Seham, Esq.
Lucas Middlebrook, Esq.
George Diamantopoulos, Esq.
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
199 Main Street, Seventh Floor
White Plains, New York 10601
Tel (914) 997-1346

Nicholas P. Granath (*pro hac vice*)
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| DELTA PILOTS ASSOCIATION,<br><br>Plaintiff,<br>     v.<br><br>RUSSEL C. MELVIN,<br>                    Defendant. | Civil Action No.: 1:14-cv-00225-AKH<br><br>**MEMORANDUM OF LAW<br>IN SUPPORT OF PLAINTIFF'S<br>MOTION TO AMEND THE<br>FIRST AMENDED COMPLAINT,<br>PURSUANT TO RULE 15** |
|---|---|

## I)      SUMMARY.

Plaintiff, the Delta Pilots Association ("DPA"), seeks leave to amend its First Amended Complaint ("FAC") to add fact allegations specific to defendant Russell C. Melvin ("Melvin"). The original Complaint was amended previously, once, and solely to substitute "John Doe" with named defendant Melvin. This was pursuant to this Court's order allowing for such substitution. (Doc. No. 41). The FAC followed from DPA's sealed motion, brought on January 29, 2015. (Doc. No. 44). DPA's sealed motion to amend was not granted until October 20, 2016. (Doc. No. 50). In this context, justice requires leave to amend again because Melvin has now been served but has brought a motion to dismiss, and DPA's motion is made within 21 days after service of it.

## II)      FACTS.

By order issued on January 7, 2015 (Doc. No. 41) this Court denied DPA's motion to modify or vacate a then outstanding protective order but did so "without prejudice to [a] motion to amend [the] Complaint." (*Id*.).  The order expressly contemplated that DPA could amend its Complaint to "replace its 'John Doe' allegation with the name of a real person … by proper motion in this court, under seal, … pursuant to Rules 15 and 21 …" (*Id*., p. 2).  The following observations were made by the Court on the record in the January 5, 2015 hearing leading to the January 7 order:

- That "Delta Pilots will have to make a proper motion in this court, first reopening the case and second asking me to **amend to name the proper party**, which will be an amendment under Rule 15 or Rule 21 or both. If confidentiality is desired, whoever is John Doe will have to make a motion to impart confidentiality" (Tr. 10:2) [emphasis added].

- That "[t]he motion will be made under seal to protect the confidentiality, subject to being held public by subsequent order." (Tr. 10:8).

- That "[t]hose papers will name the John Doe, because you will want to **change the caption**." (Tr. 12:23) [emphasis added].

As further indicated herein below, DPA subsequently obtained evidence through third-party subpoenas, and from its own investigation that affirmatively linked and implicated Melvin in the facts alleged in the original Complaint that, if proven, would establish a knowing, intentional violation of CFAA. (Declaration by Nicholas Paul Granath, hereinafter "<u>Granath</u>" at ¶ 5).

DPA made a timely sealed motion to amend the original Complaint to name Melvin on January 29, 2015 (Doc. No. 44), merely 14 days after the Court's order of January 7 allowing it to do so.

One year later – on January 27, 2016 – the Court had not yet ruled on DPA's motion.  On that date DPA filed a letter (Doc. No. 48) with the Court inquiring after the pending motion.

Some seven months later, on October 6, 2016, the Court had not yet ruled on DPA's motion. On that date DPA again filed a letter (Doc. No. 49) with the Court inquiring of the pending motion.

The Court then, on October 20, 2016, issued the "Order Granting Plaintiff's Sealed Motion To Amend Complaint." (Doc. No. 50). The order expressly stated: "Plaintiffs have leave to file an amended complaint, **adding Russell C. Melvin as a party defendant, and dropping the unidentified name 'John Doe.'**" (*Id*.) [emphasis added].

Six days later, on October 26, 2016, DPA filed the FAC which, in conformity with the Court's orders, was confined to amending the Original Complaint solely to substitute John Doe with named defendant Russell C. Melvin as appropriate.

In the days that followed, DPA attempted to serve Melvin without delay.

That service of the FAC on Melvin was successful on November 3, 2016. (Doc. No. 61).

Thereafter, on November 22, 2016, Melvin moved by letter to compel discovery and for an extension of time to serve his responsive pleading to the FAC. (Doc. No. 64). The Court granted only an enlargement of time, to the date of December 13, 2016. (Doc. No. 66).

On the Court-adjusted date to make a responsive pleading – December 13, 2016 – Melvin filed a motion to dismiss (Doc. No. 67) pursuant to Rule 12(b)(6) arguing, *inter alia*, that the FAC "failed to adequately plead" against Melvin (Doc. No. 68, p. 7).

