Lee Seham, Esq.
Lucas Middlebrook, Esq.
George Diamantopoulos, Esq.
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
199 Main Street, Seventh Floor
White Plains, New York 10601
Tel (914) 997-1346

Nicholas P. Granath, Esq. (*pro hac vice*)
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA PILOTS ASSOCIATION,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>RUSSELL C. MELVIN,<br><br>　　　　　　Defendant. | Civil Action No.: 1:14-cv-00225-AKH<br><br>**PLAINTIFF'S<br>MEMORANDUM OF LAW<br>IN OPPOSITION TO DEFENDANT'S<br>MOTION TO DISMISS<br>[ Corrected ]** |

## I)      SUMMARY.

Plaintiff, the Delta Pilots Association ("DPA"), submits this brief in opposition to Defendant Russell C. Melvin's ("Melvin") motion to dismiss dated December 13, 2016 (Doc. No. 67), which alleges two arguments: i) statute of limitations and ii) failure to satisfy the plausibility standard of pleading set forth in *Iqbal* and *Twombly*. Melvin's first argument misstates applicable law and ignores facts showing the action is indeed timely. Melvin's second argument unfairly reads the First Amended Complaint and, alternatively, is cured by amendment, in a motion now pending (Doc. No. 74) to add additional fact allegations specific to Melvin.

## II)        FACTS.

On or about November 8, 2013, and continuing sometime thereafter, a secretive computer hacker sabotaged DPA's efforts to provide Delta pilots with an alternative independent labor union by disabling its website, damaging it, and re-directing supporters to a false statement that DPA had terminated its efforts. (First Amended Complaint, hereinafter "FAC" – at Doc. No. 51, ¶ 32). This impairment of DPA's web-hosting computer system had the desired effect of disrupting the flow of political and financial support for DPA's organizing effort, impairing the integrity of its web site computer data and program, and imposing costs to assess the damage and to restore integrity to DPA's computer system. (FAC, ¶¶ 33-37, 43-52).

Consequently, two months later, on January 13, 2014, DPA commenced (of necessity) a "John Doe" action under the Computer Fraud and Abuse Act ("CFAA"). (Doc. No. 1). Upon motion, this Court authorized immediate discovery upon third-parties (Doc. No. 5).

DPA took advantage of that opportunity, including by serving a subpoena on the Air Line Pilots Associations ("ALPA"). In face of objections by non-party intervenor ALPA, after a hearing on August 14, 2014, this Court granted DPA's motion to compel its subpoena on ALPA. (Doc. No. 21). Ultimately this yielded a letter by Melvin to ALPA linking him to the November 8, 2013 disruption of DPA's web site – and revealing his true identity. (*See* separately filed "Declaration of Nicholas Paul Granath In Support Of Plaintiff's Motion To Amend First Amended Complaint, Pursuant To Rule 15" – hereinafter "Granath Decl." – at Doc. No. 76, Att. 12 thereto – at Doc. No. 76-12).

DPA then promptly wrote to Melvin, in a letter dated August 18, 2014, to notify him of claims and to preserve electronically stored information. (Granath Decl., Att. 23 – at Doc. No. 76-23).

Thereafter, some additional litigation involving ALPA and other issues led to a hearing on January 5, 2015.  This was swiftly followed by an order on January 7, 2015. (Doc. No. 41).  That order ended the basis for ALPA's involvement, terminated and reopened this case – and specifically authorized DPA to make a sealed motion under Rule 15 and 21 to "amend its complaint to replace its 'John Doe' allegation with the name of a real person", i.e. Melvin. (Doc. No. 41, p. 2).  There was no deadline imposed to amend to substitute Melvin's name for "John Doe" in the caption of the Complaint in the Court's January 7, 2015 order.  Moreover, this subsequent January 7, 2015 order necessarily superseded the Court' s earlier order, of September 8, 2014, then setting a time to amend of September 30, 2014. (Doc. No. 24).

Nevertheless, DPA promptly made a timely sealed motion to amend the original Complaint to name Melvin in the caption and elsewhere as appropriate, on January 29, 2015 (Doc. No. 44) – merely 14 days after the Court's January 7 order allowing it to do so.

One year later – on January 27, 2016 – the Court had not yet ruled on DPA's motion, however.  So on that date DPA filed a letter with this Court (Doc. No. 48) inquiring as to the status of the pending motion.

