UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DELTA PILOTS ASSOCIATION,

                                  Plaintiff,

              -against-                    Case No. 1:14-CV-00225-AKH

RUSSELL C. MELVIN,

                                Defendant.
------------------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION**
**TO AMEND THE FIRST AMENDED COMPLAINT**

                                              Levy Ratner, P.C.
                                              80 Eighth Avenue
                                              New York, NY 10011
                                              (212) 627-8100
                                              (212) 627-8182 (fax)

On the Brief:    Dana E. Lossia
                          Alek L. Felstiner

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

FACTS       .................................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I.  DPA IS NOT ENTITLED TO AN AMENDMENT AS A MATTER OF COURSE BECAUSE RULE 15(A)(1)(B) DOES NOT APPLY ......................................................... 4

    A.  DPA ALREADY AMENDED ITS COMPLAINT ................................................. 4

    B.  DPA WAIVED ITS RIGHT TO AMEND AS A MATTER OF COURSE BY FILING A MOTION TO AMEND WITH THE COURT ...................................... 5

II. DPA'S MOTION TO AMEND SHOULD BE DENIED AS FUTILE, PREJUDICIAL, AND IN BAD FAITH .................................................................................. 6

    A.  AMENDING THE COMPLAINT WOULD BE FUTILE BECAUSE THE PROPOSED AMENDMENT STILL FAILS TO STATE A CLAIM AND WOULD BE BARRED BY THE STATUTE OF LIMITATIONS ....................... 7

    B.  AMENDING THE COMPLAINT WOULD PREJUDICE MELVIN BECAUSE THE THREE-YEAR DELAY PREVENTS MELVIN FROM OBTAINING DOCUMENTS NECESSARY FOR HIS DEFENSE ........................................... 7

    C.  THE LACK OF ALLEGATIONS CONCERNING LOSS CONFIRMS DPA'S BAD FAITH ..................................................................................................... 10

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arnold v. KPMG LLP*,
   334 F. App'x 349 (2d Cir. 2009) .................................................................................................7

*Bleicher v. Chase Bank N.A.*,
   No. 12-13357, 2013 U.S. Dist. LEXIS 97394 (E.D. Mich. July 12, 2013) ...............................6

*Coventry First, LLC v. McCarty*,
   605 F.3d 865 (11th Cir. 2010) ...................................................................................................6

*Gaston v. Caugherty*,
   No. 14-1436, 2015 U.S. Dist. LEXIS 167033 (W.D. Pa. Dec. 14, 2015) .................................4

*Glazer v. Chase Home Fin. LLC*,
   704 F.3d 453 (6th Cir. 2013) .....................................................................................................6

*Guangyu Wang v. Univ. of Nev., Reno*,
   No. 03:12-CV-00498-LRH-VPC, 2012 U.S. Dist. LEXIS 164039 (D. Nev. Nov. 15,
   2012) .........................................................................................................................................6

*Gurary v. Winehouse*,
   235 F.3d 792 (2d Cir. 2000).......................................................................................................7

*Kuria v. Palisades Acquisition XVI, LLC*,
   752 F. Supp. 2d 1293 (N.D. Ga. 2010) .....................................................................................4

*Ramirez v. Cty. of San Bernardino*,
   806 F.3d 1002 (9th Cir. 2015) ...................................................................................................4

*Shariff v. Amanda Realty, Inc.*,
   No. 11-cv-2547 (SLT), 2013 U.S. Dist. LEXIS 143463 (E.D.N.Y. Apr. 4, 2013) ...................4

*Synthes USA Sales, Inc. v. Taylor*,
   No. 3:10-1102, 2012 U.S. Dist. LEXIS 36371 (M.D. Tenn. Mar. 19, 2012) ...........................4

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 15..........................................................................................................4, 5, 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DELTA PILOTS ASSOCIATION,

                                              Plaintiff,

            -against-                      Case No. 1:14-CV-00225-AKH

RUSSELL C. MELVIN,

                                              Defendant.
------------------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
TO AMEND THE FIRST AMENDED COMPLAINT**

**INTRODUCTION**

       The First Amended Complaint (FAC) filed by Plaintiff Delta Pilots Association (DPA) was essentially devoid of facts about the alleged "hack" that forms the basis of DPA's Computer Fraud and Abuse Act (CFAA) claim. Defendant Melvin described the various defects of the FAC in his Motion to Dismiss. (Docket # 67-68). DPA now seeks to cure those defects by amending the FAC.

