UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DELTA PILOTS ASSOCIATION,

                              Plaintiff,

        -against-                    Case No. 1:14-CV-00225-AKH

RUSSELL C. MELVIN,

                              Defendant.
--------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011-5126
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com

On the Brief:   Dana E. Lossia

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

**ARGUMENT** ........................................................................................................................2

**I.   DPA HAS FAILED TO SUPPLY EVIDENCE THAT RAISES A DISPUTE OF MATERIAL FACT TO OVERCOME SUMMARY JUDGMENT.** ................................2

**II.  DPA CANNOT MEET THE STATUTORY $5,000 LOSS THRESHOLD, AND SUMMARY JUDGMENT IS THEREFORE WARRANTED** ........................................2

    **A.   VOLUNTEER TIME IS NOT A LOSS UNDER CFAA.** ........................................2

    **B.   THERE IS NO EVIDENCE OF LOST DONATIONS.** ..........................................4

    **C.   DPA'S ATTORNEYS' FEES, LITIGATION COSTS, AND EXPERT COSTS ARE NOT CFAA LOSSES.** ................................................................................6

**III. DPA SHOULD PAY DEFENDANT'S ATTORNEYS' FEES and COSTS** .....................9

**CONCLUSION** ...................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby,*
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................................6

*BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.,*
   77 F.3d 603 (2d Cir. 1996) ......................................................................................................8

*D'Amico v. City of N.Y.,*
   132 F.3d 145 (2d Cir. 1998) ....................................................................................................5

*Fletcher v. Atex, Inc.,*
   68 F.3d 1451 (2d Cir. 1995) ....................................................................................................2

*Fujitsu Ltd. v. Fed. Express Corp.,*
   247 F.3d 423 (2d Cir. 2001) ....................................................................................................5

*Hicks v. Baines,*
   593 F.3d 159 (2d Cir. 2010) ....................................................................................................2

*In re DoubleClick Inc. Privacy Litigation,*
   154 F.Supp.2d 497 (S.D.N.Y. 2001) .......................................................................................6

*Int'l Chauffeured Serv., Inc. v. Fast Operating Corp.,*
   No. 11 Civ. 2662, 2012 WL 1279825 (S.D.N.Y. Apr. 16, 2012) ............................................9

*Kobrand Corp. v. Abadia Retuerta S.A.,*
   No. 12–CV–154, 2012 WL 5851139 (S.D.N.Y. Nov. 19, 2012) .............................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ...........................................................5

*Mattera v. JPMorgan Chase Corp.,*
   740 F.Supp.2d 561 (S.D.N.Y.2010) ........................................................................................5

*Millennium TGA, Inc. v. Leon*,
   No. 12-CV-01360 MKB, 2013 WL 5719079 (E.D.N.Y. Oct. 18, 2013) .................................6

*Mintel Int'l Grp., Ltd. v. Neergheen,*
   No. 08–CV–3939, 2010 WL 145786 (N.D.Ill. Jan. 12, 2010) .................................................7

*Nexans Wires S.A. v. Sark-USA, Inc.*,
   166 F. App'x 559 (2d Cir. 2006) ..............................................................................................9

*Nexans Wires, S.A. v. Sark-USA, Inc.*,
 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ................................................................................6

*Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*,
 No. 14 CV 6498-LTS-HBP, 2018 WL 2059653 (S.D.N.Y. May 1, 2018) ..............................6

*Reis, Inc. v. Lennar Corp.*,
 No. 15 CIV. 7905 (GBD), 2016 WL 3702736 (S.D.N.Y. July 5, 2016) ...................................9

*Reis, Inc. v. Spring11 LLC*,
 No. 15 CIV. 2836 (PGG), 2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) ..............................6

*SuccessFactors, Inc. v. Softscape, Inc.*,
 544 F. Supp. 2d 975 (N.D. Cal. 2008) ...................................................................................7

*Trans Sport, Inc. v. Starter Sportswear, Inc.*,
 964 F.2d 186 (2d Cir. 1992) ..................................................................................................5

*Turner W. Branch, P.A. v. Osborn*,
 No. CV 13-00110 MV/WPL, 2014 WL 12593991 (D.N.M. Mar. 26, 2014) ..........................6

