```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DELTA PILOTS ASSOCIATION,                          DEFENDANT'S REPLY TO
                                                   PLAINTIFF'S ADDITIONAL
                           Plaintiff,              CONTENTIONS OF
                                                   MATERIAL FACT
        -against-
                                                   Case No. 1:14-CV-00225-AKH
RUSSELL C. MELVIN,

                           Defendant.
------------------------------------------------------------------X
```

**Plaintiff's Contention No. 91:** DPA is an association recognized by the IRS as a 501(c)(5) labor organization, which is incorporated in the State of Florida. (See, Caplinger Decl., ¶ 5).

**Reply to Plaintiff's Contention No. 91:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 92:** DPA seeks to organize and exclusively represent the craft and class of pilots at Delta Airlines, Inc. ("Delta"). (See, Caplinger Decl., ¶ 6).

**Reply to Plaintiff's Contention No. 92:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 93:** DPA maintains a home office in Tampa, Florida. (See, Caplinger Decl., ¶ 7).

**Reply to Plaintiff's Contention No. 93:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 94:** In May of 2010, the DPA was founded out of dissatisfaction with ALPA's representation of Delta pilots and with the specific goal of replacing ALPA as the union representing Delta pilots. (See, Caplinger Decl., ¶ 8).

**Reply to Plaintiff's Contention No. 94:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 95:** Tim Caplinger, who is a resident of Florida and a pilot employed by Delta, is the founder of DPA, a member of its Board of Directors, and its Interim President. (See, Caplinger Decl., ¶ 9).

**Reply to Plaintiff's Contention No. 95:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 96:** In 2010, the DPA began a campaign to collect authorization cards ("cards") signed by individual Delta pilots in order to demonstrate that a majority of them desire to be represented by DPA. (See, Caplinger Decl., ¶ 10).

**Reply to Plaintiff's Contention No. 96:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 97:** This campaign was for the purpose of securing and winning a representational election conducted by the National Mediation Board ("NMB"), pursuant to the RLA, and ultimately to have DPA certified by the NMB as the new and exclusive representative of Delta pilots. (See, Caplinger Decl., ¶ 11).

**Reply to Plaintiff's Contention No. 97:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 98:** By early November 2013, the DPA had collected cards from more than 50% of all Delta pilots but had not yet filed an application for a representational dispute with the NMB. (See, Caplinger Decl., ¶ 12).

**Reply to Plaintiff's Contention No. 98:** For purposes of this motion, Defendant objects to this statement only insofar as it omits the fact that several hundred of those cards were expired, according to Mr. Caplinger's declaration, ¶ 12.

**Plaintiff's Contention No. 99:** DPA's primary means of conducting its business, including communicating with Delta pilots, raising donations, and campaigning, is through its web site. (See, Caplinger Decl., ¶ 13).

**Reply to Plaintiff's Contention No. 99:** Defendant disputes this statement but does not believe it is a material fact for purposes of this motion.

**Plaintiff's Contention No. 100:** DPA's web site can be located, or "surfed" to on the Internet, or "web," at the uniform resource locator ("URL"), or web address of, http://delta-pilots.org. (See, Caplinger Decl., ¶ 14).

**Reply to Plaintiff's Contention No. 100:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 101:** DPA's web site contains publicly accessible web "pages" as well as private pages requiring a login and password. (See, Caplinger Decl., ¶ 15).

**Reply to Plaintiff's Contention No. 101:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 102:** On the public portion of its website, DPA displays a running count of the number of cards signed by Delta pilots in DPA's campaign to replace ALPA. (See, Caplinger Decl., ¶ 16).

**Reply to Plaintiff's Contention No. 102:** Undisputed for purposes of this motion, but Defendant lacks information upon which to admit or deny the accuracy of DPA's running count of card.

**Plaintiff's Contention No. 103:** SquareSpace, Inc. is a New York company that "hosts" DPA's web site. (See, Caplinger Decl., ¶ 17).

**Reply to Plaintiff's Contention No. 103:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 104:** Through SquareSpace DPA also links to various domain names or other URLs or web sites on other computers used in inter-state commerce, and maintains a web master account. (See, Caplinger Decl., ¶ 18).

