USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/10/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

DELTA PILOTS ASSOCIATION,

                           Plaintiff,

    -against-

RUSSELL C. MELVIN,

                           Defendant.

------------------------------------------------------------- X

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

14 Civ. 225 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiff Delta Pilots Association ("DPA" or "Plaintiff"), a 501(c)(5) labor organization, filed this case on January 13, 2014, under the Computer Fraud and Abuse Act ("CFAA"), *see* 18 U.S.C. § 1030 *et seq.*[1] Broadly stated, the complaint alleges that Russell C. Melvin ("Defendant") maliciously infiltrated DPA's website in an effort to undermine its campaign to unseat the Air Line Pilots Association ("ALPA") as the sole union representing Delta Airlines pilots. Although discovery in the case is ongoing, defendant now moves for summary judgment, arguing that plaintiff cannot demonstrate damages exceeding $5,000—the jurisdictional minimum under the CFAA. For the reasons stated herein, the motion is denied as premature.

## Background

      DPA, a registered 501(c)(5) labor organization, claims that defendant maliciously infiltrated its website in an attempt to thwart DPA's campaign to become the sole representative for Delta Airlines pilots in collective bargaining. At the time of the alleged assault, DPA was

---

[1] DPA has filed two amended complaints in this case, the first of which was filed on October 26, 2016, to add Russell Melvin to the caption. *See* First Amended Complaint, ECF 51. In response to defendant's motion to dismiss, the Court granted DPA leave to file a second amended complaint on April 5, 2017. *See* Second Amended Complaint, ECF 85.

working to unseat ALPA, the existing pilots' union. As part of its campaign, DPA operated a website to, among other things, communicate with Delta pilots, solicit donations, and disseminate information. As the campaign was allegedly gaining steam in late 2013, DPA's website began to malfunction. Specifically, DPA claims that on November 8, 2013, the website began redirecting users and potential donors to a hoax website that falsely claimed that DPA had abandoned its campaign and would instead support ALPA. DPA claims that just as this issue was resolved, the website began redirecting users to a webpage that disseminated false information about DPA and attempted to dissuade potential supporters from joining the campaign. In sum, DPA claims that it faced an ongoing attack on its computer systems orchestrated by the defendant.

DPA originally filed this case on January 13, 2014, against John Doe, a purported member of the ALPA. DPA immediately filed a motion for leave to take immediate discovery to identify the actual perpetrator behind the attack. The Court granted DPA's request on January 29, 2014, *see* Order, ECF 5, and third-party discovery commenced. Having unmasked the alleged culprit, DPA then moved to amend the complaint to add the defendant to the caption. The Court granted DPA's motion on October 20, 2016, and plaintiff amended on October 26, 2016. *See* First Amended Complaint, ECF 51. The Court thereafter granted plaintiff's request to file a second amended complaint on April 5, 2017. *See* Order, ECF 84. Since then, the parties have made initial disclosures under Rule 26(a)(1). No further discovery has been taken. Strictly on the basis of these initial disclosures, defendant now moves for summary judgment, arguing that plaintiff cannot demonstrate damages exceeding the jurisdictional minimum of $5,000 under the CFAA.

2

## Discussion

### A. Legal Framework

Under the well-established summary judgment standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a Court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

The parties appear to agree that the conduct alleged—a sophisticated hack of DPA's website—is actionable under the CFAA. As relevant here, Section 1030(a)(5) of the CFAA creates a private federal cause of action against any person who: (1) "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer," § 1030(a)(5)(A); (2) "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage," § 1030(a)(5)(B); or (3) "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss," § 1030(a)(5)(C).[2] Section 1030(g) of the CFAA provides: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in

---

[2] The CFAA also prohibits a broad range of conduct not relevant to this case. *See generally* 18 U.S.C. § 1030(a).

3

subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g); *see also Ramirez v. SupportBuddy Inc.*, No. 17 CV 5781 (VB), 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018).

