UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DELTA PILOTS ASSOCIATION,

                                                   Plaintiff,

           -against-                                    Case No. 1:14-CV-00225-AKH

RUSSELL C. MELVIN,

                                                   Defendant.
-------------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW OPPOSING DPA'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Defendant, Russell C. Melvin, by and through his attorneys, LEVY RATNER, P.C., respectfully submits this memorandum of law in opposition to plaintiff's motion for leave to amend the Second Amended Complaint to add allegations concerning eleven additional websites, after the close of discovery. (Dkts. 109, 109-2).

### BACKGROUND

Delta Pilots Association ("DPA"), the plaintiff, is a labor organization that has never been certified to represent Delta Air Lines pilots, but is a would-be rival to the certified collective bargaining agent, the Air Line Pilots Association ("ALPA"). This lawsuit accuses the defendant, Russell Melvin, who was a member of several ALPA committees, of disrupting DPA's website for less than a single day in November 2013, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq.* (Dkt. 1).  DPA's original Complaint stated, in part, that "DPA's web site can be located, or "surfed" to on the Internet, or "web," at the uniform resource locator ("URL"), or web address of, http://delta-pilots.org." (Dkt. 1 at ¶ 23). DPA did not allege

- 1 -

then – and never has alleged, until now – that any website other than http://delta-pilots.org was affected. (Dkt. 1).

DPA was granted permission to conduct third party discovery (Dkt. 5) and served at least three subpoenas upon its website hosting service, Squarespace.  DPA obtained the information it was seeking from Squarespace by mid-2015. (Dkt. 47).  With the benefit of this highly-technical, and voluminous, information, DPA filed a Second Amended Complaint on April 10, 2017. (Dkt. 85).  The Second Amended Complaint repeats, verbatim, the allegation that "DPA's web site can be located, or "surfed" to on the Internet, or "web," at the uniform resource locator ("URL"), or web address of, http://delta-pilots.org." (Dkt. 85, ¶ 21).

Moreover, when asked under oath whether DPA's "website can be located at http://delta-pilots.org," DPA's president and founder Timothy Caplinger confirmed it. *See* Declaration of Dana E. Lossia, dated February 19, 2019, Exhibit A at Tr. 14:16-19. Richard Eagan, DPA's former webmaster, confirmed it as well.  *See* Lossia Decl., Exhibit B at Tr. 12:15-25.

Now, more than five years after the alleged disruption of its website in 2013, DPA has asked this Court for permission to modify what is perhaps the core allegation of its complaint: the website that was allegedly disrupted. While http://delta-pilots.org was "DPA's web site" in all of its prior pleadings, DPA now wishes to assert that "DPA's web site can be located, or "surfed" to on the Internet, or "web," at the uniform resource locator ("URL"), or web address of, http://delta-pilots.org, which is its primary domain, **as well as several other domains that point to or link to DPA's primary domain including (with or without a prefix of "https://" or "www"): deltapilotsassociation.org; deltapilotsassociation.net; deltapilots.net; delta-pilot.net;   delta-pilot.org;   delta-pilot.com;   deltapilot.info;   deltapilotsunion.org; deltapilotsunion.com;   deltapilotunion.com;   deltapilotsassociation.com   (collectively**

- 2 -

**hereinafter, "DPA's website").**" *See* Proposed Third Amended Complaint, Dkt. 109-2 at ¶ 21 (Emphasis added).  DPA wishes to add no fewer than **eleven** additional websites to its pleading and simply refer to them all "collectively" as "DPA's website." (Dkt. 109-2, ¶ 21).

Not only is this request wildly untimely, given that the alleged disruption of DPA's website was in **2013**, but it would be devastatingly prejudicial to the defendant, who has devoted tens of thousands of dollars to defending against DPA's utterly meritless claims. Defendant, through counsel, has conducted extensive discovery – against Squarespace, GoDaddy, and five other businesses – to obtain information about the alleged hacking of http://delta-pilots.org, because *that* is the website that DPA alleged was disrupted, not only in its original Complaint (Dkt. 1, ¶ 23), but also in its First Amended Complaint (Dkt. 51, ¶ 23), and in its Second Amended Complaint (Dkt. 85, ¶ 21). *See, e.g.,* Defendant's Rule 45 Subpoena to Squarespace, Inc., attached as Exhibit C to the Lossia Declaration.

Defendant did not seek discovery concerning the myriad other websites now included in the proposed Third Amended Complaint because DPA never alleged that these websites were disrupted.  To permit DPA to radically alter its pleading now, after discovery has closed, and after defendant has taken four costly depositions, would require additional discovery upon at least three third parties, as well as re-deposing, at the very least, two DPA principals.

Importantly, the availability of third-party data in connection with the eleven newly-listed websites is highly doubtful, given the long passage of time since the alleged disruption in 2013. Defendant's missed opportunity to marshal evidence concerning these surprising new allegations is an additional basis for a finding of undue prejudice, even setting aside the tens of thousands of dollars he would have to spent to duplicate the discovery that has already been conducted (not to mention the additional burden upon third parties in responding to those requests).

- 3 -

762-000-00001: 10999139.docx

**ARGUMENT**

The Second Circuit has made clear that a District Court may deny leave to amend a complaint upon a number of grounds:

> Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires," it is within the sound discretion of the district court to grant or deny leave to amend. *See Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d Cir. 1995) (upholding the denial of a motion to amend a complaint that was filed two and one-half years after the commencement of the action and three months prior to trial); *see also Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985) (upholding the denial of a motion to amend a complaint when discovery already had been completed and the non-movant had already filed a motion for summary judgment). A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)

Here, the bad faith, undue delay and undue prejudice to the defendant are palpable. DPA has had two prior opportunities to amend its pleading, including *after* it had obtained extensive third-party discovery from its web hosting service, Squarespace.  Yet, in its motion for leave to amend, DPA offers no explanation – let alone a satisfactory or plausible one – for proceeding for five years on a claim about one website, then suddenly attempting to expand the claim to cover **eleven additional websites**. The Court has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice" other parties. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990).

In a Computer Fraud and Abuse Act case, the very least that must be expected of a Plaintiff is to identify to the defendant the website that the plaintiff alleges was affected. DPA's apparent inability to do so calls into further doubt its already baseless and nonsensical claims.

762-000-00001: 10999139.docx

**CONCLUSION**

For the foregoing reasons, Defendant respectfully urges the Court to deny DPA's motion

for leave to file a Third Amended Complaint at this very late stage.


Dated: February 19, 2019
       New York, New York

LEVY RATNER, P.C.

By:    Dana E. Lossia
       Attorneys for Defendant
       80 Eighth Avenue Floor 8
       New York, New York 10011
       (212) 627-8100
       (212) 627-8182 (fax)
       dlossia@levyratner.com


TO:  All Counsel via ECF.

762-000-00001: 10999139.docx