DPA's subject motion to amend its FAC is therefore brought within 21 days Melvin's Rule 12(b) motion (Doc. No. 68), within the meaning of Rule 15(a)(1)(B).

### III)   ARGUMENT.

### 1)   The Legal Standard To Amend Under Rule 15(a).

The primary ground DPA's motion to amend its FAC is brought on is Rule 15(a)(1)(B),

which allows an amendment "as a matter of course." This is because Melvin was (first) required to serve a responsive pleading or Rule 12(b) motion on December 13, 2016, per this Court's order enlarging time (Doc. No. 66), and did so then (Doc. No. 68). Now, DPA has brought its motion to amend within "… 21 days after service of a [Melvin's] motion under Rule 12(b) …" within the meaning of Rule 15(a)(1)(B).

In the *alternative*, DPA's motion to amend its FAC is brought under Rule 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's consent or the court's leave." Here Melvin has moved to dismiss the FAC it in its entirety while also arguing that granting leave to amend would be futile and prejudicial. (Doc. No. 68, p. 16-17). Hence, defendant's consent to amend is safely ruled out.

Under the alternative grounds of Rule 15(a)(2), the applicable standard to amend is that a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013); *Aetna Casualty & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010) (citations omitted). Trial courts have been instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, amendments are generally favored because they "tend to facilitate a proper decision on the merits." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998).

Moreover, the Second Circuit has indicated that Rule 15(a)(2) provides a *permissive* standard. It has stated that, "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). Motions to amend should therefore be denied only for reasons of undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, or futility. *Burch v. Pioneer Credit Recovery,*

*Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (*citing Foman*, 371 U.S. at 182); *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007).

**2)** **The Proposed Second Amended Complaint Adds Specific Fact Allegations Against Melvin That the First Amended Complaint Omitted In Order To Comply With The Court's Order Allowing Substitution Of "Doe" For Melvin.**

Justice requires leave to amend the FAC to the Second Amended Complaint ("SAC") in order to add fact allegations to against named defendant Melvin, as illustrated in Attachment 1 to the "Declaration Of Nicholas Paul Granath In Support Of Plaintiff's Motion To Amend The First Amended Complaint" (hereinafter "Granath") showing the proposed SAC:

First, as to *timing*, DPA did not have leave to amend the original Complaint to name Melvin until the Court ruled only recently on October 20, 2016 (Doc. No 50), notwithstanding that DPA had timely acted to bring its sealed motion much earlier – on January 29, 2015 (Doc. No. 44). DPA has no control over the Court's actions.

Second, as to *content*, adding new fact allegations or specifying existing allegations against Melvin is appropriate at this time because DPA read the Court's October 20, 2016 order (Doc. No. 50), and its earlier statements on the record, to indicate that a grant of the sealed motion allowed only an amendment to substitute an unknown "John Doe" with a named defendant, i.e. Melvin. DPA acted in good faith in conformity with its understanding and consequently the FAC only added a named party. Moreover, Melvin has now brought a motion to dismiss under Rule 12(b)(6) claiming that the allegations of fact are inadequate to survive his motion. Without conceding the FAC fails to state a claim, on the contrary it does, nevertheless because the proposed SAC is not brought in bad faith, is not futile, and will not prejudice Melvin (as argued herein below and in DPA's brief in opposition to the motion to dismiss) – justice so requires leave because adding or specifying fact allegations against Melvin is directly responsive to his motion to dismiss.

**3) There Is No Basis To Deny DPA Leave To Amend To Add Or Specify Fact Allegations Against Melvin.**

**a) A Summary Of The Evidence Implicating Melvin Demonstrates There Is No Bad Faith In Seeking Leave To Amend To Add More Specific Fact Allegations.**

As stated, the standard to amend to add a party under Rule 15 is a liberal one, providing that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Still, a concise review of the evidence implicating Melvin is offered in order to satisfy the Court that there is no *bad* faith that warrants denial of DPA's motion to amend its FAC.[1] Following below is a summary of evidence linking and implicating Melvin in:

i) Causing the disruption of DPA's web site on Squarespace, as alleged in ¶¶ 31-43 of the FAC, and causing damage and loss;

ii) Making the anonymous call made to Caplinger confessing details of the 'hack,' as alleged in ¶¶ 55-56 of the FAC; and

iii) A motive to harm DPA and possible involvement in a conspiracy.

**i) Evidence Linking Russell C. Melvin To The Disruption Of DPA's Web Site Hosted On Squarespace Computers:**

- There can be no dispute that in 2013 DPA hosted its web site, http://delta-pilots.org, through **Squarespace** computers. (Complaint, ¶¶ 23-27).

- Records subpoenaed from Squarespace show that starting on November 8, 2013, DPA's web site was 'hacked' or disrupted (in part) by being placed in **"trial" mode or account** and by the issuance of commands in the 'master files' that resulted in the **primary domain name being switched to another domain name** that, while owned by DPA, was not used – but that now pointed to files existing on another computer server maintained in Canada (ContactPrivacy.com, run by Tucows, Inc.) was established by an anonymous party or

---

[1] Moreover, where there is an issue of whether an amendment relates back under Rule 15(c), as now raised by Melvin (Doc. No. 68, p. 9), a district court may consider relevant extrinsic evidence and is not confined to examination of the pleadings themselves. *See, e.g.*, *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 517 (6th Cir. 2007); *Wilkins v. Montgomery*, 751 F.3d 214, 225 (4th Cir. 2014).

parties. The substituted primary domain was "deltapilot.org". The disruption caused anyone viewing DPA's web site to see another site *masquerading* as DPA's site proclaiming that DPA had quit its lawful campaign to replace the incumbent union ALPA and had thrown in its support to the incumbent, a material representation that was false and damaging. (Granath Att. 2; Att. 3; Att. 4; Att. 5; Att. 6; Att. 7).

- Records subpoenaed from Squarespace show that a Squarespace **"trial account"** that was utilized in the attack was created at 7:18 p.m. EST, November 8, 2013, by an **"impersonator"** under the name "Tim-Caplinger" **using an email address of, "amp.chumbawumba@ausi.com."** (Granath Att. 8, at first page). One minute later, at 7:19 p.m. EST on November 8, a user linked the domain "Tim-Caplinger.squarespace.com" to an unused, DPA-owned domain, "deltapilot.org", and made it the primary domain – this was the start of the misdirection to a hostile web site. (Granath Att. 8).

- Publicly accessible Internet "message threads" **link the name of "Russell C. Melvin" with an email address of "amp.chumbawumba@gmail"**. (Granath Att. 9; Att. 10).

- Publically accessible Internet "WhoIs" registration files show that **Russell C. Melvin had his own personal account at Squarespace** in 2013 when DPA's site was hacked by an impersonator. (Granath Att. 11).

- **An email to ALPA – from an address used by Russell C. Melvin, "rcmelvin@mac.com" – attached a letter from Melvin** (Granath Att. 12) **providing details of the hacking not publicly known and specifically admitting to involvement in the incident as well as to calling Tim Caplinger in the wake of it.** The letter admitted the following: that Melvin had a "Squarespace Trial Account"; that Melvin's own content was "accessible to those viewing a DPA-owned domain name"; that this occurred around "November 9"; that this "lasted for approximately 18 hours"; that the "domain name settings" had been altered; that Melvin "for a short time" had "DPA membership credentials"; that Melvin "contacted TC [Tim Caplinger] personally …"; that in the call to Caplinger, Melvin "offered to cover any expense"; that Caplinger threatened criminal charges". All these details are corroborated by other evidence.

    ii)    **Evidence Linking Russell C. Melvin To Anonymous Phone Calls To DPA President Tim Caplinger Confessing The Hack:**

- Records subpoenaed from Verizon show wireless phone number **"901 871-7877" as the "originating number"** of the anonymous caller to Caplinger's home** on November 15, 2013, when a male caller claimed to Caplinger to be responsible for the hacking. (Granath Att. 13).

- Records subpoenaed from AT&T show that the phone number **"901 871-7877" belongs to the address of 7050 Corsica Drive, Germantown, TN 38138**. (Granath Att. 14).

- **Tennessee property records and a warranty deed that show Russell C. Melvin acquired the property** of 7050 Corsica Drive, Germantown, TN 38138 in 2012.[2] (Granath Att. 15; Att. 16; Att. 17).

### iii)   Evidence Of Motive For The Attack On DPA By Russell C. Melvin And Of Possible Conspiracy.

- Russell C. Melvin joined DPA and then withdrew before the hacking, as DPA membership records show. (Granath Att. 18).

- ALPA records show Russell C. Melvin participating on ALPA committees in 2013. (Granath Att. 19; Att. 20).

- Pay records show that at the time of the hacking, Russell C. Melvin received pay from ALPA ("Flight Pay Loss"). This was for Melvin's work on "P2P" which is known to be an anti-DPA committee. (Granath Att. 21; Att. 22)

### b)   The Amendment Is Not Futile.

In addition to a lack of bad faith there is no basis to deny the motion on futility grounds either.

A proposed amendment is futile only if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). In considering a Rule 12(b)(6) motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Further, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005); *Desiderio v. Nat'l*

---

[2] That the address is Melvin's is corroborated by evidence of the same address that Melvin gave to DPA when he became a DPA member.

*Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999).

As is argued in DPA's separately filed "Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss" – the same recitation of evidence above herein showing no bad faith *also demonstrates* that the added allegations in proposed SAC would survive Melvin's 12(b)(6) motion to amend. Indeed, the added fact allegations in the SAC go directly to the alleged lack of adequate allegations specific to Melvin regarding causation, loss, lack of authorization, and knowing transmission – all issues Melvin's brief complains of. (Doc. No. 68, p. 7-15). Hence there is no futility apparent in the added or specified fact allegations specific to Melvin in the proposed SAC.

Moreover, DPA has not declined to amend to add the new allegations in the SAC *because* it cannot do so or because it has been dilatory, as Melvin wrongly claims. Rather, as stated herein above, DPA acted timely to amend to name Melvin and when leave was granted DPA then acted in conformity with the Court's order to only substitute "John Doe" for Melvin. Now, DPA's motion to amend is timely because it follows recent service of the FAC on Melvin on November 3, 2016, and is directly, and timely, responsive to Melvin's motion to dismiss brought December 13, 2016.

Moreover, the amendments in the SAC are not futile because, as Melvin claims (Doc. No. 68, p. 21), "'access' alone could not cause the damage the DPA alleges, namely, redirection of its website to another domain" in Counts II and III. That is not a fair reading of the FAC (or of the proposed SAC). The damage as alleged is not limited to merely redirection but also includes causing the web site to not function properly, severing software links, severing video links, rendering some portions of the web site inaccessible, and interfering with software updates. (*see* FAC at ¶¶ 33-36, 41, 43, 44, 45, 46); (see SAC at ¶¶ 41, 47, 48, 49, 50, 56, 57, and 61).

Last, there is no futility in Melvin's argument that amending the FAC will "do nothing but prolong the litigation" (Doc. No. 68 p. 20). DPA has proceeded only as fast as this Court's rulings and revelation of the facts implicating Melvin have allowed, and DPA's amendments in the proposed SAC are specific enough to more than cure any alleged deficiency in the FAC.

### c) There Has Been No Undue Delay.

In addition to the lack of bad faith or futility, there is no basis to deny this motion to amend the FAC because of undue delay:

First, mere delay itself is not a basis to deny leave to amend. As the Second Circuit has repeatedly recognized, "[m]ere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Parker v. Columbia Pictures Industries,* 204 F.3d 326, 339 (2d Cir. 2000); *Rotter v. Leahy*, 93 F. Supp. 2d 487, 497 (S.D.N.Y. 2000) ("Typically, the moving party's delay, standing alone, is not sufficient reason to foreclose amendment)." Length of time, in of and itself, does not provide a basis to deny a motion to amend. *Daniels v. Loizzo*, 174 F.R.D. 295 (S.D.N.Y. 1997).

Second, DPA has acted as fast as it could under the Court's rulings – and in light of the concealment of Melvin's identity. DPA brought its sealed motion in a timely matter and acted within days of the Court's granting of it, which was not until some 20 months later. (Doc. No. 50). In addition, the time it has taken to learn Melvin's identity and connect him to the hacking was due to the secretive nature of this computer crime, that Melvin sought to keep his involvement secret (e.g., by calling Caplinger but refusing to identify himself), ALPA's refusal absent court order to disclose that Melvin had written to ALPA to admit his involvement, and the resulting fact that DPA had to proceed subpoena-by-subpoena to track down the culprit (and was not willing to

name any party it suspected without sufficient evidence).

Moreover, as is argued in DPA's separately filed "Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss" DPA is well within the two year statute of limitations period under CFAA (18 U.S.C. § 1030(g)), notwithstanding Melvin's argument to the contrary.

### d) No Unfair Prejudice Results.

In addition to the lack of bad faith, futility, or delay, there is no basis to deny the motion because of unfair prejudice to Melvin.

In determining whether leave to amend should be granted, among the "most important" issues to consider is prejudice to the opposing party. *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (internal quotations omitted). In analyzing prejudice, courts consider whether the amendment would: (1) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (2) significantly prolong the resolution of the action, or (3) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Department of Corrections,* 214 F.3d 275, 284 (2d Cir. 2000). However, in general, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust of Chicago,* 889 F.2d 1248, 1255 (2d Cir. 1989).

Melvin cannot claim sufficient prejudice, if any prejudice at all, to defeat the motion:

First, although the question of whether an amendment is prejudicial is determined on a case-by-case basis, a common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d

503, 510 (4th Cir. 1986). A non-prejudicial amendment is one that merely adds additional allegations or specificity based on facts already pleaded. *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."). Here the proposed SAC only adds specificity to, or fact allegations specific to, Melvin.

Second, while *DPA* was kept in the dark about Melvin's involvement, Melvin himself was aware of DPA's claims far earlier. Melvin called Tim Caplinger on November 15, 2013 refusing to identify himself – only *seven days* after the hacking – and offered DPA money. (FAC ¶¶ 55, 56; SAC ¶¶ 77-82). According to Melvin's own letter to ALPA (Granath Att. 12) in that call Melvin offered to pay "expenses" should he be "found negligent in any way" and in turn was "threatened" by Caplinger with "civil and criminal charges." (*Id*.). Shortly thereafter Melvin wrote to ALPA legal counsel about his involvement in DPA's web site impairment and his call to Caplinger. (*Id*.). Then, once ALPA was compelled by subpoena to disclose Melvin's letter – and on August 14, 2014, by this Court to disclose his name to DPA (in court, albeit off-the-record) – DPA wrote to Melvin on August 18, 2014, to alert him to the need to preserve evidence based on the fact that DPA has commenced this action. (Granath Att. 23). Hence, it is simply inaccurate to claim, as Melvin does (Doc. No. 68 p. 21), that he had "no notice … until November 3, 2016" when he was served with the FAC. Nor can there be any merit to the danger that Melvin's "electronic evidence may disappear over time" (*Id*.) when he knew as early as seven days after the hacking that DPA was pursuing civil and criminal charges and was specifically notified in writing to preserve all electronically stored information on August 18, 2014. (Granath Att. 23).

Third, Melvin's argument that DPA failed to timely move to amend the original Complaint

to name him is specious. DPA missed no deadline to amend to name Melvin. The Court on January 7, 2015 by order (Doc. No. 41) specifically allowed DPA to move by sealed motion to name Melvin – with no deadline to do so imposed.[3]

In any event, DPA *did* file its sealed motion on January 29, 2015 (Doc. No. 44) – only 22 days later.

While Melvin proved quite capable of corresponding with ALPA to admit his involvement, he has remained hidden to DPA. So far only DPA has been prejudiced.

### IV) **CONCLUSION.**

DPA has demonstrated the legal and factual basis for this Court to grant it leave to amend its FAC to the proposed SAC to specify allegations or add fact allegations specific to the now named and now served Defendant Melvin. This motion is also directly responsive to Melvin's motion to dismiss (Doc. No. 67) and made in good faith. Granting the motion is neither futile nor will it cause unfair prejudice.

---

[3] This subsequent order necessarily superseded the earlier order of September 8, 2014 setting a time to amend of September 30, 2014. (Doc. No. 24).

Dated: <u>December 26, 2016</u>     SEHAM, SEHAM, MELTZ & PETERSEN, LLP
   White Plains, NY

        By: <u>*/s/ Nick Granath*</u>
           Nicholas Granath, Esq. *pro hac vice*
           ngranath@ssmplaw.com
           2915 Wayzata Blvd.
           Minneapolis, MN  55405
           Tel. (612) 341-9080
           Fax (612) 341-9079

           and

           Lucas K. Middlebrook, Esq.
           lmiddlebrook@ssmplaw.com
           Lee Seham, Esq.
           LSeham@ssmplaw.com
           George Diamantopoulos, Esq.
           GDiaman@ssmplaw.com
           199 Main Street, Seventh Floor
           White Plains, New York 10601
           Tel: (914) 997-1346
           Fax: (914) 997-7125

           *Attorneys for Plaintiff, the Delta Pilots Association*

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>December 26, 2016</u>, I electronically filed the following documents and their attachments, if any:

1. PLAINTIFF'S MOTION TO AMEND THE FIRST AMENDED COMPLAINT, PURSUANT TO RULES 15

2. MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE FIRST AMENDED COMPLAINT, PURSUANT TO RULES 15

3. DECLARATION OF NICHOLAS PAUL GRANATH IN SUPPORT OF PLAINTIFF'S
4. MOTION TO AMEND THE FIRST AMENDED COMPLAINT (and all its attached exhibits and attachments)

5. [proposed] ORDER


I further hereby certify that the above listed documents were filed with the Clerk of this Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    Dana Lossia, Esq.
    dlossia@levyratner.com
    LEVY RATNER, P.C.
    80 Eighth Avenue Floor 8
    New York, New York 10011
    Tel. 212 627-8100
    Fax. 212 627-8122

                                                  */s/ Nick Granath*
                                                  Nicholas Paul Granath, Esq.