Still, some seven months later, on October 6, 2016, the Court had not yet ruled on DPA's sealed motion.  So on that date DPA again filed a letter with the Court (Doc. No. 49) inquiring of the pending sealed motion to add Melvin's name.

Next, on October 20, 2016, this Court issued its "Order Granting Plaintiff's Sealed Motion To Amend Complaint." (Doc. No. 50).  The Court expressly stated in its order granting the sealed motion to amend that: "Plaintiffs have leave to file an amended complaint, *adding Russell C. Melvin as a party defendant, and dropping the unidentified name 'John Doe.'*" (*Id*.) [emphasis added].

Merely six days later, on October 26, 2016, DPA filed its FAC, which in conformity with the Court's orders (Doc. Nos. 41, 50), was confined to amending the original Complaint solely to substitute "John Doe" with named Defendant Russell C. Melvin, as appropriate in the Complaint.

In the days that followed the filing of its FAC, DPA attempted to serve Melvin without any delay. Service of the FAC on Melvin was soon successfully made on November 3, 2016. (Doc. No. 61).

On the Court-adjusted date to make a responsive pleading – December 13, 2016 (*see* Doc. No. 66 enlarging time) – Melvin filed a Rule 12(b) motion to dismiss (Doc. No. 67).

Prior to this memorandum, DPA has filed and served a motion to amend its FAC pursuant to Rule 15 (Doc. No. 74), within 21 days of Melvin's Rule 12(b) motion.

### III)      ARGUMENT.

By his motion of December 13, 2016 (Doc. No. 67), Melvin seeks to dismiss the FAC on but two alleged grounds: (1) that DPA's amended complaint (FAC) was not filed within the applicable two-year limitation period, and (2) that the FAC fails to satisfy the plausibility standard for pleading. However, an examination of Melvin's supporting brief (Doc. No. 68, hereinafter "brief") demonstrates his motion should be denied for the reasons stated below and because DPA has moved to amend the FAC– which motion (Doc. No. 74) and its proposed Second Amended Complaint ("SAC") are hereby incorporated by reference (Doc. No. 76-1).

**1)      DPA Satisfied The Applicable Statute Of Limitations.**

   **a)      CFAA Contains A 2 Year Statute Of Limitations.**

The statute of limitations under CFAA is two years. 18 U.S.C. § 1030(g). Melvin's first of two grounds that he advances for his Rule 12(b)(6) motion to dismiss is his claim that the FAC

is barred by CFAA's statute of limitations. Specifically, Melvin argues that, "the action was not begun against" him "until almost three years after the date of the act complained of." (Brief, p. 6).[1] That is incorrect as a matter of fact and law.

### b) The Date of DPA's Motion to Amend Constitutes its Filing Date.

Melvin bases his statute of limitations argument on the supposition that the date of the Court's order granting DPA's motion to amend its complaint should be deemed the FAC's filing date for limitations purposes. From this false premise, Melvin proceeds to argue (Brief, p. 9) that, under Federal Rule of Civil Procedure 15(c)(1), the FAC does not relate back to the filing of the original Complaint in this matter.

Melvin's argument leapfrogs over the question of how the courts in this jurisdiction determine the filing date of an amended complaint for the purpose of calculating compliance with applicable limitations periods. Curiously, Melvin's brief fails to even specify a filing date for the Amended Complaint. Instead, it indirectly alleges that the limitations period has lapsed by arguing that, "Mr. Melvin should have been put on notice of this action much earlier than *three years* after the act complained of." [sic] (Brief, p. 8). And as a matter of *fact*, this ignores Melvin's letter to ALPA sometime in the fall of 2013 acknowledging "civil and criminal" prosecution threats by DPA (Doc. No. 76-12), and ignores the August 18, 2014, letter from DPA's counsel to him to preserve electronically stored information (Doc. No. 76-23).

Presumably, the three-period period to which Melvin alludes to is the period between the commencement of his unlawful hacking activity – on November 8, 2013 – and the Court's order granting DPA's Motion to Amend Complaint – on October 20, 2016. In sum, Melvin holds DPA

---

[1] For accuracy, all citations to page numbers are to ECF-generated page numbers.

fully culpable for the delay between the date it filed its sealed motion to amend the original complaint to substitute "John Doe" with Melvin's name – January 29, 2015 – and the date the motion was granted. This is not the law.

As aptly articulated by the Seventh Circuit:

> **As a party has no control over when a court renders its decision** regarding the proposed amended complaint, **the submission of a motion for leave to amend**, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, **tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion**. *Mayes v. AT&T Information Systems, Inc.,* 867 F.2d 1172 (8th Cir. 1989) (per curiam); *Sheets v. Dziabis,* 738 F. Supp. 307, 313 (N.D. Ind. 1990). [emphasis added]

*Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993). While the Second Circuit Court of Appeals has not addressed this issue, the district courts within the circuit, including the Southern District, have uniformly held to this principle. *Johnson v. U.S. Dep't of Homeland Sec.*, 2010 U.S. Dist. LEXIS 37048, 2010 WL 1486910, at *1 (N.D.N.Y. Apr. 14, 2010) ("[W]hile there does not appear to be any Second Circuit authority directly on point, several courts have held that the filing of a motion for leave to file an amended complaint tolls the statute of limitations even though the amended complaint will not be filed under after the court rules on the motion."); *Silano v. Wheeler*, 2015 U.S. Dist. LEXIS 13736 (D. Conn. 2015) (same); *Durstenberg v. Electrolux Home Prods*., 2016 U.S. Dist. LEXIS 23968 (S.D.N.Y. 2016) (recognizing principle as applicable under New York CPLR and federal law); *Scelfo v. Aurora Concept, Inc.*, 2006 U.S. Dist. LEXIS 5473, 2006 WL 336038, at *19 (S.D.N.Y. Feb. 10, 2006) (recognizing principle as applicable under New York CPLR and federal law); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182 (S.D.N.Y. 2011); *Newton v. City of New York*, 2009 U.S. Dist. LEXIS 55195 (June 29, S.D.N.Y. 2009) ("Plaintiffs' motion for leave to file an amended complaint tolls the statute of limitations with regard to the newly-named plaintiffs.").

Thus, as a matter of law, in accordance with above cited case law, the two-year limitations period applicable in this case was *tolled* from the filing of DPA's motion to amend – January 29, 2015 – until October 20, 2016, the date the Court granted the sealed motion to add Melvin as a named defendant. DPA's filing of January 29, 2015, was *within fifteen months* of the commencement of the Melvin's unlawful conduct. Moreover, DPA served Melvin within three *weeks* of the Court's decision, on November 3, 2016. (Doc. No. 61). Equitable principles and the precedent of this Court, as well as other circuits, and the facts, require that this action be deemed timely filed as a matter of law.

### c) DPA's Amended Complaint Relates Back Pursuant to Rule 15(c)

As discussed above, DPA considers Melvin's Rule 15-based arguments to be inapposite because the FAC in this matter was timely even without reliance on a relation back to the original Complaint. Nevertheless, even assuming DPA did require a relation back to the original Complaint to satisfy the two-year limitations period, the requirements of Rule 15(c)(1) should be deemed satisfied.

Melvin asserts that the Second Circuit has held that the lack of knowledge of a "John Doe" defendant's name does not constitute a mistake of identity so as to permit an amended complaint substituting "John Doe" with a named party to relate back to the date of the original complaint and cites *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013) and *Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996). (Brief, p. 9). However, to the extent that these cases define "mistake of identity" in terms of what the *plaintiff* — rather than the prospective *defendant* — knew or should have known, it has been abrogated by *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010). *Compare Barrow*, 66 F.3d at 469-70 (holding that when a complainant sues Doe officers because he does

not know their identities, it is not based upon a "mistake" about their identity and therefore a subsequent amendment naming the officers does not relate back), *with Krupski*, 560 U.S. at 541 ("We hold that relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading.")

As alleged in both the original and First Amended Complaints, the perpetrator of the unlawful hacking contacted the DPA's interim president three times via telephone on November 15, 2013, after DPA publically announced its intention to bring a "lawsuit". (FAC, ¶¶ 54, 55). The caller attempted unsuccessfully to negotiate with DPA's interim president "to avoid being 'pursued.'" (*Id*. at ¶ 56). As detailed in DPA's sealed motion to amend the original Complaint, (Doc. No. 44) – and now in the pending motion to amend the FAC (Doc No. 74) – substantial evidence ties these calls directly to Melvin. Indeed, DPA will allege in its Second Amended Complaint that the caller was Melvin.

And as further detailed in the pending motion to amend the FAC, Melvin sought advice from incumbent union ALPA in email correspondence in which he discussed DPA's allegations that its website had been "redirected" and recounted telephone conversations he had with DPA's interim president, Caplinger. According to Melvin's own letter to ALPA (Doc. No. 76-12), in his call to Caplinger, *on November 15, 2013*, Melvin offered to pay "expenses" should he be "found negligent in any way" and in turn was *"threatened" by Caplinger with "civil and criminal charges."* (*Id*.). Moreover, Melvin was advised in writing of DPA's claims and the need to preserve evidence in August 18, 2014. (Doc. No. 76-23).

Given these facts, it is clear that Melvin knew or, at minimum, should have known that he was the target of DPA's legal action as early as November 15, 2013. *See, e.g., Archibald v. City*

*of Hartford*, 274 F.R.D. 371, 379-82 (D. Conn. 2011) (distinguishing *Barrow*, post-*Krupski*, because the prospective defendants had constructive notice and were not prejudiced).

Because a defendant bears the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on such ground may be granted "only if it is clear on the face of the complaint that the statute of limitations has run." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014). Because the original Complaint, subsequently submitted evidence, and the FAC all allege that Melvin was advised directly by DPA that he would be subject to civil and criminal actions based on his role in disrupting the DPA website (and as father alleges in DPA's proposed Second Amended Complaint) – Melvin cannot possibly establish that DPA's pleadings do not entitle it to the relation back provisions of Rule 15(c)(1). Consequently, Melvin's first ground to dismiss fails because DPA has acted timely, within the two-year statute of limitations.

**2)** **DPA Has Stated Claims Under CFAA In Its First Amended Complaint – And Alternatively, Now Properly Seeks Leave To Amend To Add Additional Fact Allegations Specific To Melvin – That Are More Than Plausible On Their Face.**

    **a)** **Legal Standard Applicable.**

Melvin's brief cites *Iqbal* and *Twombly* without full case citation or a discussion of what these cases actually stand for in the context of a motion to dismiss for failure to state a claim. (Brief, p. 11). These cases hold that to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is *plausible on its face*." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) [emphasis added]. This plausibility requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In evaluating a complaint, the Court must accept as true the non-conclusory factual allegations in the complaint and draw all inferences in the plaintiff's favor. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). A complaint need not, therefore, contain "detailed factual allegations." *Iqbal*, 556 U.S. at 678. Rather, the plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" satisfying the materiality requirement, *Twombly*, 550 U.S. at 556.

Because, as argued herein below and in its brief (incorporated by reference) in support of its pending motion to amend the FAC (Doc. No. 74) – it is not futile or in bad faith to amend the FAC *therefore* DPA relies on both the allegations in its FAC and alternatively in its proposed Second Amended Complaint (Doc. No. 76-1) in order to demonstrate that it meets the plausibility standard of *Iqbal* and *Twombly*.

### b) More Than "Formulaic" Allegations Against Melvin Have Been Stated.

Notwithstanding that nothing in CFAA or even Melvin's discussion of the elements of a CFAA claim require it, Melvin begins his argument with a list of supposedly missing allegations that he says make the FAC little more than a "formulaic recitation." (Brief, p. 11). As a threshold matter, none of these 'missing' allegations are required to plead the elements but in any case each item has been alleged either in the FAC – or will be in the proposed SAC as follows:

- The claim there are no allegations "concerning any Internet Protocol ('IP') address, phone number, computer records, or any other 'trackable data that would link Mr. Melvin to the alleged 'hack'" (Brief, p. 11): The FAC alleges specific URL addresses at ¶¶ 23 and 39. The SAC will allege that *specific phone numbers* link Melvin to calling Caplinger on November 15, 2013 when Melvin talked about the disruption of DPA's web site but refused to identify himself, at ¶¶ 79 and 80. The SAC will allege *specific email addresses* that link Melvin to the disruption at ¶¶ 40, 43 and 73. The SAC will allege another email address used by Melvin reflected in *computer records at Squarespace*, at ¶ 43. The SAC will allege that another email address of Melvin, and a *letter* he sent to ALPA, links Melvin to calling Caplinger and to admitting involvement in disrupting the web site and other factual admissions, including that Melvin was warned that DPA would pursue civil claims, at ¶¶ 73-75. The SAC will also allege Melvin's collusion with a specific web site outside the jurisdiction of the United States, at ¶

46.

- The claim that there are no allegations that Melvin "used usernames, passwords, or other unauthorized information to transmit information to and and/or access DPA's website" (Brief, p. 11): The SAC at ¶ 38 will allege specifically that Melvin obtained the administrative login and password for DPA's web site, that he obtained a web hosting account at Squarespace, ¶ 39, that he obtained or used an email address of "amp.chumbawamba@ausi.com" at ¶ 40, and that at precise moments reflected in computer logs Melvin "hacked" into DPA's web site by unauthorized use of the DPA administrative login and password by impersonating Caplinger and thereafter caused damage and loss by the transmission of code or commands to cause the web site to cease functioning, at ¶¶ 41, 42-44.

- The claim that there are no allegations "of loss amount … with no specific cost or losses alleged" (Brief, p. 11): Specific lost dollar amounts are alleged in the FAC at ¶ 46 which alleged a loss "in excess of $5,000"; Further, the SAC at ¶ 64 will allege $12,496 of loss for costs to respond based on additional allegations of man-hours spent and dollar values in ¶¶ 61-63. In addition, the SAC at ¶ 66 will allege consequential loss of $11,000.

### c) **DPA Adequately Pleaded, Or Will, Causation.**

Defendant Melvin argues that the FAC failed to adequately plead that Melvin's conduct caused the harm suffered by DPA. (Brief, p. 12). This argument fails on four levels:

<u>First</u>, it ignores that causation is alleged in the FAC at ¶¶ 41, 45, and 50.

<u>Second</u>, this line of argument disingenuously *ignores the docket* in this case and, most particularly, the court-mandated process whereby DPA was authorized to amend its original Complaint to include Melvin. DPA obtained Melvin's identity only pursuant to a Court-ordered disclosure subject to the limitation that the DPA keep his identity confidential until such time as the Court granted permission to change the name of the caption. (Doc. 41). The Court explained its rationale, and process to which DPA would have to adhere, in the following terms:

> DPA obtained discovery in this case pursuant to its allegation that this court had personal jurisdiction, and that it would amend its complaint to replace its "John Doe" allegation with the name of a real person. DPA can do that by proper motion in this court, under seal, showing why it should be entitled to do so pursuant to Rules 15 and 21, Fed. R. Civ. P.

(Doc. 41, p. 2).

In accordance with the Court's instructions, DPA filed its sealed motion to amend the complaint to add a named defendant on January 29, 2015. (Doc. 44). While the motion specified that it was for the *specific purpose of replacing the John Doe caption to Defendant Melvin*, it recited, in significant detail, the evidence that tied Melvin to the hacking of DPA's website, including:

- The link between Melvin and the email address of amp.chumbawumba@gmail.com, from which address emanated an attack on the DPA website by an internet "impersonator" under the name of Tim-Caplinger;

- Correspondence between Melvin and ALPA in which Melvin admitted that his personal website was mapping to the DPA domain and acknowledging a call to DPA Interim President Caplinger for the purpose of "expressing my regret that the mapping problem interfered with the operation of his website."

- Documentation confirming that the anonymous call acknowledging responsibility for the hacking of DPA's website originated from Defendant Melvin's home.

(Doc. 44, p 7). It was on the basis of this evidence, *inter alia*, that the Court issued its order granting DPA's sealed motion to amend the Complaint. (Doc. 50). The same evidence now supports the pending motion to amend the FAC and Melvin has access to it.

In this context, it is disingenuous for Defendant Melvin to argue that DPA has failed to plead that his conduct caused the harm suffered by DPA. The FAC describes how, beginning on or about November 8, 2013, and continuing thereafter, the DPA website was "hacked" in a manner that disrupted access to the site, impaired DPA's ability to obtain monetary donations, disrupted the ability to display videos and messages, and redirected visitors to a web page falsely claiming that DPA had abandoned its campaign. (FAC, ¶¶ 33-39). The sabotage was brazen enough to provide a link to the web site for ALPA, the incumbent labor union which is DPA's rival. (FAC, ¶ 38). On November 15, a man contacted DPA Interim President Tim Caplinger three times to admit that he was responsible for disrupting DPA's web site by means of using Caplinger's

personal information. (FAC, ¶ 55). DPA's sealed motion to amend the Complaint manifestly satisfied the Court that there was substantial evidence that ties these calls, disruption of DPA's web site, directly to Melvin.

Third, per the Court's order, the *sole* purpose of DPA's sealed motion to amend the complaint was to change the caption to include Melvin. So, if the evidence underlying that *successful* motion is required to be incorporated directly into the text of the FAC in order to satisfy pleading requirements, then DPA has now sought leave to amend the FAC accordingly, *mooting* that argument. The additional fact allegations in the SAC that plausibly allege causation by Melvin are found at: SAC ¶¶ 4, 41, and 46.

Four, Melvin also faults the FAC for failing to specify precisely how he effectuated his sabotage of DPA's website, i.e., the FAC is "devoid of any facts ascertaining what happened to the DPA's website, by what method, or when". (Brief, p. 14). However, the proposed SAC will allege the manner of the disruption and the date and even the timing of it, at ¶¶ 38-46. Moreover, while not all details of Melvin's unauthorized access are known, in view of the substantial evidence of his culpability, the full and precise means by which he effectuated his sabotage are best known by him and, therefore, DPA has, at minimum, a "reasonable expectation" that further discovery will reveal evidence of Melvin's methods. *Twombly*, 550 U.S. at 556.

### d) **DPA Adequately Pleaded, Or Will, A Loss of $5,000.**

Melvin *acknowledges* that DPA has already alleged in the FAC the following losses:

* Costs to assess and discover extent that website rendered inoperable
* Costs to determine nature of the damage to the website's integrity
* Costs to restore the integrity of the web site
* Costs to re-establish critical links
* Costs to communicate with hosting service
* Donations not received
* Expenses to identify and pursue the offenders to ensure future security
* Lost good will based on interference with union rights.

(Brief, p. 15 citing FAC ¶46-49).

From this, however, Melvin first argues that DPA's lost good will and revenue arising from the interruption of its computer service do not "qualify under CFAA." (Brief, p. 15). Yet the statute specific includes "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service …." 18 U.S.C. § 1030(e)(11). Donations via internet are DPA's primary source of business and a reasonable estimate of revenue losses due to the interruption of service inflicted by Melvin could be provided.

Wholly aside from the issue of lost revenues, federal courts have held that allegations that a defendant's actions have caused a plaintiff "to incur losses of over $ 5,000 during a one-year period related to damage and security assessments … are sufficient to allege loss for purposes of the CFAA." *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 768 (N.D. Ill. 2009) *citing Patrick Patterson Custom Homes v. Bach,* 586 F. Supp. 2d 1026, 1036-37 (N.D. Ill. 2008); *Lockheed Martin Corp. v. Speed,* No. 6:05 CV 1580, 2006 U.S. Dist. LEXIS 53108, 2006 WL 2683058, at *3 (M.D. Fla. Aug. 1, 2006).[2]

So here again, Melvin questions whether damage, security assessments and other remedial actions, could have amounted to $5,000 – but such argumentation merely raises an *evidentiary issue*, not a pleading issue to support a motion to dismiss. *United States v Middleton* 231 F3d 1207, (9th Cir. 2000) (In determining that defendant caused damage exceeding $ 5,000, it was permissible to consider hourly wage of employee who repaired damage and how many hours he

---

[2] The loss allegation also implicates the type of harm described in section 1030(a)(5)(B)(i), thereby satisfying the requirement of section 1030(g) that the alleged conduct implicate one of the five factors listed in section 1030(a)(5)(B)(i)-(v) thereby substantiating a claim pursuant to section 1030(a)(2). *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 768 (N.D. Ill. 2009).

worked, even if: he would have gotten same wage whether he repaired damage or not, company did not pay him extra, and there was no proof company lost $ 5,000 it otherwise would have made); *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887 (N.D. Cal. 2010) (Costs associated with investigating intrusions into a computer network and taking subsequent remedial measures were "losses" within the meaning of Computer Fraud and Abuse Act).

Nevertheless, DPA will allege in the proposed SAC, and has moved for leave to amend, additional specific details of damage and loss, as defined in CFAA, in SAC ¶¶ 61-64, and 66. These additional allegations are plausible under CFAA. *See e.g.*, *NovelPoster v. Javitch Canfield Group*, 140 F.Supp.3d 954 (N.D. Cal. 2014) (Allegation that owners of online retailer expended "substantial time energy" in their efforts to secure the restoration of their business data and information to the condition they were in before retailer's operators took unauthorized control over owners' online business accounts and prohibited owners from accessing the data and communications sufficiently alleged loss amount of over $5,000, as required to state a claim for violation of the Computer Fraud and Abuse Act); *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339 (M.D. Fla. 2014) (Staffing company's claims that it spent at least $5,000 on engaging a computer forensics firm to analyze and assess the extent of former employee's taking of information and attempts to cover her trail were sufficient to allege a loss of more than $5,000 in a one-year period, as required to state a claim under the Computer Fraud and Abuse Act).

  e)  **DPA Adequately Pleaded, Or Will, A Lack of Authorization.**

Melvin asserts that the lack of authorization is not adequately pled but this is misleading and unfair. Melvin admits, as he must, that improper access *is* alleged; however, he maintains that there are insufficient allegations of fact supporting the access allegation. (Brief, p. 17); (FAC ¶¶ 1, 6, 44, 45, 70, 78). Melvin's argument is but an exercise in sophistry. As discussed above, the

original Complaint alleged that the "John Doe" defendant *admitted* to the involvement in disrupting DPA's web site on the date DPA alleged it was "hacked" while the FAC identifies that saboteur as Melvin (as there is no other defendant) while the proposed SAC specifically names Melvin as the caller. Melvin's unauthorized access not only subverted DPA's organizing efforts and disrupted its revenue flow but it also perverted the DPA website into a vehicle for supporting its rival ALPA. (FAC ¶ 38).

The CFAA prohibits not just hacking as such but also actions where a user permissibly accessed a computer but then "exceeds authorized access" by obtaining or altering information he should not. 18 U.S.C. § 1030(e)(6); *E.R. James Real Estate Servs., LLC v. Spinell,* 2011 U.S. Dist. LEXIS 124044, 33 I.E.R. Cas. 16 (N.D. Ill. Oct. 26, 2011). Where, as in the instant matter, a complaint flatly alleges that the defendant *admits* to causing interruption of computer systems, it cannot be seriously contended that improper access has not be adequately alleged.

Nevertheless, DPA will allege in the proposed SAC, and has moved for leave to amend, additional facts specific to Melvin, i.e. that Melvin accessed DPA's web site when he was unauthorized to do so, at SAC ¶ 4, that Melvin was never authorized "for administrative access" at SAC ¶ 35, that on, or prior to, November 8, 2013, Melvin surreptitiously and without authorization obtained the DPA administrative login and password to the Squarespace computer and files hosting DPA's web site, at SAC ¶ 37, that this was done "knowing his purpose was to gain unauthorized access" at SAC ¶ 38, and that on November 8, 2013 Melvin gained unauthorized access and transmitted "code or commands" without authorization into DPA's web site computer files, at SAC ¶¶ 41-44, and 46.

      f)     **<u>DPA Adequately Pleaded, Or Will, Any Additional Necessary Elements.</u>**

Melvin also argues that DPA pleads no allegations supporting what "knowing"

"transmission" Melvin made, or how such transmission caused damage. (Brief, p. 18). DPA will, however, allege in the proposed SAC, and has moved for leave to amend, the additional specific fact that, "Melvin obtained the DPA administrative login and password knowing his purpose was to gain unauthorized access to the computer and files hosting DPA's web site in order to transmit codes or commands to it that would damage or impair the functioning of the DPA's web site and inflict loss on DPA" at SAC ¶ 38. The SAC will also allege that Melvin set up and exploited a "trial account" in Squarespace to accomplish his redirection of DPA's web site, which also severed software links causing several program functions to be disabled (even after the misdirection was ended) at SAC ¶¶ 39, 42-46. The facts of the consequential damage and loss are alleged with specificity in the SAC at ¶¶ 56, 57, 61-64, and 66.

Melvin also argues that there are no allegations about his "state of mind." (Brief, p. 19). Whether necessary to plead or not, this is not credible. The FAC specifically alleges Melvin acted with "intent" to make unauthorized access twice, ¶¶ 1, 40, 45. Further, the proposed SAC will add the allegations that prior to the hacking Melvin joined DPA, at SAC ¶ 31, that he the withdrew from DPA prior to the hacking, at SAC ¶ 34, that he then "became openly active in ALPA and took positions in ALPA …", at SAC ¶ 36, that "Sometime after Melvin withdrew from DPA but on, or prior to, November 8, 2013, Melvin surreptitiously and without authorization obtained the DPA administrative login and password to the Squarespace computer and files hosting DPA's web site", at SAC ¶ 37, and that "knowing his purpose was to gain unauthorized access to the computer and files hosting DPA's web site in order to transmit codes or commands to it that would damage or impair the functioning of the DPA's web site and inflict loss on DPA", at SAC ¶ 38. These allegations state more than plausible facts sufficient to support all three CFAA counts.

### g) The "Ongoing" Damage Allegation Is Plausible And Presents A Fact Issue For Trial.

Melvin last argues that the allegation of "ongoing" damage to its web site in ¶ 51 of the FAC is not cognizable under CFAA as an allegation of damage because "DPA alleges no ongoing impairment" (Brief, p. 19-20) therefore, says Melvin, it is but speculation.

In the first instance, this argument slays a straw man. The full allegation of ¶ 51 in the FAC (same as ¶ 70 in the SAC) is this:

> Despite plaintiff's efforts to mitigate damage to its web site and to restore control over it, defendant succeeded in inserting commands or code into accounts on computers relied upon by plaintiff that are necessary to the proper and safe function of DPA's web site. This constitutes an ongoing means to re-access and to potentially disable, disrupt, or interfere with the integrity of DPA's web site at any time.

This allegation states that DPA's web site was impaired *beyond November 8, 2013*. Both the FAC and the proposed SAC allege that the impairment was not confined to the misdirection on November 8, but included the severing of vital software links that made the web site useful and functioning, i.e. for raising funds, for playing audio-visual files, and or software updates. (FAC ¶ 34, 35; SAC ¶¶ 48, 49). Under CFAA "damage" is defined to mean "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Such impairment was alleged to have resulted starting on November 8, 2013 (within one year of the hacking) and ongoing for some time after.

Second, *how long* the damage to impairment was "ongoing" merely presents a triable issue of fact. Melvin's "vague specter of a potential future disruption" (Brief, p. 20) is no ghost – rather it's a red-herring.

### h) DPA's Pending Motion To For Leave To Amend The FAC Is Not Futile Nor Prejudicial.

DPA has set forth in detail why its pending motion to amend the FAC is not futile, not brought in bad faith, nor prejudicial to Melvin – in its separately filed brief in support of that motion. We will not burden the record beyond that but rather incorporate those reasons by reference and respectfully refer the Court to them.

### IV) CONCLUSION.

For all the reasons, herein, and in as incorporated by reference in DPA's motion to amend the First Amended Complaint, DPA respectfully asks that defendant Melvin's motion to dismiss be denied.

Dated: December 27, 2016  SEHAM, SEHAM, MELTZ & PETERSEN, LLP
White Plains, NY

By: */s/ Nick Granath*
Nicholas Granath, Esq. *pro hac vice*
ngranath@ssmplaw.com
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. (612) 341-9080
Fax (612) 341-9079

and

Lucas K. Middlebrook, Esq.
lmiddlebrook@ssmplaw.com
Lee Seham, Esq.
LSeham@ssmplaw.com
George Diamantopoulos, Esq.
GDiaman@ssmplaw.com
199 Main Street, Seventh Floor
White Plains, New York 10601
Tel: (914) 997-1346
Fax: (914) 997-7125

*Attorneys for Plaintiff, the Delta Pilots Association*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2016, I electronically filed the following documents and their attachments, if any:

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [corrected]

I further hereby certify that the above listed documents were filed with the Clerk of this Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Dana Lossia, Esq.
dlossia@levyratner.com
LEVY RATNER, P.C.
80 Eighth Avenue Floor 8
New York, New York 10011
Tel. 212 627-8100
Fax. 212 627-8122

*/s/ Nick Granath*
Nicholas Paul Granath, Esq.