       Amendment as of right is not available where the plaintiff has already amended once. In any case, DPA did not file its amendment as a matter of course, but rather sought the Court's leave to amend, thereby waiving its right to amend as a matter of course.

       Ordinarily courts will freely grant leave to amend where justice so requires. Here, such an amendment would be futile, prejudicial to Melvin, and inappropriate in light of DPA's bad faith. Moreover, DPA's proposed amendment still fails to state a claim under CFAA and is still barred by the statute of limitations, as already explained in detail in Melvin's Reply Brief in Support of the Motion to Dismiss. (Docket # 80). Although DPA has finally made some factual allegations

762-000-00001: 10754405_4.doc

1

about the hack in its proposed Second Amended Complaint (SAC), those allegations illustrate the ways in which DPA's story is fatally inconsistent and why an amendment at this late date would unduly prejudice Melvin.

The proposed SAC reveals that the case will turn on electronically stored information that was in the possession or control of DPA's domain host GoDaddy and the email service Ausi.com, neither of which entities was mentioned in prior versions of the complaint, and neither of which has been involved in this litigation to date. Three years have passed since the events at issue, and the information that would point to a "hacker" – if there was one – is very likely to be gone and irretrievable. Permitting amendment at this late stage would place Melvin in the position of having to defend against a stale claim without access to information that would exonerate him.

The proposed SAC also confirms that DPA is pursuing this lawsuit to gain ground against a rival union, not to remedy any injury to its website. Although DPA had previously promised to show a loss cognizable under CFAA, the proposed SAC contains no such allegation of loss. DPA's bad faith is now more evident than ever. Permitting another amendment in the face of DPA's continuing bad faith would not serve the interests of justice.

## FACTS

DPA filed this action on January 13, 2014, naming "John Doe" as the only defendant. (Docket #1). On January 29, 2014, the Court granted DPA's motion to "take immediate discovery upon third-parties in order to identify defendant John Doe." (Docket #5). DPA did so. By August 14, 2014, DPA had received Melvin's name from Intervenor Airline Pilots Association ("ALPA") and planned to amend the original complaint to name Melvin. *See* Docket #22, Tr. 10-12. The Court entered a protective order at ALPA's request and encouraged DPA to take

Melvin's deposition before amending the complaint. DPA did not do so and did not immediately move to amend. After another status conference on September 5, 2014, the Court gave DPA until September 30, 2014 to either amend the complaint or dismiss without prejudice. (Docket # 24). DPA chose to dismiss the case (Docket #25), but then proposed refiling against Melvin in another jurisdiction, in violation of the Court's protective order. The Court re-opened the case and enforced its protective order, instructing DPA that it would have to file a motion to amend in order to substitute Melvin for "John Doe." (Docket # 41). On January 29, 2015, DPA filed a sealed motion to amend the Complaint. (Docket #44). The Court granted the motion on October 20, 2016. (Docket #50).

DPA filed the FAC on October 26, 2016 and served Melvin on November 3, 2016. This was the first notice provided to Melvin of the litigation against him. DPA's counsel, Nicolas Granath, alleges that he sent a letter to Melvin on August 18, 2014. *See* Declaration of Nicolas Granath ("Granath Declaration"), Attachment 23 (Docket # 76). This letter was addressed to 7050 Corsica Drive, Germantown, Tennessee, which DPA admits is not Melvin's residence. *See* SAC ¶ 33. The certificate of mailing contains no addressee or address. Granath Decl., Attachment 23, p. 4. The letter refers to an "attached Complaint, in re *Delta Pilots Association v. John Does*, Case No. 1:114-cv-00225-AKH (United States District Court, Southern District of New York)," but no complaint is included with the letter that was attached to Granath's Declaration.

Following an order granting extension of time (Docket # 66), Melvin filed a Motion to Dismiss (Docket #67-68), which is now fully briefed and pending decision. Along with its Opposition to Melvin's Motion to Dismiss, DPA filed a Motion to Amend the FAC (Docket # 72, refiled as # 74).

## ARGUMENT

### I. DPA IS NOT ENTITLED TO AN AMENDMENT AS A MATTER OF COURSE BECAUSE RULE 15(A)(1)(B) DOES NOT APPLY

DPA claims that Rule 15(a)(1)(B) permits the proposed amendment "as a matter of course," without leave of the Court. *See* Fed. R. Civ. Proc. 15(a)(1). That rule does not apply to DPA's motion because DPA has already amended its Complaint. Also, by filing a motion for leave to amend, DPA waived its right to amend as a matter of course.

#### A. DPA ALREADY AMENDED ITS COMPLAINT

As a threshold matter, DPA has already amended its pleading, *see* Docket # 51, and has thus exhausted its right to amend "once as a matter of course." Courts have interpreted Rule 15(a)(1)(B) to mean that amendment "as a matter of course" is only available where the party has not already amended its claim. *See Synthes USA Sales, Inc. v. Taylor*, No. 3:10-1102, 2012 U.S. Dist. LEXIS 36371, at *3-4 (M.D. Tenn. Mar. 19, 2012) ("the right to amend once as of right applies only to initial, not amended pleadings"); *Gaston v. Caugherty*, No. 14-1436, 2015 U.S. Dist. LEXIS 167033, at *18-19 (W.D. Pa. Dec. 14, 2015) (rejecting plaintiff's argument that "her prior amendments were with leave and not as a matter of course, thus when Defendants filed motions to dismiss, Plaintiff was still entitled to amend once as a matter of course") (citing *Synthes*); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1297 (N.D. Ga. 2010) (treating plaintiff's second amendment under Rule 15(a)(1) "would require the Court to view the first amended complaint, instead of the original complaint, as the first pleading in this case"); *Shariff v. Amanda Realty, Inc.*, No. 11-cv-2547 (SLT), 2013 U.S. Dist. LEXIS 143463, at *9 (E.D.N.Y. Apr. 4, 2013) (rejecting amendment as of right where plaintiff had already amended once, outside the 21-day period); *but see Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002,

1008 (9th Cir. 2015) (amendment as of right still available after prior amendment(s) with court's leave).

The Second Circuit has not spoken on this issue. Notwithstanding the possibility that this Court might permit a second amendment as of right in another case, it would be inappropriate to allow DPA a Rule 15(a)(1)(B) amendment here. DPA's only possible argument to justify a Rule 15(a)(1)(B) amendment at this stage of the litigation would be that its prior amendment fell into the category of "other amendments" described in Rule 15(a)(2), leaving a 15(a)(1)(B) amendment still available. DPA's prior amendment was not the type of "other amendment" contemplated in Rule 15(a)(2), *i.e.*, an amendment "with the opposing party's written consent or the court's leave," to be "freely give[n]…when justice so requires." *See* Fed. R. Civ. Proc. 15(a)(2). The prior amendment substituted Melvin for "John Doe" after expedited discovery designed to enable the substitution. There was no defendant or intervenor to give consent, or to contest whether "justice so require[d]" the amendment under Rule 15(a)(2). In fact, the Court made clear that it would not be reviewing the sufficiency of the evidence supporting the substitution of Melvin for "John Doe." *See* Docket # 42, Tr. 6. The Court's approval was a *pro forma* approval of party substitution. As such, the amendment replacing the original Complaint with the FAC was effectively an amendment "as a matter of course," even though the timing of the expedited discovery prevented DPA from amending within Rule 15(a)(1)'s 21-day window. DPA is not now entitled to another amendment "as a matter of course."

### B. DPA WAIVED ITS RIGHT TO AMEND AS A MATTER OF COURSE BY FILING A MOTION TO AMEND WITH THE COURT

Amendments as a matter of course are filed directly, without leave of the court. Although DPA mentions the right to amend under Rule 15(a)(1)(B), it did not file its amendment directly. Instead it placed the issue before the Court, asking for relief. Where, as here, a party might have

filed an amendment as of right, but instead seeks the court's leave to amend, the request for leave waives the right to amend "as a matter of course." Once a party invites the court to review its proposed amendment, the court has discretion to grant or deny that amendment as set forth in Rule 15(a)(2). The court may deny the amendment if it would be futile or prejudicial.

For example, in *Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010), the plaintiff "never filed an amended complaint as a matter of course," but instead "chose to file a motion to amend." 605 F.3d at 869. The court concluded that "in doing so, it waived the right to amend as a matter of course and invited the District Court to review its proposed amendments." *Id.* at 870. *See also Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (holding that even if leave was not required, plaintiff waived his right to amend as a matter of course by seeking the district court's leave); *Guangyu Wang v. Univ. of Nev., Reno*, No. 03:12-CV-00498-LRH-VPC, 2012 U.S. Dist. LEXIS 164039, at *2 (D. Nev. Nov. 15, 2012) ("filing an unnecessary motion for leave to amend effects a waiver of the matter-of-course amendment right and confers discretion on the court to deny the motion") (citing *Coventry First*).

Should this Court find no waiver, it would still be proper to deny leave to amend because the proposed amendment does not cure the deficiencies of the FAC. *See Bleicher v. Chase Bank N.A.*, No. 12-13357, 2013 U.S. Dist. LEXIS 97394, at *3 n.1 (E.D. Mich. July 12, 2013) (finding waiver but observing that "even if…Plaintiff filed the amended complaint as a matter of course, the result in this case would be the same for, as discussed infra, the amendment does not cure the deficiencies set forth in the Defendants' motion to dismiss").

## II. DPA'S MOTION TO AMEND SHOULD BE DENIED AS FUTILE, PREJUDICIAL, AND IN BAD FAITH

Rule 15(a)(2) gives the court discretion to grant or deny leave to amend a pleading. "Although leave to amend should be liberally granted, it may properly be denied for undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Arnold v. KPMG LLP*, 334 F. App'x 349, 352 (2d Cir. 2009) (internal quotations omitted). A district court has "broad discretion" in weighing these issues. *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

### A. AMENDING THE COMPLAINT WOULD BE FUTILE BECAUSE THE PROPOSED AMENDMENT STILL FAILS TO STATE A CLAIM AND WOULD BE BARRED BY THE STATUTE OF LIMITATIONS

The futility of DPA's proposed amendment was set forth in detail in Defendant's Reply Brief in support of the Motion to Dismiss ("Reply Brief") (Docket # 80). In short, the proposed SAC still fails to state a claim because DPA has not alleged a cognizable loss under CFAA and because DPA has not pleaded sufficient facts to show a causal connection between Defendant's alleged conduct and the damage DPA alleges that it suffered. *See* Reply Br. at 8-18.

Even if the proposed SAC stated a claim under CFAA, amendment would still be futile because DPA's claim against Melvin is barred by the statute of limitations. DPA brought the claim almost three years after the alleged "hack," and DPA's arguments for tolling and relation back are unavailing. *See* Reply Br. at 1-5.

### B. AMENDING THE COMPLAINT WOULD PREJUDICE MELVIN BECAUSE THE THREE-YEAR DELAY PREVENTS MELVIN FROM OBTAINING DOCUMENTS NECESSARY FOR HIS DEFENSE

Allowing DPA to amend the FAC now would place Melvin in the impossible position of defending a stale claim with limited access to the documentary evidence necessary to exonerate him. The alleged "hack" occurred on November 8, 2013. DPA did not even move to amend the original Complaint to name Melvin until January 29, 2015 (Docket # 44), and the amendment itself was not filed until October 26, 2016. (Docket # 51). At no point prior to the November 3,

2016 service of the FAC on Melvin did DPA notify him that he had become a defendant in this action. DPA cannot even show that it notified Melvin of the original action against John Doe. The letter allegedly sent by DPA's counsel in August 2014 was not addressed to Melvin's actual residence, had no address on the certificate of mailing, contained no return receipt, and had no complaint attached. *See* Granath Decl., Attachment 23. Even after DPA served Melvin with the FAC in November 2016, the FAC itself lacked any detail as to what Melvin was alleged to have done, or how. Only now, with the proposed SAC, has DPA provided any allegations (albeit confusing and inconsistent ones) about what actually happened and Melvin's alleged role. The proposed SAC was submitted on December 27, 2016, more than three years after the alleged "hack."

It is too late for Melvin to defend this action effectively. The SAC describes, for the first time, what DPA claims happened: an unauthorized use of DPA credentials to redirect the DPA domain towards a false website. The additional allegations in the proposed SAC make clear that the case will turn upon electronically stored data – data that will show who registered the email addresses and accounts used to accomplish the alleged hack, as well the details of any instances of unauthorized access to DPA's administrative accounts. *See* SAC ¶¶ 40-44, 46. In addition to the parties themselves, the key players appear to be (1) DPA's website host, SquareSpace (SAC ¶¶ 24-25), (2) the email service Ausi.com, which DPA claims issued the email address used to impersonate Tim Caplinger (SAC ¶¶ 40, 43), and (3) DPA's domain host, GoDaddy (Granath Decl., Attachment 7 ("GoDaddy is hosting our domains")).

With respect to the retention of evidence by the parties themselves, the proposed SAC and the Granath Declaration reveal that DPA's own records, if retained, do not establish or imply a link between Melvin and the alleged hack. *See* Reply Br. at 15-18. There is no reason for the

Court to assume that DPA is sitting on any additional evidence. DPA already submitted what it has in order to justify amending its claims. Meanwhile, Melvin did not receive notice of the litigation until almost three years after the events at issue. To the extent that electronic records he could have obtained from the period might have assisted in his defense, he will encounter significant difficulty in retrieving those records from 2013, as discussed further below.

That leaves SquareSpace, Ausi.com, and GoDaddy. DPA has already taken discovery from SquareSpace, and yet it did not provide any SquareSpace records establishing a link between Melvin and the alleged "hack." DPA submitted some documents showing communications with SquareSpace's technical support personnel, but those communications reflect only the reporting of the problem, not the resolution (if any). *See* Granath Decl., Attachments 5-7. The lack of supporting documents from SquareSpace, after discovery, strongly suggests that either (a) SquareSpace has no records establishing a link between Melvin and the alleged hack, or (b) the SquareSpace records indicate another culprit or cause.

Ausi.com was the purveyor of the email address that DPA now alleges was used to impersonate DPA founder Tim Caplinger. SAC ¶¶ 40, 43. DPA's case, as alleged in the SAC at least, turns on the identity of the owner of that email address. But it has been three years, if not more, since the creation of that email address account. The evidence to verify or disprove DPA's allegation about the owner of that email account is likely gone. The parties would likely also encounter difficulty obtaining that information as the registrant associated with Ausi.com is a company located in Australia. *See* "Whois" record for Ausi.com, Attachment 1 to the Declaration of Dana E. Lossia dated January 23, 2017 ("Lossia Declaration").

Finally, the documents submitted with the Granath Declaration now identify GoDaddy, not SquareSpace, as the entity through which DPA registered and managed its domain names.

*See* Granath Decl., Attachment 7. As noted above, the hack alleged by DPA was accomplished through changes to DPA's domain settings, *i.e.*, changes that caused DPA's domains to point to the wrong website files. GoDaddy's records would indicate who, if anyone, changed the domain settings for DPA's website, when such changes occurred, when the settings were restored, etc. Although DPA knew that GoDaddy hosted its domains, DPA did not take third-party discovery from GoDaddy and did not submit any documents from (or related to) GoDaddy. It is also extremely unlikely that GoDaddy preserved any records from that time. It appears that DPA no longer uses GoDaddy exclusively as a domain host, and GoDaddy does not maintain such records after a domain is transferred. *See* Lossia Decl., Attachment 2 (WhoIs record for DPA website) and 3 (transcript of chat between Melvin and GoDaddy support).

Ordinarily the passing of three years from complaint to discovery might not automatically result in prejudice to a defendant. Here, though, Melvin received no notice of the litigation against him and no opportunity to take his own discovery, or take other action to preserve electronically stored evidence. Melvin did not even learn the nature of the alleged hack, or the evidence that might be necessary to exonerate him, until the filing of the proposed SAC in December 2016. DPA could have avoided this outcome by notifying Melvin of the litigation and the nature of the allegations. DPA had all the facts reflected in the SAC by January 2015 at the latest. *See* DPA's Sealed Motion (Docket # 44); Granath Decl. ¶ 5 (describing a year-long discovery process, beginning January 2014). Instead DPA waited until over three years had passed.

## C. THE LACK OF ALLEGATIONS CONCERNING LOSS CONFIRMS DPA'S BAD FAITH

The original Complaint, and the FAC, both alleged over $5,000 in losses, listing various types. *See* Complaint (Docket #1) ¶ 46; FAC ¶ 46 (alleging "costs in excess of five-thousand

762-000-00001: 10754405_4.doc

($5,000), incurred to assess and discover the extent that DPA's web site was rendered inoperable, and to determine the nature of the damage to its integrity, and to restore the integrity of its web site, to re-establish critical links to it, and to communicate for this purpose with DPA's hosting service"). In August 2014, this Court appropriately questioned whether an interruption of the type alleged by DPA would actually result in any significant recoverable loss. *See* Docket # 22, Tr. 9:22. DPA assured the Court that "[t]here will be some damages for not only the investigative aspect but the repair work that was done to get the website back up online," and affirmed that losses would be "a lot more" than the $2500 suggested by the Court. *Id.* at 9:24.

DPA did not elaborate on the claimed losses in the FAC, and now the proposed SAC reveals why: DPA did not expend any money in responding to the alleged hack, and has no cognizable losses under CFAA. *See* Reply Br. at 9-15. There never were any such losses.

DPA brought this suit, and now seeks leave to amend, with the sole purpose of combatting its rival union, ALPA, and discrediting one of ALPA's most vocal supporters. DPA has used the lawsuit to drum up donations. It has characterized the suit as a way to vindicate the organizational rights of its membership and as part of its struggle to unseat ALPA as the collective bargaining representative for Delta Airlines pilots. *See* Lossia Decl., Attachment 4 (excerpts of updates on the case from DPA's website). By DPA's own admission, the alleged hack lasted only about 21 hours. *Id.*, Attachment 5.[1]

DPA has no good-faith basis for this amendment. Permitting the amendment would allow DPA to continue pursuing its ulterior political motives at the expense of Melvin, this Court's

---

[1] The short duration of the interruption casts further doubt on DPA's ludicrous claim that it lost $11,000 in donations during the interruption. *See* SAC ¶ 66. CFAA does not apply to losses of this type, as addressed in Melvin's Reply Brief, at 13-15. This Court has also properly characterized those hypothetical lost donations as speculative. *See* Docket 22, Tr. 10:9.

time, and judicial economy.

## CONCLUSION

Because DPA cannot amend as a matter of course, and because the amendment is futile, unduly prejudicial, and made in bad faith, this Court should deny DPA's Motion to Amend.

Dated: January 23, 2017
      New York, New York

                                  LEVY RATNER, P.C.

                                  /s/
                                _____

By:    Dana E. Lossia
        Alek L. Felstiner
        Attorneys for Defendant
        80 Eighth Avenue
        New York, NY 10011
        (212) 627-8100
        (212) 627-8182 (fax)
        dlossia@levyratner.com
        afelstiner@levyratner.com