*Tyco Int'l (US) Inc. v. John Does 1-3*,
 No. 01 CIV. 3856 RCCDF, 2003 WL 21638205 (S.D.N.Y. July 11, 2003) ............................6

*United States v. Middleton*,
 231 F.3d 1207 (9th Cir. 2000) ............................................................................................3, 9

**Statutes**

18 U.S.C. §1030(e)(11) ..............................................................................................................1, 2

28 U.S.C.A. § 1927 ........................................................................................................................9

**Rules**

Fed.R.Civ.P. 56(e) .........................................................................................................................6

## INTRODUCTION

Defendant submits this reply memorandum of law in further support of his motion for summary judgment based upon Plaintiff's failure to raise a genuine issue of material fact as to the essential element of "loss" under the Computer Fraud and Abuse Act ("CFAA"), which requires at least $5,000 in damages, as defined by 18 U.S.C. §1030(e)(11), as a result of the alleged violation in November 2013.

As demonstrated more fully below, Plaintiff's evidence does not support any colorable argument that the requisite losses exist.[1] Plaintiff raises essentially three contentions, none of which has merit:

1. That the time spent by DPA's officers constitutes a loss to the organization even though it is undisputed that DPA did not pay them for their time and thus incurred no expense;

2. That the disruption resulted in a loss of donations to DPA, even though it is undisputed that DPA received more money in November 2013 than in all but one other month in 2013 and more than it had in November 2012, and that the proportion of web-based donations was higher in November 2013 than usual; and

3. That its litigation expenses should be counted as losses even though they were not incurred to remedy the alleged harm but instead to pursue the alleged offender.

After all this time, the absence of cognizable losses, together with the flagrant use of this lawsuit to promote DPA's organizational goals and increase its fundraising, raises serious questions as to Plaintiff's motives in filling and pursuing this action and supports providing Defendant the opportunity for relief in addition to dismissal of the Second Amended Complaint.

---

[1] Even as to the alleged violation, after more than two years of third-party discovery (and apparently the assistance of a forensic expert), Plaintiff has failed to produce any direct evidence linking Defendant to *any* unauthorized access. Plaintiff has no records of any person logging into DPA's or Tim Caplinger's Squarespace or GoDaddy accounts without authorization or making any unauthorized changes. It is equally likely that Caplinger, or DPA's webmaster Rick Eagan, redirected the website themselves, either intentionally or inadvertently. In any event, according to DPA's own public announcement, whatever the cause of the problem, it was remedied in less than 24 hours. (SOF ¶ 39).

1

**ARGUMENT**

**I.   DPA HAS FAILED TO SUPPLY EVIDENCE THAT RAISES A DISPUTE OF MATERIAL FACT TO OVERCOME SUMMARY JUDGMENT.**

DPA's opposition to summary judgment rests almost entirely on self-serving, conclusory and inadmissible statements by its founder and interim president, Tim Caplinger. These statements are insufficient to overcome summary judgment. "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995)).

**II.   DPA CANNOT MEET THE STATUTORY $5,000 LOSS THRESHOLD, AND SUMMARY JUDGMENT IS THEREFORE WARRANTED.**

The CFAA's definition of "loss" is "any reasonable *cost* to any victim, including the *cost* of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, *cost incurred*, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. §1030(e)(11) (emphasis added).

None of the losses claimed by DPA qualify under the statute or controlling case law.

  **A.   Volunteer Time Is Not a Loss Under CFAA.**

Although DPA admits that it did not spend a single penny for Tim Caplinger's or Rick Eagan's time, it nonetheless contends that their volunteer hours represent a pecuniary loss to DPA. At the risk of stating the obvious, a "cost" simply does not include something that was given for free. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (COST *n.* 1. The amount paid or charged for something; price or expenditure.). Since DPA spent nothing for Caplinger and

2

Eagan's time, there is nothing for DPA to recoup.[2]

Not surprisingly, there is not a single case of which we are aware – and none is cited by DPA – in which the "value" of volunteer time is used to meet the CFAA loss threshold.[3] The only cases that concern man-hours under the CFAA have to do with paid employees or contractors. *See, e.g., United States v. Middleton*, 231 F.3d 1207 (9th Cir. 2000); *see also* Defendant's Moving Brief at 8 (listing cases).

Contrary to DPA's arguments, this does not "remove" any protections from not-for-profit entities. The declaration of American Airlines pilot Howard Hollander (Docket # 99) only emphasizes the point that when not-for-profits pay for their labor costs, as recognized unions do, the costs they incur could qualify as losses. DPA, on the other hand, cannot get the benefit of free labor and then act as if it incurred labor costs when it did not.

To permit the so-called "deflection" of "volunteer labor" (Opp. Br. 26) to qualify as a CFAA loss would be to re-write the statute in an unprecedented fashion.

---

[2] For purposes of this motion, Defendant does not dispute that Mr. Caplinger and Mr. Eagan devoted a total of 72 hours responding to what they believed was an attack on the DPA website. DPA concedes that it did not pay Caplinger or Eagan for their time and that all of their work for DPA is done on a volunteer basis. DPA does not allege that either Caplinger or Eagan would have been flying for Delta during the time they spent working on DPA's website issues. (Opp. Br. 25)("[O]f course Caplinger and Eagan do not cite or claim that they personally lost earnings paid by their employer, Delta[.]") Thus, while there is no dispute that Caplinger and Eagan are paid $150 and $203 per hour as Delta pilots, both sides agree that they did not lose any pay from Delta because of the alleged violation here.

[3] DPA cites at length to non-CFAA cases concerning organizational standing to show that not-for-profit organizations may have standing to sue when the entity's resources – including unpaid volunteer time – are deflected toward legal efforts, such as combating invidious racial discrimination. (Opp. Br. 26-27.) These cases are entirely inapposite. The dispute here is not about the general doctrine of organizational standing; it is about meeting the very specific statutory threshold of the Computer Fraud and Abuse Act, which was drafted by Congress to require actual losses of at least $5,000.

B.   **There Is No Evidence of Lost Donations.**

Although lost income resulting from the disruption of a website might constitute a loss, Plaintiff has failed to raise a colorable issue of fact that any such loss occurred as a result of the alleged disruption here. According to its own ledgers (Granath Ex. 30), DPA received the following donations in 2013:

| Month in 2013 | Donation Totals | Number of Donations | Donations Made by Cash or Check |
|---|---|---|---|
| January | $1,162.84 | 16 | 10 (63%) |
| February | $3,404.59 | 43 | 21 (49%) |
| March | $2,993.70 | 40 | 32 (80%) |
| April | $5,242.56 | 69 | 56 (81%) |
| May | $2,058.78 | 33 | 29 (88%) |
| June | $6,303.66 | 72 | 57 (79%) |
| July | $11,025.85 | 116 | 78 (67%) |
| August | $4,151.64 | 48 | 39 (81%) |
| September | $3,088.79 | 38 | 24 (63%) |
| October | $6,151.00 | 67 | 23 (34%) |
| November | $7,495.97 | 88 | 35 (40%) |
| December | $2,948.33 | 33 | 23 (70%) |

As this table shows, in November 2013 – when the alleged misdirection took place – DPA took in more donations than in any other month in 2013 except one, and more donations were made online in November 2013 than in all but one other month that year. A look back at 2012 also prevents any inference that donations were affected: November 2013 was a better month for DPA (with $7,495.97 in donations received) than November 2012 (only $1,694.90). *Compare* Granath Ex. 30 at DPA 526-529 *with* Granath Ex. 29 at DPA 504-505.

DPA has presented no evidence, nor even a theory, that would permit a jury to conclude that DPA's most successful month of fundraising (July 2013) would have repeated itself in November.

Nor do the facts support a claim of lost good will. Far from hurting DPA's cause, the allegation of a "hack," and this lawsuit, have been used as a tool to increase fundraising. DPA's

4

own e-newsletter reveals that in August 2014, DPA had its best single day of donations ever, taking in $6,000 in a day in what DPA characterized as "the outpouring of financial support we are receiving *related to the pursuit of those responsible for hacking the DPA website*." (SOF ¶ 80)(emphasis added).[4] Even drawing all inferences in favor of the Plaintiff, there is no evidence that DPA's donations were diminished, and there is some evidence that they were elevated, as a result of DPA's allegation that its website was "hacked."

Mr. Caplinger's self-serving statements about remarks by unnamed people (Caplinger Decl. ¶ 61) and online comments that were never produced in discovery (Caplinger Decl. ¶ 63) are neither admissible nor probative. *See Mattera v. JPMorgan Chase Corp.,* 740 F.Supp.2d 561, 570 (S.D.N.Y.2010) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."). Caplinger does not even assert, much less provide evidence, that these unnamed people chose not to donate to DPA. To defeat summary judgment, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted); *see also Trans Sport, Inc. v. Starter Sportswear, Inc.,* 964 F.2d 186, 188 (2d Cir. 1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise") (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.,* 132 F.3d

---

[4] DPA objects that Defendant failed to cite to admissible evidence to support the contention, but it did not contest the accuracy of the fact itself, as it did with other statements of fact contained in Defendant's Rule 56.1 statement. (PSOF ¶ 80).

145, 149 (2d Cir. 1998). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *See Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added).

There is no documentary evidence or statement from any affiant that anyone declined to donate, or donated less money, to DPA because of the alleged service interruption. DPA has failed to "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations" about donations that purportedly did not come in. Fed.R.Civ.P. 56(e).

    C.    **DPA's Attorneys' Fees, Litigation Costs, and Expert Costs Are Not CFAA Losses.**

According to the plain text of the statute, and the holdings of many courts in applying it, "[c]osts associated with locating and collecting information about the hacker are not recoverable under the CFAA." *Reis, Inc. v. Spring11 LLC*, No. 15 CIV. 2836 (PGG), 2016 WL 5390896, at *9 (S.D.N.Y. Sept. 26, 2016) (quoting *Millennium TGA, Inc. v. Leon*, No. 12-CV-01360 MKB, 2013 WL 5719079, at *18 (E.D.N.Y. Oct. 18, 2013)); *see also Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, No. 14 CV 6498-LTS-HBP, 2018 WL 2059653, at *30 (S.D.N.Y. May 1, 2018)("Any recoverable damages or loss under the CFAA must be directly caused by computer impairment or damage," and this does not include litigation costs); *Nexans Wires, S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd,* 166 Fed.Appx. 559 (2d Cir. 2006); *Tyco Int'l (US) Inc. v. John Does 1-3,* No. 01 CIV. 3856 RCCDF, 2003 WL 21638205, at *2 (S.D.N.Y. July 11, 2003) (declining to recognize, under CFAA, investigative costs related to the plaintiff's efforts "to track down the offending party"); *In re DoubleClick Inc. Privacy Litigation,* 154 F.Supp.2d 497, 524-25 (S.D.N.Y. 2001) (recognizing only costs in remedying damage as recoverable under CFAA); *Turner W. Branch, P.A. v. Osborn*, No. CV 13-

00110 MV/WPL, 2014 WL 12593991, at *17 (D.N.M. Mar. 26, 2014) ("Courts consistently have held that costs not related to computer impairment or computer damages are not compensable "loss" sufficient to satisfy the jurisdiction threshold contained in Section 1030(c)(4)(A)(i) of CFAA.") (collecting cases); *Mintel Int'l Grp., Ltd. v. Neergheen,* 08–CV–3939, 2010 WL 145786, at *9–10 (N.D.Ill. Jan. 12, 2010) (finding no CFAA-qualifying loss where the plaintiff's expert "was not assessing whether [defendant] had damaged [plaintiff's] computers or data ...; rather, the expert was hired for assistance in [this] lawsuit") (internal quotation marks omitted).

The keystone of cognizable losses is that the cost was incurred in remediation of the harm. Here, judicial involvement was not necessary to remedy the alleged intrusion – it was over within less than 24 hours, as DPA itself announced on November 10, 2013. (SOF ¶ 39). If any plaintiff could assert a subjective fear of future "attack" as a basis to initiate costly litigation and then claim those costs under the CFAA, the loss element of the statute would be nullified.

This is not a case where an "offender has actually accessed protected information, [such that] discovering who has that information and what information he or she has is essential to remedying the harm," as in *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008). As DPA itself stated on November 10, 2013,

> "The site is secure and functioning properly. Again, our site was not compromised internally. No data was lost or accessed. We do not store member data on the DPA website as a side note. The hijacking was simply a redirecting of our URL to a hostile site that asked the reader to support ALPA and may have contained other malicious content." (SOF ¶ 39).

Despite DPA's conclusory and self-serving statements about the specter of ongoing harm (Opp. Br. 10, 33-34), no evidence supports the assertion that the alleged violation was "ongoing." DPA ultimately acknowledges that Mr. Caplinger's belief in an "ongoing" threat was

based on his fear of a possible future attack and his suspicion about the "possibility" of "some sort of spyware or keylogger on the website or even on my own computer." (Opp. Br. 36). This is far from enough to create a triable issue of fact and defeat a motion for summary judgment. *See e.g., Kobrand Corp. v. Abadia Retuerta S.A.,* No. 12–CV–154, 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) (citing *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.,* 77 F.3d 603, 615 (2d Cir. 1996)). No court has determined who, if anyone, was responsible for the alleged violation, and yet more than four and a half years have passed since the website was allegedly redirected, without evidence of any further attack, or of any spyware, malware, or keylogger software.

It cannot be reasonably disputed that the costs DPA asserts were not related to remediation of the website but were rather costs of litigation. The attorneys' fees are for drafting the complaint, reviewing and managing documents, seeking third-party discovery, reviewing discovery responses, and engaging in motion practice. (Opp. Br. 37-41). The litigation costs – for things like copying, postage and FedEx costs; service fees; transcript fees; Mr. Granath's *pro hac vice* admission and Certificate of Good Standing; and Mr. Silverstone's travel and parking for a court appearance in Manhattan (Granath Ex. 33 at DPA 591-594) – and the expert witness costs were likewise not incurred responding to or assessing damage, or while restoring the computer to its prior state. Remarkably, the expert witness has not even supplied a declaration to explain what it did to earn $10,850 in this litigation, but DPA itself has admitted that the expert was engaged "to identify and pursue the offender(s)," not to assess damage or to restore data or systems, as would be cognizable under CFAA § 1030(e)(11). (Docket Entry # 85, SAC ¶ 67).

Caplinger's "fear of additional attacks" (Opp. Br. 36) also does not make expenditures to improve DPA's internet security cognizable, as CFAA does not recognize "costs that would

8

merely create an improved computer system unrelated to preventing further damage resulting from Defendant's conduct." *Middleton*, 231 F.3d at 1213. Instead, CFAA losses must "be directed in some way at the effects of the prior intrusion, not at those of some potential future offense." *Reis, Inc. v. Lennar Corp.*, No. 15 CIV. 7905 (GBD), 2016 WL 3702736, at *6 (S.D.N.Y. July 5, 2016)(citing *Int'l Chauffeured Serv., Inc. v. Fast Operating Corp.*, No. 11 Civ. 2662, 2012 WL 1279825, at *4 (S.D.N.Y. Apr. 16, 2012)).[5]

Thus, Plaintiff's attorneys' fees and costs are not cognizable losses under CFAA.

### III. DPA SHOULD PAY DEFENDANT'S ATTORNEYS' FEES AND COSTS.

Since before the filing of the initial Complaint in this matter in January 2014, DPA has been aware of the nature and extent of the alleged CFAA violation and has had in its possession all of the facts necessary for it to conclude, based on the statute and available case law, that it did not experience $5,000 in losses under CFAA. DPA nonetheless pursued this litigation – and incurred the attorneys' fees, expert witness fees and litigation costs about which it now complains – without any basis in the established law and without any reasonable argument for expanding existing precedent. We ask that the Court require DPA's counsel to satisfy the costs and fees incurred by Defendant as a result, pursuant to 28 U.S.C.A. § 1927.

---

[5] Plaintiff's citation to *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 563 (2d Cir. 2006) for the proposition that preventative security measures or inspections are cognizable is wholly misleading, as the court there specifically declined to reach that question.

## CONCLUSION

DPA's evidence does not support the allegation of $5,000 in cognizable losses under the CFAA. For this reason, and those set forth in Defendant's moving papers, Defendant submits that summary judgment is warranted and the Second Amended Complaint should be dismissed in its entirety, with prejudice, along with such other and further relief as the Court deems just and proper, including attorneys' fees and costs to Defendant.

Dated: June 22, 2018
      New York, New York

LEVY RATNER, P.C.

*Dana Lossia*

By:   Dana E. Lossia
Attorneys for Defendant
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com

TO:  All Counsel Via ECF.