**Reply to Plaintiff's Contention No. 104:** This statement is too vague and nonspecific to permit a response, but Defendant does not believe it is a material for purposes of this motion.

**Plaintiff's Contention No. 105:** Critical files, code, and programs that constitute DPA's web site are maintained on computers located in the state of New York. (See, Caplinger Decl., ¶ 19).

**Reply to Plaintiff's Contention No. 105:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 106:** Tim Caplinger was authorized to and had personal access to DPA's SquareSpace account on behalf of DPA at all relevant times. (See, Caplinger Decl., ¶ 20).

**Reply to Plaintiff's Contention No. 106:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 107:** Richard Eagan, also a pilot employed by Delta, was DPA's Web Master at all relevant times. Eagan was authorized by Caplinger to access DPA's SquareSpace account on behalf of DPA at all relevant times. (See, Caplinger Decl., ¶ 21).

**Reply to Plaintiff's Contention No. 107:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 108:** Melvin joined DPA on or about January 5, 2011, giving an address of 7050 Corsica Drive, Germantown, Tennessee, 38138. (See, Caplinger Decl., ¶ 22).

**Reply to Plaintiff's Contention No. 108:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 109:** At no time was Melvin ever authorized for administrative access to DPA's web site, computer files, or computers used by DPA for its web site. (See, Caplinger Decl., ¶ 23).

**Reply to Plaintiff's Contention No. 109:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 110:** Sometime after, Melvin withdrew from DPA in 2012. (See, Caplinger Decl., ¶ 24).

**Reply to Plaintiff's Contention No. 110:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 111:** Starting on or about November 8, 2013, and continuing thereafter, the integrity of DPA's web site was dramatically and visibly disrupted when Melvin "hacked" into it by unauthorized use of the DPA administrative login and password and thereafter causing damage and loss by the transmission of code or commands to cause the web site to cease functioning and to instead serve Melvin's unauthorized use. (See, Caplinger Decl., ¶ 25); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32, 37-38; Ex. 2 at DPA 901-108, 134-168); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 111:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 112:** On November 8, 2013, at approximately 7:18 p.m. EST, Melvin transmitted commands or code to the "master files" of Squarespace computer and files hosting DPA's web site and opened a trial account called "tim-caplinger.squarespace.com" for the purpose of creating a hoax or fake website on that trial account in order to redirect the DPA website to the trial account website using DPA domain administrative credentials. (See, Caplinger Decl., ¶ 26); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32, 37-38; Ex. 2 at DPA 901-108, 134-168); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 112:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 113:** To accomplish this unauthorized act Melvin impersonated "Tim-Caplinger" and used an email address of amp.chumbawamba@ausi.com as Squarespace computer records show. (See, Caplinger Decl., ¶ 27); (See also, Granath Decl., Exhibit 1 at DPA 47-51; Exhibit 15 at DPA 243-244 and 248-252; and Exhibit 36 at p. 7-8).

**Reply to Plaintiff's Contention No. 113:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 114:** At approximately 7:18 p.m. EST using the DPA domain administrative credentials, Melvin transmitted commands or code to cause the domain name of "Tim-Caplinger.squarespace.com" to display on domain – "deltapilot.org" which delta-pilots.org and other associated DPA domains were redirected to without DPA authorization. (See, Caplinger Decl., ¶ 28); (See also, Granath Decl., Exhibit 1 at DPA 47-51; Exhibit 15 at DPA 243-244 and 248-252; and Exhibit 36 at p. 7-8).

**Reply to Plaintiff's Contention No. 114:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 115:** The site "deltapilot.org." was then owned by DPA but not being used by it. (See, Caplinger Decl., ¶ 29). In addition, the "deltapilot.org" domain was initiated in 2012 by an unauthorized user "hobbsmsb@aol.com" within the DPA Administrative account and unauthorized password access to "deltapilot.org" within the DPA Administrative account was provided to "mark_mcclain@cox.net" and "daharte@bellsouth.net".

**Reply to Plaintiff's Contention No. 115:** Undisputed for the purposes of this motion, although Defendant lacks information as to whether the conduct described was "unauthorized."

**Plaintiff's Contention No. 116:** Melvin transmitted commands or code to the Squarespace computer and other domain files hosting DPA's web site that caused the "deltapilot.org" site to 'point to' files existing in the tim-caplinger.squarespace.com trial account. The "deltapilot.org" site owner was concealed by "ContactPrivacy.com" – a domain privacy service which was located in Canada and which had been previously established by unknown parties who, on information and belief, conspired with Melvin. (See, Caplinger Decl., ¶ 30); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32, 37-38; Ex. 2 at DPA 901-108, 134-168); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 116:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 117:** As a direct and immediate consequence of this attack, DPA's web site ceased to function as intended and web pages containing data and information in the public portion of the web site were made inaccessible. (See, Caplinger Decl., ¶ 31); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32, 37-38; Ex. 2 at DPA 901-108, 134-168); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 117:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 118:** Further, the ability of DPA's web site to accept monetary donations from member and/or supporters ceased to function properly when software links to a secure third-party credit card web site were severed. (See, Caplinger Decl., ¶ 32).

**Reply to Plaintiff's Contention No. 118:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 119:** Further, the ability of the web site to display video messages and important updates was severely disrupted. (See, Caplinger Decl., ¶ 33).

**Reply to Plaintiff's Contention No. 119:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 120:** Further, the private portion of the web site became inaccessible. (See, Caplinger Decl., ¶ 34).

**Reply to Plaintiff's Contention No. 120:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 121:** Further, visitors to DPA's web site were involuntarily redirected away from it to sites not of DPA's making, nor owned, nor controlled by DPA. (See, Caplinger Decl., ¶ 35); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32, 37-38; Ex. 2 at DPA 901-108, 134-168); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 121:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 122:** In the early stages of the attack, viewers attempting to access DPA's web site were involuntarily redirected to a web page that falsely claimed DPA had abandoned its card collection campaign and now urged support for ALPA ("Work Together"). This false page also contained a link to an ALPA web site. (See, Caplinger Decl., ¶ 36); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32, 37-38; Ex. 2 at DPA 901-108, 134-168); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 122:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 123:** In the later stages of the attack, viewers were redirected back to "deltapilot.org," which was apparently configured to mimic DPA's web site, potentially a malicious "clone" of it. (See, Caplinger Decl., ¶ 37); (See Granath Decl., Ex. 1 at DPA 22, 24, 26, 28, 30, 32; Ex. 2 at DPA 901-108, 134-168; Ex. 15 at DPA 245); (See, Eagan Decl., ¶¶ 5, 8).

**Reply to Plaintiff's Contention No. 123:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 124:** The false web page and the clone site were calculated or intended to dissuade any further Delta pilots from signing cards in DPA's campaign or to otherwise abandon DPA, or its campaign, by knowingly and intentionally making false statements of material fact about DPA and its campaign. (See, Caplinger Decl., ¶ 38); (See Granath Decl. Ex. 15, at DPA 245).

**Reply to Plaintiff's Contention No. 124:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 125:** This attack thereby disrupted DPA's web site and effectively "hijacked" it to another site, one intended to appear as part of DPA's web site in order to deceive viewers of it and to inhibit or cut-off donations to DPA. (See, Caplinger Decl., ¶ 39).

**Reply to Plaintiff's Contention No. 125:** Defendant disputes these statements and objects to them as conclusory and not based upon admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 126:** This attack further severed software links to other computers used in interstate commerce relied upon by DPA's web site both for receiving monetary donations and for displaying videos. (See, Caplinger Decl., ¶ 40).

**Reply to Plaintiff's Contention No. 126:** Defendant disputes this statement, as there is no admissible evidence that any "severed links" were caused by an "attack."

**Plaintiff's Contention No. 127:** Some severed links were not discovered or repaired until January 2014. (See, Caplinger Decl., ¶ 41).

**Reply to Plaintiff's Contention No. 127:** Defendant disputes this statement insofar as it implies that any "severed links" were caused by Defendant, of which there is no admissible evidence.

**Plaintiff's Contention No. 128:** In attempting to assess damage and to restore the integrity of DPA's web site and restore availability of data and severed linked programs, Caplinger initially expended approximately 40 man-hours and Eagan 32 hours between discovering the damage and about December 3, 2013. (See, Caplinger Decl., ¶ 42); (see Eagan Decl., ¶ 7)

**Reply to Plaintiff's Contention No. 128:** For purposes of this motion, Defendant does not dispute that such time was expended.

**Plaintiff's Contention No. 129:** At the time, as pilots, Caplinger earned about $150 an hour and Eagan $203. (See, Caplinger Decl., ¶ 43); (see Eagan Decl., ¶ 5).

**Reply to Plaintiff's Contention No. 129:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 130:** DPA sustained loss through donations not received during that portion of time the DPA web site's contribution page and other links to that page were rendered inoperable. (See, Caplinger Decl., ¶ 44).

**Reply to Plaintiff's Contention No. 130:** Defendant disputes these statements and objects to them as conclusory, self-serving, and not borne out by admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 131:** As a direct consequence of the severed links to the donation pages, approximately $11,000 donations to DPA were lost during November and December 2013, when the site was being repaired. (See, Caplinger Decl., ¶ 45).

**Reply to Plaintiff's Contention No. 131:** Defendant disputes these statements and objects to them as conclusory, self-serving, and not borne out by admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 132:** DPA further suffered loss by incurring costs and expenditures to identify and pursue the offender(s) in order to ensure the future security and integrity of the DPA web site. (See, Caplinger Decl., ¶ 46).

**Reply to Plaintiff's Contention No. 132:** Defendant does not dispute that DPA spent money in connection with this litigation but disputes that those expenditures are cognizable as losses under CFAA.

**Plaintiff's Contention No. 133:** DPA also suffered the consequence of lost good will when the hacking and redirection to web sites falsely claiming plaintiff had ceased its organizing campaign interfered with, or frustrated, DPA members and supporting pilots' lawful exercise of rights under the RLA to choose their own representative, which DPA sought and seeks to facilitate. (See, Caplinger Decl., ¶ 47).

**Reply to Plaintiff's Contention No. 133:** Defendant disputes these statements and objects to them as conclusory, self-serving, and not borne out by admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 134:** Despite plaintiff's efforts to mitigate damage to its web site and to restore control over it, defendant succeeded in inserting commands or code into accounts on computers relied upon by plaintiff that are necessary to the proper and safe function of DPA's web site. (See, Caplinger Decl., ¶ 48).

**Reply to Plaintiff's Contention No. 134:** Defendant disputes these statements and objects to them as conclusory, self-serving, and not borne out by admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 135:** To date, DPA may not have been successful in removing all of the malicious commands or code and consequently DPA's web site remains potentially vulnerable to renewed "backdoor" attacks by defendant presently and in the future. (See, Caplinger Decl., ¶ 49).

**Reply to Plaintiff's Contention No. 135:** Defendant disputes these statements and objects to them as conclusory, self-serving, and not borne out by admissible evidence, such that they cannot be used to oppose summary judgment.

**Plaintiff's Contention No. 136:** On November 9, 2013, DPA published in its publicly accessible Facebook and Twitter accounts a message stating, "ALPA has hijacked and cloned the DPA website! DO NOT go to our site until further notice …" (See, Caplinger Decl., ¶ 50).

**Reply to Plaintiff's Contention No. 136:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 137:** On or about November 13, 2013, Melvin sent an email to ALPA using the email address of "rcmelvin@mac.com" that attached a digital, unsigned letter. (See, Granath Decl., Exhibit 1 at DPA 47-51; Exhibit 15 at DPA 243-244 and 248-252; and Exhibit 36 at p. 7-8); (See also, Doc. 15-3 at ¶¶ 3, 4, 5; Doc. 13-4).

**Reply to Plaintiff's Contention No. 137:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 138:** Melvin's letter to ALPA disclosed that in the time frame of the hacking he owned a trial account at Squarespace and had shut it down. (See, Granath Decl., Exhibit 1 at DPA 47-51; Exhibit 15 at DPA 243-244 and 248-252; and Exhibit 36 at p. 7-8); (See also, Doc. 15-3 at ¶¶ 3, 4, 5; Doc. 13-4).

**Reply to Plaintiff's Contention No. 138:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 139:** Melvin's letter to ALPA also contained details about the disruption to DPA's web site that were not then publicly known. (See, Granath Decl., Exhibit 1 at DPA 47-51; Exhibit 15 at DPA 243-244 and 248-252; and Exhibit 36 at p. 7-8); (See also, Doc. 15-3 at ¶¶ 3, 4, 5; Doc. 13-4).

**Reply to Plaintiff's Contention No. 139:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 140:** On November 14, 2013, DPA published in its email newsletter entitled "DPA Status Report" an article that stated in part, "Hacking Update … our investigation has led us to a point we did not want to arrive at, filing a lawsuit …" (See, Caplinger Decl., ¶ 51).

**Reply to Plaintiff's Contention No. 140:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 141:** The very next day, November 15, 2013, Tim Caplinger received three phone calls at his residence from a male person who refused to identify himself but who claimed he was responsible for interfering with DPA's web site. (See, Caplinger Decl., ¶ 52).

762-000-00001: 10937735.doc

**Reply to Plaintiff's Contention No. 141:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 142:** The caller was Melvin, as was later determined on August 14, 2014, after the Court granted DPA's then motion to compel compliance with a subpoena duces tecum served on ALPA (consequently disclosing Melvin as the author of the letter sent to ALPA by email on November 13, 2013). (See, Granath Decl., Exhibit 36 at p. 7-8).

**Reply to Plaintiff's Contention No. 142:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 143:** The originating phone number used to call Caplinger on November 15 was 901 871-7877. (See, Granath Decl., Exhibit 1 at DPA 53).

**Reply to Plaintiff's Contention No. 143:** Defendant does not dispute, for purposes of this motion, that that phone number was used to called Caplinger on that date.

**Plaintiff's Contention No. 144:** The 901 871-7877 phone number was then billed by AT&T to an account at Melvin's property of 7050 Corsica Drive, Germantown, Tennessee, 38138. (See, Granath Decl., Exhibit 1 at DPA 55).

**Reply to Plaintiff's Contention No. 144:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 145:** In addition, Melvin's correspondence to ALPA admitted he called Caplinger. (See, Granath Decl., Exhibit 15, DPA 250 – "I contacted Tim Caplinger and discussed the matter …").

**Reply to Plaintiff's Contention No. 145:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 146:** In this call to Caplinger, Melvin attempted unsuccessfully to negotiate with Caplinger to avoid being "pursued." (See, Caplinger Decl., ¶ 53).

**Reply to Plaintiff's Contention No. 146:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 147:** After the call on November 15, 2013, Caplinger knew that there was a hacker, that he refused to identify himself, that the website was still dysfunctional but for reasons not then known, and he concluded that the website either remained under ongoing attack or was vulnerable to a new attack until the identity of the hacker/caller could be learned (See, Caplinger Decl., ¶ 73).

**Reply to Plaintiff's Contention No. 147:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 148:** Later that same day Caplinger made a criminal complaint based on the hacking of DPA's web site. (See, Caplinger Decl., ¶ 54).

**Reply to Plaintiff's Contention No. 148:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 149:** Caplinger also determined that the caller either continued to attack DPA's website or would in the future until their identity was exposed and for these reasons, in part, made a criminal complaint and then engaged the law firm of Seham, Seham, Meltz & Petersen LLP to resort to the courts to find and enjoin the hacker/caller(s) to end the ongoing threat to DPA. (See, Caplinger Decl., ¶ 64).

**Reply to Plaintiff's Contention No. 149:** Defendant disputes this contention and objects that it is not based on admissible evidence.

**Plaintiff's Contention No. 150:** At no time did Matthew Hobbs have authorized access to the DPA administrative account. (See, Caplinger Decl., ¶ 65).

**Reply to Plaintiff's Contention No. 150:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 151:** At no time did Mark McClain have authorized access to the DPA administrative account. (See, Caplinger Decl., ¶ 65).

**Reply to Plaintiff's Contention No. 151:** Undisputed for purposes of this motion.

**Plaintiff's Contention No. 152:** At no time did Don Harte have authorized access to the DPA administrative account. (See, Caplinger Decl., ¶ 65).

**Reply to Plaintiff's Contention No. 152:** Undisputed for purposes of this motion.

Dated: June 22, 2018
New York, New York

LEVY RATNER, P.C.

By:  *Dana Lossia*
Dana E. Lossia
Attorneys for Defendant
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
dlossia@levyratner.com