The sole issue raised by defendant's motion is whether plaintiff can demonstrate damages sufficient to trigger the statutory minimum under the CFAA. To maintain a cause of action under Section 1030(c)(4)(A)(i)(I), a plaintiff must show "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Section 1030(g)(11) defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

### B. Application

On the incomplete record currently before me, summary judgment is inappropriate. DPA claims that it meets the jurisdictional threshold based on three categories of damages: (1) the 72 hours of labor necessary to repair DPA's computer system following the attack, which DPA values at $12,496, (2) attorneys' fees it claims were necessary to respond to the ongoing threat to its website, and (3) other consequential damages resulting from lost donations and the loss of good will among potential donors and supporters. Without the benefit of full discovery, none of these categories of damages can be assessed and resolved at this stage.

First, there is no dispute that labor performed to repair a website can qualify as a "cost of responding to an offense." *See* 18 U.S.C. § 1030(g)(11). The only dispute is the value of DPA's labor. Of the 72 hours of labor that DPA claims were necessary to respond to the attack, 40 were performed by Tim Caplinger, a Delta pilot and then-president of DPA, and 32 were performed by Rich Eagan, also a Delta pilot and then-webmaster of DPA. Defendant claims that, because Caplinger and Eagan were working as volunteers for the union, the 72 man-

4

hours spent repairing the computer system are valueless. In contrast, DPA claims that their time should be valued at $150 per hour and $203 per hour, respectively, or the hourly wages that Caplinger and Eagan received as pilots for Delta.[3] Alternatively, the value of the labor could be set at the amount plaintiff "would have had to pay . . . had it hired an outside contractor to repair the damage," or some other number entirely. *United States v. Middleton*, 231 F.3d 1207, 1214 (9th Cir. 2000). Indeed, as the Ninth Circuit has explained:

> There is no basis to believe that Congress intended the element of "damage" to depend on a victim's choice whether to use hourly employees, outside contractors, or salaried employees to repair the same level of harm to a protected computer. Rather, whether the amount of time spent by the employees and their imputed hourly rates were reasonable for the repair tasks that they performed are questions to be answered by the trier of fact.

*Id.* In any event, the value of DPA's time cannot, as defendant suggests, be zero. Were defendant correct, the CFAA would have no application to volunteer organizations or any number of nonprofit entities. Defendant has identified no reason to believe that Congress intended such a result, nor is there any support in the statute's text to support it. I decline to adopt such an interpretation.

Defendant's various challenges to the other categories of damages identified by DPA fare no better. As to the value of the attorneys' fees spent responding to the alleged attack, it is well settled that although "[l]itigation costs" associated with prosecuting a CFAA violation "are not recoverable, . . . legal expenses associated with remediating any damage, including any necessary preceding investigation, are recoverable." *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, No. 14 CV 6498-LTS-HBP, 2018 WL 2059653, at *30 (S.D.N.Y.

---

[3] To support this approach, DPA has submitted a declaration from an industry participant claiming that, in his experience, "pilots who provided services to the union during their free time, such as vacation time, would be permitted to identify a trip in their future schedule from which they would be removed and yet receive full pay for the trip from the union." Decl. of Howard Hollander, ECF 99, at ¶ 4.

May 1, 2018). Here, DPA claims that some of these hours were crucial to responding to an ongoing attack on its computer system. In effect, DPA argues that identifying the wrongdoer was not a typical litigation expense, but was the only way to eliminate an ongoing threat. This calls for a nuanced review of the ongoing nature of the website's malfunction that should be explored in discovery. As to the damages for loss of donations and good will among potential donors and supporters, the parties have marshalled nothing more than DPA's donation history from the months preceding and following the website malfunction. Without the benefit of a more complete record, I cannot say that plaintiff's damages necessarily could not have reached $5,000.

## Conclusion

For the reasons stated herein, the motion for summary judgment is denied with leave to renew at the close of discovery. The Clerk shall terminate the motion (ECF 89). The parties shall appear for a status conference on August 3, 2018, at 10:00 a.m. to chart further progress in the case.

SO ORDERED.

Dated: July 10, 2018
New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge